# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ROBERT F. COCKERILL and CHRISTOPHER WILLIAM NEWTON, individually and as representatives on behalf of a class similarly situated persons,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CORTEVA, INC.; DUPONT SPECIALTY PRODUCTS USA, LLC; DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; THE PENSION AND RETIREMENT PLAN; THE ADMINISTRATIVE COMMITTEE,**<br><br>**Defendants.** | **Civil Action No. 2:21-cv-03966-MMB** |

## [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2021, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint, and any response by Plaintiffs in opposition thereto, it is hereby **ORDERED AND DECREED** that said Motion is **GRANTED**. Plaintiffs' Class Action Complaint is hereby **DISMISSED** in its entirety.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT F. COCKERILL and CHRISTOPHER WILLIAM NEWTON, individually and as representatives on behalf of a class similarly situated persons,**<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**CORTEVA, INC.; DUPONT SPECIALTY PRODUCTS USA, LLC; DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; THE PENSION AND RETIREMENT PLAN; THE ADMINISTRATIVE COMMITTEE,**<br><br>  **Defendants.** | Civil Action No. 2:21-cv-03966-MMB |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Corteva, Inc., E.I. du Pont de Nemours and Company,[1] DuPont de Nemours, Inc., DuPont Specialty Products USA, LLC,[2] the Pension and Retirement Plan and the Benefit Plans Administrative Committee (named in the Complaint as the "Administrative Committee") (collectively, "Defendants"), hereby move to dismiss Plaintiffs' Class Action Complaint for failure to state a claim upon which relief can be granted. The grounds for this Motion are set forth in Defendants' accompanying Memorandum of Law, which is incorporated herein by reference in its entirety.

**WHEREFORE**, Defendants request that the Court grant its requested relief in the form of the attached proposed Order.

---

[1] E.I. du Pont de Nemours and Company ("Historical DuPont") is a subsidiary of Corteva, Inc.

[2] DuPont Specialty Products USA, LLC ("Specialty Products") is a subsidiary of DuPont de Nemours, Inc.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Cory A. Thomas*
Cory A. Thomas (I.D. No. 308807)
Nipun J. Patel (I.D. No. 208130)
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA  19104
(215) 252-9600
Cory.Thomas@hklaw.com
Nipun.Patel@hklaw.com

Todd D. Wozniak *
1180 West Peachtree Street N.W., Suite 1800
Atlanta, GA  30309
(404) 817-8431
Todd.Wozniak@hklaw.com

* *Admitted Pro Hac Vice*

Dated:  November 10, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT F. COCKERILL and CHRISTOPHER WILLIAM NEWTON, individually and as representatives on behalf of a class similarly situated persons,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CORTEVA, INC.; DUPONT SPECIALTY PRODUCTS USA, LLC; DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; THE PENSION AND RETIREMENT PLAN; THE ADMINISTRATIVE COMMITTEE,**<br><br>**Defendants.** | **Civil Action No. 2:21-cv-03966-MMB** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**HOLLAND & KNIGHT LLP**

/s/ Cory A. Thomas
Cory A. Thomas (I.D. No. 308807)
Nipun J. Patel (I.D. No. 208130)
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA  19104
(215) 252-9600
Cory.Thomas@hklaw.com
Nipun.Patel@hklaw.com

Todd D. Wozniak *
1180 West Peachtree Street N.W., Suite 1800
Atlanta, GA  30309
(404) 817-8431
Todd.Wozniak@hklaw.com

* Admitted Pro Hac Vice

Dated:  November 10, 2021

**Table of Contents**

**Page**

TABLE OF AUTHORITIES................................... **ERROR! BOOKMARK NOT DEFINED.**

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................3

    I.     The Parties. ............................................................................3

          A.     The Plan ....................................................................3

          B.     The Defendants ........................................................3

          C.     The Plaintiffs ...........................................................3

LEGAL STANDARDS.....................................................................................4

ARGUMENT...................................................................................................5

    I.     Count I Should Be Dismissed Because Plaintiffs Have Not Pled, And Cannot Plead, Facts Giving Rise To A Plausible Claim That They Were Entitled To Continue To Grow Into Early Retirement Benefits Following The Spin-Off.........5

    II.    Count II Should Be Dismissed Because Newton Has Not Pled, And Cannot Plead, Sufficient Facts To Give Rise To A Plausible Claim That He Is Entitled To Optional Retirement Benefits Under The Terms Of The Plan.............8

    III.    Count III Should Be Dismissed Because The Complaint Does Not Sufficiently Allege Any Material Misrepresentation or Inadequate Disclosure by A Plan Fiduciary; Nor Does It Sufficiently Allege Detrimental Reliance By Plaintiffs. .........................................................................9

          A.     The Complaint Does Not Sufficiently Plead A Material Misrepresentation Or Inadequate Disclosure By A Plan Fiduciary. .........10

          B.     The Complaint Does Not Plead Any Facts To Suggest Detrimental Reliance. .......................................................14

    IV.    Count III Should Also Be Dismissed Because The Complaint Fails To State A Claim Against Defendants For Co-Fiduciary Liability Under ERISA § 405(a). ........................................................14

    V.    Count IV Should Be Dismissed Because Plaintiffs Have Not Pled, And Cannot Plead, Facts Sufficient To Give Rise To A Plausible Claim For Interference With A Protected Right. ...............................................15

    VI.    Count V Should Be Dismissed Because It Is Preempted By ERISA. .................18

    VII.    All of Newton's Claims, Except Possibly Count II, Should Be Dismissed Pursuant To The Settlement Agreement And General Release He Executed On July 1, 2019.................................................20

      A.    The Release Is Valid and Enforceable Because Newton Knowingly and Voluntarily Signed It..........................................................................22

      B.    The Carve-Out For "Vested Benefits" Is Not Applicable To Any Claims, Except Possibly Count II...........................................................22

VIII.   This Action Must Also Be Dismissed As To The Putative Class Members. ........24

CONCLUSION...................................................................................................................25

## Table of Authorities

Page(s)

**Cases**

*1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*,
968 F.2d 401 (3d Cir. 1992) ....................................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 4, 10, 14, 17

*In re Aspartame Antitrust Litig.*,
No. 2:06-CV-1732-LDD, 2008 WL 4724094 (E.D. Pa. Aug. 11, 2008),
aff'd, 416 F. App'x 208 (3d Cir. 2011) ...................................................................24

*Bass v. Butler*,
116 F. App'x 376 (3d Cir. 2004) ...........................................................................24

*Bellas v. CBS, Inc.*,
221 F.3d 517 (3d Cir. 2000) ....................................................................................5

*Bicknell v. Lockheed Martin Group Benefits Plan*,
No. 10-1212, 2011 U.S. App. LEXIS 2715 (3d Cir. Feb. 10, 2011) ....................13

*Brown v. Philadelphia Hous. Auth.*,
350 F.3d 338 (3d Cir. 2003) ..................................................................................24

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ....................................................................................3

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)...................................................................................3

*Charter Fairmount Inst., Inc. v. Alta Health Strategies*,
835 F. Supp. 233 (E.D. Pa. 1993) .........................................................................19

*Clark v. Hartford Life & Accident Ins. Co.*,
No. 06-0945, 2006 WL 3359651 (E.D. Pa. Nov. 17, 2006)...................................19

*Corman v. Nationwide Life Ins. Co.*,
396 F. Supp. 3d 530 (E.D. Pa. 2019).....................................................................3, 4

*Cranston v. PJM Interconnection LLC*,
No. CIV.A. 13–04916, 2014 WL 5503151 (E.D. Pa. Oct. 31, 2014) .....................5

*Cuchara v. Gai-Tronics Corp.*,
No. CIV.A. 03-6573, 2004 WL 1438186 (E.D. Pa. Apr. 7, 2004),
*aff'd*, 129 F. App'x 728 (3d Cir. 2005)............................................................ 20, 21

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) .................................................................................................5

*D.P. Enterprises v. Bucks Cty. Cmty. Coll.*,
725 F.2d 943 (3d Cir. 1984) .................................................................................20

*Dewitt v. Penn-Del Directory Corp.*,
106 F.3d 514 (3d Cir. 1997) .................................................................................15

*Donachy v. Intrawest U.S. Holdings, Inc.*,
No. CIV.A. 10-4038 RMB, 2012 WL 869007 (D.N.J. Mar. 14, 2012) ................24

*Fischer v. Philadelphia Elec. Co.*,
96 F.3d 1533 (3d Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997)........................15

*Fischer v. Philadelphia Elec. Co.*,
994 F.2d 130 (3d Cir. 1993) .................................................................................12

*Gilley v. Monsanto Co.*,
490 F.3d 848 (11th Cir. 2007) ..............................................................................23

*Gotham City Orthopedics, LLC v. Aetna Inc.*,
No. CV2014915SDWLDW, 2021 WL 1541069 (D.N.J. Apr. 19, 2021) .............19

*Hakim v. Accenture U.S. Pension Plan*,
718 F.3d 675 (7th Cir. 2013) ...............................................................................23

*Hartman v. Wilkes-Barre Gen. Hosp.*,
237 F. Supp. 2d 552 (M.D. Pa. 2002) ..................................................................19

*Hein v. TechAmerica Grp., Inc.*,
17 F.3d 1278 (10th Cir.1994) ...............................................................................23

*Hooven v. Exxon Mobil Corp.*,
465 F.3d 566 (3d Cir. 2006) ..........................................................................5, 8, 9

*Hozier v. Midwest Fasteners, Inc.*,
908 F.2d 1155 (3d Cir. 1990)...............................................................................13

*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*,
520 U.S. 510 (1997) .............................................................................................16

*Jackson v. Rohm & Haas Co.*,
No. CIV.A. 05-4988, 2007 WL 2702804 (E.D. Pa. Sept. 12, 2007).....................17

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
   555 U.S. 285 (2009) ................................................................................*passim*

*Kollman v. Hewitt Assocs., LLC*,
   487 F.3d 139 (3d Cir. 2007) ............................................................... 18, 19

*Labus v. Navistar Int'l Transp. Corp.*,
   740 F. Supp. 1053 (D.N.J. 1990) ............................................................. 19

*Lehman v. Prudential Ins. Co. of Am.*,
   74 F.3d 323 (1st Cir. 1996) ...................................................................... 16

*McDonald v. Pension Plan of NYSA–ILA Pension Tr. Fund*,
   320 F.3d 151 (2nd Cir. 2003) ................................................................... 22

*McLendon v. Cont'l Can Co.*,
   908 F.2d 1171 (3d Cir. 1990) ................................................................... 16

*Menkes v. Prudential Ins. Co. of Am.*,
   762 F.3d 285 (3d Cir. 2014) ....................................................................... 5

*Morris v. Winnebago Indus., Inc.*,
   950 F. Supp. 918 (N.D. Iowa 1996) ......................................................... 16

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ................................................................... 20

*Plavin v. Group Health Inc.*,
   323 F. Supp. 3d 684 (M.D. Pa. 2018) ...................................................... 24

*Regel v. K-Mart Corp.*,
   190 F.3d 876 (8th Cir. 1999) ................................................................... 17

*Romero v. Allstate Ins. Co.*,
   1 F. Supp. 3d 319 (E.D. Pa. 2014) ............................................... 22, 23, 24

*Saltzman v. Indep. Blue Cross*,
   384 F. App'x 107 (3d Cir. 2010) ................................................................ 6

*Schmelzle v. Unum Life Ins. Co. of Am.*,
   No. CIV. 08-0734 (AET), 2008 WL 2966688 (D.N.J. July 31, 2008)................ 19

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ................................................................................... 18

*Shook v. Avaya Inc.*,
   625 F.3d 69 (3d Cir. 2010) ............................................................... 10, 13

*Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*,
    399 F. Supp. 3d 241 (D. N.J. 2019) ...................................................................... 19

*Stargel v. SunTrust Banks, Inc.*,
    968 F. Supp. 2d 1215 (N.D. Ga. 2013) ................................................................. 23

*In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*,
    58 F.3d 896 (3d. Cir. 1995) ................................................................................... 12

*Univ. Spine Ctr. v. Anthem Blue Cross of California*,
    No. CV1912639KMJBC, 2020 WL 814181 (D.N.J. Feb. 18, 2020) ...................... 6

*Urbanik v. ITT Corp.*,
    No. C.A. 09-00627 SDW-MCA, 2009 WL 2132434 (D.N.J. July 13, 2009) ........ 19

*Velazquez v. State Farm Fire & Cas. Co.*,
    No. 19-CV-3128, 2020 WL 1942784 (E.D. Pa. Mar. 27, 2020), <u>report and
    recommendation adopted,</u> No. CV 19-3128, 2020 WL 1939802
    (E.D. Pa. Apr. 22, 2020) ........................................................................................ 24

*Vitale v. Latrobe Area Hosp.*,
    420 F.3d 278 (3d Cir. 2005) .................................................................................. 11

*Witasick v. Minnesota Mut. Life Ins. Co.*,
    803 F.3d 184 (3d Cir. 2015) .................................................................................. 21

**Statutes**

29 U.S.C. § 1102(a)(1) .................................................................................................. 5

29 U.S.C. § 1105(a) .................................................................................................... 14

29 U.S.C. § 1132(a)(1)(B) ............................................................................................ 6

29 U.S.C. § 1140 ........................................................................................................ 15

29 U.S.C. § 1144(a) .................................................................................................... 18

Employee Retirement Income Security Act of 1974 ........................................... passim

# INTRODUCTION[3]

On December 15, 2015, Defendant E. I. du Pont de Nemours and Company ("Historical DuPont") announced its intent to merge with The Dow Chemical Company. Compl. ¶ 13. The publicly-traded companies merged and became subsidiaries of a single company, DowDuPont Inc. ("DowDuPont") on or around August 31, 2017. *Id.* ¶ 16. Following the merger, DowDuPont later spun-off into three separate, publicly traded companies: Corteva, Inc. ("Corteva"), focusing on agricultural chemicals; Dow, Inc. ("Dow"), focusing on materials science; and DuPont de Nemours, Inc. ("New DuPont"), focusing on specialty product industries (collectively, the "Spin-Off"). Compl. ¶ 17. Historical DuPont emerged from the Spin-Off as a subsidiary of Corteva. (*Id.* ¶ 22.). DuPont Specialty Products USA, LLC ("Specialty Products"), Plaintiffs' employer, emerged from the Spin-Off as a subsidiary of New DuPont. *Id.* ¶¶ 7, 8, 40, 41, 80, 81.

Plaintiffs are former active participants in the Pension and Retirement Plan (the "Plan"), a defined benefit pension plan that has been sponsored by Historical DuPont since 1904.[4] *Id.* ¶¶ 8, 24. Plaintiffs filed this putative class action alleging a wrongful denial of retirement benefits after their employer, Specialty Products, terminated its participation in the benefit plans sponsored by Historical DuPont and instead began participating in benefit plans sponsored by New DuPont, effective June 1, 2019. *Id.* ¶¶ 7, 8, 39, 40, 41, 80, 81.

The Complaint in this case rests entirely on a deeply flawed and legally unsupportable premise. It asks the Court to ignore the plain language of the Plan document and award Plaintiffs retirement benefits for which they were not eligible before the Spin-Off, and for which they cannot qualify after the Spin-Off. Simply put, Plaintiffs ceased being active Plan participants on May 31,

---

[3] For purposes of this Motion, Defendants have taken the factual allegations of the Complaint as true.
[4] The current Plan was amended and reinstated as of December 16, 2015, shortly after the merger was announced, and has been amended a number of times since its last reinstatement. Compl. ¶¶ 82-85, *See* Declaration of Mark Durkovic ("Durkovic Decl.") at Exs. 1 - 9.

2019, the date their employer, Specialty Products, ceased participating in Historical DuPont benefit plans and, therefore, ceased being part of the "Company" under plain terms of the Plan. Thus, there is no plausible reading of the Plan document that would entitle Plaintiffs to the Early Retirement or Optional Retirement benefits they seek.

The Complaint asserts five counts, and each fails to state a claim as a matter of law:

- Count I asserts an ERISA § 502(a)(1)(B) claim against the Benefit Plans Administrative Committee ("Administrative Committee"), as Plan Administrator, for arbitrarily and capriciously denying Plaintiffs' request for the right to "age into" Early Retirement benefits under the Plan. Count I fails because the plain language of the Plan document does not permit Specialty Products' employees to continue to grow into an Early Retirement benefit under the Plan after the Spin-Off.

- Count II asserts an ERISA § 502(a)(1)(B) claim against the Administrative Committee, in the alternative to Count I, for arbitrarily and capriciously denying Plaintiff Newton's request for Optional Retirement benefits under the Plan. Count II similarly fails because the plain language of the Plan document does not permit Specialty Products' employees to receive an Optional Retirement benefit as a result of the Spin-Off or after the Spin-Off.

- Count III seeks equitable relief under ERISA § 502(a)(3) against all Defendants (other than the Plan) for alleged fiduciary and co-fiduciary breaches. Count III is alleged in the alternative to Count I and asserts Defendants made alleged misrepresentations and omissions of material fact to Plaintiffs regarding their ability to age into early retirement benefits under the Plan. Count III fails because the Complaint does not sufficiently allege any material misrepresentation or inadequate disclosure by a plan fiduciary or detrimental reliance by Plaintiffs.

- Count IV asserts an ERISA § 510 claim against all Defendants (other than the Plan) for allegedly interfering with Plaintiffs' ability to obtain early retirement benefits under the Plan. Count IV fails because Plaintiffs have not sufficiently alleged that Defendants consciously interfered with their attainment of benefits or that Defendants engaged in prohibited employer conduct.

- Count V is a state-law promissory estoppel claim against all Defendants (other than the Plan). Count V is preempted by ERISA and must be dismissed.

- Counts I, III, IV and V also fail as to Plaintiff Newton because he signed a general release of claims on July 1, 2019 that bars his claims.

# BACKGROUND

## I.    The Parties.

### A.    The Plan

The Plan is a defined benefit pension plan with more than 100,000 participants and beneficiaries. Compl. ¶¶ 1, 12, 23.  The Plan was originally adopted by Historical DuPont in 1904 and is still sponsored by Historical DuPont today. *Id*. ¶¶ 8, 24. The Plan is administered by the Administrative Committee.[5] *Id*. ¶¶ 11, 58.  The Administrative Committee is a named fiduciary of the Plan which "manage[s] the operation and administration of the Plan." *Id*. ¶¶ 11; *See* Durkovic Decl. at Ex. 1, page 1.  [6] Leading up to the Spin-Off, Historical DuPont regularly communicated with Plan participants regarding the Plan. *E.g., id*. ¶¶ 14, 15, 18, 19, 20, 21, 42, 46, 47, 51.

### B.    The Defendants

The Complaint names Corteva and one of its subsidiaries, Historical DuPont, as well as New DuPont and one of its subsidiaries, Specialty Products, as Defendants. Compl. ¶¶ 6, 7. The Complaint also names the Plan and Administrative Committee as Defendants. *Id*. ¶¶ 10,11.

### C.    The Plaintiffs

Plaintiff Robert Cockerill ("Cockerill") is a current employee of Specialty Products, and Plaintiff Christopher Newton ("Newton") is a former employee of Specialty Products.  Compl. ¶¶

---

[5] The Benefit Plan Administrative Committee referred to in the Plan's summary plan description ("SPD") is the same entity as the Administrative Committee referred to in the Plan Document. (Compl. ¶¶ 11, 58.)

[6] On a motion to dismiss, this Court may take judicial notice of the Plan document and its amendments because these documents are integral to the Complaint's allegations and their authenticity is beyond dispute. *See Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 537 (E.D. Pa. 2019) (stating that ERISA plan documents are "appropriately considered in resolving [a] motion to dismiss.") This Court may also consider "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the complaint, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Third Circuit has explained that "[t]he rationale underlying this [rule] is that the primary problem raised by looking to documents outside the complaint [is] lack of notice to the plaintiff," and that this problem "is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

40, 59, 68. Together, they filed this putative class action alleging they were arbitrarily and capriciously denied Early Retirement benefits after Specialty Products was spun-off to New DuPont on June 1, 2019. *Id.* ¶¶ 7, 8, 40, 41, 80, 81. Cockerill continues to work for Specialty Products. *Id.* ¶ 7. However, as described above, New DuPont became Specialty Products' parent company in connection with the Spin-Off and Specialty Products ceased being a participating employer under the Plan at that time. *Id.* ¶ 6, 24, 40, 50, 51, 84.

Newton was employed by Specialty Products until his employment was terminated effective July 31, 2019, *id.* ¶¶ 68, 71, after Specialty Products ceased its participation May 31, 2019 in the Historical DuPont benefit plans and became owned by New DuPont. *Id.* ¶¶ 6, 24, 40, 50, 51, 72, 79, 84.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The Court may consider "documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the complaint, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 535 (E.D. Pa. 2019). Where, as here, Plaintiffs' allegations do not bring their "claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Twombly*, 550 U.S. at 555.

4

## ARGUMENT

I.  **Count I Should Be Dismissed Because Plaintiffs Have Not Pled, And Cannot Plead, Facts Giving Rise To A Plausible Claim That They Were Entitled To Continue To Grow Into Early Retirement Benefits Following The Spin-Off.**

In Count I, Plaintiffs seek a determination under ERISA § 502(a)(1)(B) that the Administrative Committee, as Plan Administrator, acted arbitrarily and capriciously when it denied Plaintiffs' requests for Early Retirement benefits (including Rule of 85 unreduced Early Retirement benefits) under the terms of the Plan.  To seek relief under ERISA § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014) ("Claims involving denial of benefits or improper processing of benefits require interpreting what benefits are due under the plan.... [T]he claims explicitly require reference to the plan and what it covers"); *Cranston v. PJM Interconnection LLC*, No. CIV.A. 13–04916, 2014 WL 5503151, at *7 (E.D. Pa. Oct. 31, 2014) ("It is the terms of the Plan document that control and limit the bounds of the Court's analysis in § 502(a)(1)(B) claims.").

ERISA "neither mandates the creation of pension plans nor in general dictates the benefits a plan must afford once created." *Bellas v. CBS, Inc.*, 221 F.3d 517, 522 (3d Cir. 2000). ERISA does require, however, that "[e]very employee benefit plan be established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1). When administering a plan, the plan administrator "is obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA], and the Act provides no exemption from this duty when it comes time to pay benefits."  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA's statutory scheme "is built around reliance on

the face of written plan documents").

The text of ERISA § 502(a)(1)(B), under which Plaintiffs bring Count I against the Administrative Committee, demonstrates the importance of the actual Plan terms in evaluating any claim for benefits.  It permits participants, such as Plaintiffs, to bring a cause of action "to recover benefits due to [them] *under the terms of [the] plan*, to enforce [their] rights *under the terms of the plan*, or to clarify [their] rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). In other words, Plaintiffs' claims "stand[] or fall[] by 'the terms of the plan.'"  *Kennedy*, 555 U.S. at 300.  For this reason, courts consistently reject claims that seek benefits that are not expressly provided under the terms of the relevant plan, or that would require the defendants to act contrary to the plan's language. *See, e.g., Univ. Spine Ctr. v. Anthem Blue Cross of California,* No. CV1912639KMJBC, 2020 WL 814181, at *5 (D.N.J. Feb. 18, 2020) (granting motion to dismiss where plaintiffs failed to plead a plausible claim for benefits under the plan's actual terms); *Saltzman v. Indep. Blue Cross,* 384 F. App'x 107, 111 (3d Cir. 2010) (affirming district court's order granting motion to dismiss where plaintiffs failed to demonstrate that "he or she [has] a right to benefits that is legally enforceable against the plan").

Here, the Plan's language is clear and unambiguous and precludes Plaintiffs' ERISA § 502(a)(1)(B) claim.  With respect to Early Retirement benefits, the Plan provides:

"B.   Early Retirement

    (1) Eligibility

        An employee will be eligible for Early Retirement after reaching age 50
        and prior to reaching age 65 with at least 15 years of service."

    *Plan*, Section IV, B.(1).

The Plan defines "employee," in relevant part, as including "all employees of the Company hired on or before December 31, 2006". *Plan*, Section IX, A.(1).  Finally, "Company"

is defined in the Plan as "E.I. du Pont de Nemours and Company and/or any wholly owned subsidiary or part thereof which adopts this Plan with the approval of the Administrative Committee, or such person or persons as the Administrative Committee may designate." *Plan*, Section IX, A.(6).

Based on the plain language of the Plan, Plaintiffs did not (and do not) quality for Early Retirement benefits. This is because Early Retirement benefits are only available to (i) employees of the "Company", (ii) *after* they reach age 50, and (iii) with at least 15 years of service to the "Company". *See Plan*, Section IV, B.(1).

To be considered an "employee" for purposes of the Plan, the individual must be an employee of "E.I. du Pont de Nemours and Company [*i.e.*, Historical DuPont] and/or any wholly owned subsidiary". *Plan*, Section IX, A.(6).  As Plaintiffs admit, Specialty Products ceased being affiliated with Historical DuPont as of the date of the Spin-Off, when Specialty Products became a subsidiary of the separate, publicly traded company named DuPont de Nemours, Inc. (*i.e.*, New DuPont).  Compl. ¶ 6, 7, 24, 40, 50, 51, 72, 79, 84.  As a result, Plaintiffs ceased being "employees" of the "Company" immediately following the Spin-Off.

Plaintiffs further admit they had not reached age 50 as of the date of the Spin-Off.  Compl. ¶¶ 39, 72.  As quoted above, the Plan only permits an employee, *after* reaching age 50 and having at least 15 years of service, to become eligible for any Early Retirement benefits. Because neither Plaintiff was an employee of the "Company," nor were they age 50, at Spin-Off, they were not, and are not, eligible for Early Retirement benefits under the plain language of the Plan and cannot plead a plausible claim otherwise.  As a result, Plaintiffs are not entitled to Early Retirement benefits under the Plan, to enforce any rights to Early Retirement benefits under the Plan, or to clarify future rights to Early Retirement benefits under the Plan. Count I should therefore be

dismissed with prejudice.

II. **Count II Should Be Dismissed Because Newton Has Not Pled, And Cannot Plead, Sufficient Facts To Give Rise To A Plausible Claim That He Is Entitled To Optional Retirement Benefits Under The Terms Of The Plan.**

Plaintiff Newton asserts Count II, in the alternative to Count I, seeking a determination that the Administrative Committee, as Plan Administrator, acted arbitrarily and capriciously when it denied his request for Optional Retirement benefits under the terms of the Plan. (Compl. ¶¶ 82, 88, 99-103). Like Count I, Count II must be dismissed because Newton does not plead sufficient facts to demonstrate that he has a right to Optional Retirement benefits "that is legally enforceable against the plan." *Hooven*, 465 F.3d at 574.

Here, the Plan's language regarding Optional Retirement benefits provides, in relevant part:

"D.   Optional Retirement

(1) Eligibility

* * * * *

(b)   An **employee will be eligible for Optional Retirement after reaching age 45 and prior to reaching age 50 with at least 25 years of service if his employment would otherwise be involuntarily terminated due to lack of work**. The length of service required for eligibility shall be reduced by two months, or a proportionate part thereof, for each month or portion thereof which has elapsed since the employee reached age 45.

*Plan*, Section IV, D(1) (emphasis added).

Plaintiff Newton cannot qualify for Optional Retirement benefits based on the plain language of the Plan. This is because Optional Retirement benefits, as relevant to Newton, are only available to (i) employees of the Company, (ii) between 45 and 50 years old (Newton was 48.92 years old as of the Spin-Off), (ii) with at least 25 years of service, (iii) if their employment would otherwise be involuntarily terminated due to lack of work. *Plan*, Section IV, D(1)(b). The 25-year

service requirement is reduced by two months, or a proportionate part thereof, for each month or portion thereof which has elapsed since the employee reached age 45. *Id*.

In order for Newton to be an "employee" for purposes of the Plan, he must be an employee of the "Company" (*i.e.*, Historical DuPont or a wholly owned subsidiary of Historical DuPont). *Plan*, Section IX, A.(1)(a). As Newton admits, Specialty Products ceased being affiliated with Historical DuPont at the time of the Spin-Off, when it became a subsidiary of New DuPont. Compl. ¶ 6, 7, 24, 40, 50, 51, 72, 79, 84. Thus, Newton ceased being an employee of the "Company" as of the date of the Spin-Off. *Id*.

Further, Newton's employment with Specialty Products did not terminate until July 31, 2019, approximately two months after the Spin-Off. Compl. ¶ 68, 71. The fact that Specialty Products later terminated Newton for lack of work is irrelevant because Newton was no longer an "employee" of the "Company" under the terms of the Plan on his termination date. *Id*. Because the Plan only permits an "employee" of the "Company" to be eligible for Optional Retirement benefits, Plaintiff Newton is not eligible for Optional Retirement benefits under the plain language of the Plan and cannot plead a plausible claim otherwise. Count II should therefore be dismissed with prejudice.

### III. Count III Should Be Dismissed Because The Complaint Does Not Sufficiently Allege Any Material Misrepresentation or Inadequate Disclosure by A Plan Fiduciary; Nor Does It Sufficiently Allege Detrimental Reliance By Plaintiffs.

Count III asserts fiduciary breach and co-fiduciary breach claims against all Defendants other than the Plan. To properly plead their breach of fiduciary duty claim, each Plaintiff must allege sufficient facts to establish that: "(1) [each] defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure." *Shook v.*

*Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010).  As to detrimental  reliance, "the plaintiff must have taken some action as a result of the misrepresentation; **the mere expectation of a continued benefit is not enough**." *Id.* (emphasis added). With respect to first element of their claim, Plaintiffs have made only conclusory assertions as to the fiduciary status of any of the Defendants, except the Administrative Committee.  Count III should therefore be dismissed with prejudice as to all Defendants, except the Administrative Committee.  *See id.* (to establish a fiduciary breach claim, plaintiffs must show that the defendant was acting as a plan fiduciary when he or she made the alleged misrepresentation or omission of material fact).  Count III should also be dismissed with prejudice as to all Defendants because Plaintiffs have failed to assert facts sufficient to show the plausibility of elements (2), (3) and (4) of their fiduciary breach claim.

> **A.     The Complaint Does Not Sufficiently Plead A Material Misrepresentation Or Inadequate Disclosure By A Plan Fiduciary.**

Plaintiffs make no ***factual*** allegations to suggest that any Defendant made a misrepresentation or omission of a material fact.   Instead, Plaintiffs repeatedly make conclusory assertions such as Specialty Products made "numerous misrepresentations…about [Plaintiffs] eligibility for early retirement benefits if they fulfilled certain conditions" and Defendants "actively and repeatedly misinform[ed] and omitt[ed] material information" about Plaintiffs' ability to age into an Early Retirement benefit.   *See* Compl. ¶¶ 7, 53, 75, 90(e.), 108, 109. Such "threadbare recitals of the elements of [the] cause of action" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

The only allegations concerning misrepresentations or inadequate disclosures that are even arguably factual are set forth in paragraphs 18, 19, 20, and 21 of the Complaint. In those paragraphs, Plaintiffs purport to describe misrepresentations by Defendants regarding the effects of the Spin-Off. Plaintiffs reference a 2018 Q&A, which states:

> "At spin, future service for Specialty Products employees who participate in the Plan will no longer be recognized in determining eligibility for pension benefits and any applicable early retirement reduction factors. For those employees who qualify for retirement by meeting the Plan's age and service requirements, **growth in age will continue to be recognized allowing those participants to age into an improved reduction factor prior to commencing their pension**."

*See* Compl. ¶ 18 (emphasis added by Plaintiffs).

This statement, however, was accurate—those individuals who ***already*** qualified for Early Retirement benefits could continue to "age into an improved reduction factor prior to commencing their pension". *Id.* Plaintiffs, however, do not fall within that category. Although Plaintiffs emphasized the second half of the last quoted sentence with bolded font, they fail to acknowledge that the first half of the sentence clarifies that the sentence is only applicable to individuals who already "qualify for retirement by meeting the Plan's age and service requirements." *Id.* Plaintiffs were not qualified for retirement at the time of the Spin-Off because they did not meet the Plan's unambiguous age (minimum age of 50) and service requirements. *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 283-84 (3d Cir. 2005) (upholding determination that plaintiff did not qualify for early retirement benefits when she was unable to satisfy the plain and unambiguous terms of the plan).[7]

Next, Plaintiffs reference a March 2019 presentation given to Plan participants who, unlike Plaintiffs, were already age 50 with 15 years of experience as of May 31, 2019 (the date of the Spin-Off). *See* Compl. ¶¶ 19, 20. Plaintiffs allege that the presentation "notified the age 50 group that they would be considered a 'retiree' as of June 1, 2019" and "notified employees who had the

---

[7] In fact, had the Administrative Committee awarded Early Retirement benefits to Plaintiffs, despite the Plan's plain and unambiguous language to the contrary, the Administrative Committee would have violated its fiduciary duty to administer the Plan according to its terms. *Vitale*, 420 F.3d at 283-84 (stating that plan administrators are "obligated by statute to administer the plan 'in accordance with the documents and instruments governing the plan' " and "an award inconsistent with the plan's valid provisions would be a breach of [an administrator's fiduciary] duties. . . ." (citing 29 U.S.C. 1104(a)(1)(D)).

age and service for an *unreduced* pension benefit as of June 1, 2019, that they could commence their benefit immediately." Once again, those statements were accurate and Plaintiffs do not allege, nor can they allege, that they fit into the age 50 group and were somehow misled.

Plaintiffs similarly allege that the March 2019 presentation "also provided that participants **who were age 50** but who would receive a *reduced* pension benefit as of June 1, 2019, could wait until they reached an age where the benefit was no longer reduced." *See* Compl. ¶ 21 (emphasis added). Once again, those statements were accurate but inapplicable to Plaintiffs as Plaintiffs do not allege, nor can they, that they were age 50 as of May 31, 2019. To the contrary, Plaintiffs acknowledge that Cockerill was 49.85 years old as of June 1, 2019 and Newton was 48.92 years old as of that date. Compl. ¶¶ 39, 72. Therefore, neither the 2018 Q&A nor the March 2019 presentation supports Plaintiffs' assertion of a material misrepresentation or inadequate disclosure.

Further, the allegations fail to plead how any alleged misrepresentation or inadequate disclosure was material. *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) ("[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire."). Plaintiffs do not plead any facts that suggest they were misled in a way that caused them to make an inadequately informed decision about if and when to retire. To the contrary, Newton admits he was let go by Specialty Products in July 2019 for lack of work and Cockerill admits he is still employed by Specialty Products. *See generally, Complaint.* Neither allege that, but for the alleged misrepresentation or omission, Corteva would have employed them following the Spin-Off and that they would therefore have been eligible to continue to earn additional age or service credits under the terms of the Plan.

Moreover, where, as here, Plaintiffs are in possession of written information accurately conveying the Plan's terms, courts have been unwilling to find employer representations to be material, reasoning that Plaintiffs will have had full notice of their benefit rights and could not have been misled by written or oral statements to the contrary. *See, e.g., In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 905-906 (3d. Cir. 1995) (agreeing with district court's conclusion that a participant's "reasonable understanding of their benefits must be limited to the reasonable understanding of the summary plan descriptions or plan documents, due to our strong precedent which precludes informal amendments to ERISA benefits plans"); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1164 (3d Cir. 1990) (holding that ERISA "requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument" and that ERISA "precludes oral amendments to employee benefit plans"); *see also Bicknell v. Lockheed Martin Group Benefits Plan*, No. 10-1212, 2011 U.S. App. LEXIS 2715, at *8-9 (3d Cir. Feb. 10, 2011) ("it is unreasonable for a plan participant to rely upon an employer's representation as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation"). In fact, on its face, the Plan document plainly informed Plaintiffs that "[a]n employee will be eligible for Early Retirement after reaching age 50 and prior to reaching age 65 with at least 15 years of service." Compl. ¶ 82. Thus, far from being a misrepresentation, the Plan explicitly advised Plaintiffs that they would not be eligible for Early Retirement benefits unless they continued to be employed by the "Company" [*i.e.*, Historical DuPont or its subsidiaries] past age 50, which both Plaintiffs admit they did not accomplish as a result of the Spin-Off.

For these reasons, Plaintiffs have not pled, and cannot plead, a breach of fiduciary duty claim and Count III should be dismissed with prejudice.

**B.      The Complaint Does Not Plead Any Facts To Suggest Detrimental Reliance.**

To demonstrate detrimental reliance, each Plaintiff "must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough." *Shook*, 625 F.3d at 73. Plaintiffs have failed to plead any facts to suggest that they each detrimentally relied on any alleged fiduciary misrepresentation or omission of material fact. *E.g., Shook*, 625 F.3d at 73. Instead, Plaintiffs have set forth conclusory assertions, legal conclusions, and threadbare recitals regarding a breach of fiduciary duty, while ignoring the detrimental reliance element altogether.  *See, e.g.*, Compl. ¶¶ 104-109.  Count III should therefore be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

**IV.   Count III Should Also Be Dismissed Because The Complaint Fails To State A Claim Against Defendants For Co-Fiduciary Liability Under ERISA § 405(a).**

Co-fiduciary liability is not a simple matter of identifying two fiduciaries and proving that one of them violated the law. To the contrary, Congress imposed very specific requirements in order to hold a non-breaching fiduciary liable. Plaintiffs make reference to those specific legal requirements from ERISA § 405(a), but they do not identify any facts in support of the claim. *See* Compl. ¶ 110. That is not enough to survive a motion to dismiss. The Supreme Court has made it clear that conclusory allegations of law fall far short of what a plaintiff must allege to remain in federal court: "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. As the Supreme Court recently put it, the district court must "'insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Id*. at 547. Here, Plaintiffs have not met that minimum pleading standard.

As a threshold matter, for there to be co-fiduciary liability, there must be a breach committed by a fiduciary. *See* 29 U.S.C. § 1105(a) ("a fiduciary with respect to a plan shall be liable *for a breach of fiduciary responsibility of another fiduciary with respect to the same plan* in the following circumstances...") (emphasis added). However, as demonstrated throughout this brief, the Complaint fails to allege facts sufficient to establish that any of the Defendants breached any alleged fiduciary duty.

Moreover, for there to be co-fiduciary liability, Plaintiffs must allege the existence of at least two fiduciaries—the breaching fiduciary and the co-fiduciary. Here, Plaintiffs have alleged facts sufficient to plead fiduciary status as to only one entity, the Administrative Committee. As a result, Plaintiffs' co-fiduciary liability claims should be dismissed with prejudice.

**V.      Count IV Should Be Dismissed Because Plaintiffs Have Not Pled, And Cannot Plead, Facts Sufficient To Give Rise To A Plausible Claim For Interference With A Protected Right.**

In Count IV, Plaintiffs attempt to plead a cause of action under § 510 of ERISA, 29 U.S.C. § 1140, against all Defendants except the Plan for interference with ERISA rights. However, Count IV fails to state a claim upon which relief may be granted because Plaintiffs fail to plead any facts that could establish that Defendants engaged in prohibited conduct or that Defendants had a specific intent to violate ERISA.

Under ERISA § 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To state a claim for interference with ERISA rights under § 510, a plaintiff must allege (1) prohibited employer conduct, (2) taken for the purpose of interfering, (3) with the attainment of any ERISA right to which the employee would otherwise become entitled. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). This requires that the "plaintiff...

demonstrate that the defendant had the 'specific intent' to violate ERISA." *Id.* (quoting *Gavalik*, 812 F.2d at 851).

The "prohibited employer conduct" element under § 510 includes an employer's decision to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary." 29 U.S.C. § 1140. The Third Circuit has limited actionable conduct under § 510 to that which affects the employer-employee relationship. *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (ERISA § 510 claims are "limited to actions affecting the employer-employee relationship, not mere changes in the level of benefits"), *cert. denied*, 520 U.S. 1116 (1997). In other words, Plaintiffs must prove that "but for" a conscious discriminatory decision by Defendants to interfere with the Plaintiffs' attainment of benefits, the Plaintiffs' job would not have been adversely affected. *See McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1178 (3d Cir. 1990) ("Plaintiff must prove that "but for" the discriminatory purpose, he or she would not have lost work"); *see also Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330-31 (1st Cir. 1996) ("ERISA provides no relief if the loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action. Were this not so, every discharged employee who had been a member of a benefit plan would have a potential cause of action against his or her former employer under ERISA."). In addressing these principles, the Supreme Court has distinguished employment decisions that are designed to preclude employees from receiving benefits from "fundamental business decisions" that have the incidental effect of precluding the award of benefits. *See Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 516 (1997) (employer making "fundamental business decisions" to amend or terminate plan does not trigger § 510 unless employer does so with purpose of interfering with rights under the plan); *Morris v. Winnebago Indus., Inc.*, 950 F. Supp. 918, 927 (N.D. Iowa 1996) (holding that

plaintiff's § 510 claim failed because the employer, "in the exercise of its business judgment," terminated him in order to rectify its budget problems, and thus "[a]ny interference with [plaintiff's] ERISA benefits was merely 'incidental' to an adverse employment action motivated by a need to cut costs").

Here, Plaintiffs simply allege "Defendants, acting separately and in concert, have discharged, expelled and otherwise discriminated against Plaintiffs and the Class for purpose of interfering with their attainment of early retirement pension benefits under the Plan." (Compl. 114). These threadbare allegations are legally insufficient to state a claim for interference with ERISA § 510 rights. *Iqbal*, 556 U.S. at 678. Nowhere in the Complaint do Plaintiffs allege conduct on the part of Defendants that would rise to the level of "prohibited employer conduct" as defined in § 510. Moreover, Plaintiffs do not sufficiently plead any actionable conduct that affected the employer-employee relationship for Plaintiffs. Although Plaintiffs state that Newton's employment relationship terminated on July 31, 2019 (Compl. ¶¶ 68, 71), Plaintiffs make no allegations, nor can they, to permit the inference that this action was taken with the intent to interfere with his ERISA rights. Indeed, Plaintiffs' inability to qualify for Early Retirement benefits under the Plan resulted from a company-wide determination to spin-off certain business units, not from any decision that was made with the intent to deprive Plaintiffs of benefits. (Compl. ¶¶ 39, 72, 79).

Because the Complaint does not sufficiently plead facts to suggest that: (1) Defendants engaged in any conduct cognizable under ERISA § 510, or (2) Defendants had a specific intent to violate ERISA, Count IV of the Complaint should be dismissed with prejudice. *See Jackson v. Rohm & Haas Co.*, No. CIV.A. 05-4988, 2007 WL 2702804, at *6 (E.D. Pa. Sept. 12, 2007) (dismissing the plaintiff's claim for interference with benefits where plaintiff had "alleged conduct

17

unbecoming an ERISA fiduciary," but had not alleged any conduct affecting his status as an employee); *see also Regel v. K-Mart Corp.*, 190 F.3d 876, 880 (8th Cir. 1999) (affirming disposal of § 510 claim where plaintiffs failed to show intentional interference with ERISA rights, arguments were speculative and plaintiffs did not show requisite specific intent to interfere with ERISA-protected benefits).

## VI. Count V Should Be Dismissed Because It Is Preempted By ERISA.

Count V, which is brought against all Defendants except the Plan, alleges liability under a state-law theory of promissory estoppel—Defendants allegedly promised Plaintiffs and the Class members that they could continue to qualify for full, unreduced Early Retirement benefits (i) under the Plan's "Rule of 85" provision, so long as they continued to work for Historical DuPont until they met the age and service requirements; and (ii) when they reached age 50, if they had at least 15 years of service regardless of whether they continued to work for Historical DuPont. Plaintiffs also claim that Defendants promised Optional Retirement benefits "at certain percentages tied to an employee's age at the time of commencement of benefits if an employee was terminated for lack of work." Compl. at ¶¶ 118-123.

Count V must be dismissed because Plaintiffs' state-law promissory estoppel claim "relates to" an employee benefit plan and is thus preempted by ERISA. ERISA § 514(a) explicitly "supersedes any and all State laws insofar as they ... ***relate to*** any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has repeatedly held that § 514(a)'s express preemption provisions are far-reaching. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983).

As recognized by both the Supreme Court and the Third Circuit, ERISA's preemption provision is to be broadly construed: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s]' to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139,

147 (3d Cir. 2007) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). A state-law claim "relates to" an employee benefit plan where the "existence of an ERISA plan was a critical factor in establishing liability, and because the trial court's inquiry would be directed to the plan". *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (holding state-law breach of contract claim preempted).

Here, Plaintiffs' Complaint includes a state-law promissory estoppel claim against Defendants (other than the Plan) based on alleged promises that Plaintiffs could qualify for Early Retirement benefits and/or Optional Retirement benefits under the terms of the Plan.  Compl. ¶¶ 118-123. Plaintiffs' claim "goes to the essence of the function of an ERISA plan—the calculation and payment of the benefit due to a plan participant."  *Kollman*, 487 F.3d at 150. As a result, it is preempted by ERISA.  *See, e.g.*, *Gotham City Orthopedics, LLC v. Aetna Inc.*, No. CV2014915SDWLDW, 2021 WL 1541069, at *2 (D.N.J. Apr. 19, 2021) (preempting promissory estoppel claim that relates to an employee benefit plan); *Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*, 399 F. Supp. 3d 241, 250 (D.N.J. 2019) (stating that "courts within this district have consistently dismissed claims for…promissory estoppel…when they arise from an ERISA-governed plan on the basis of preemption"); *Urbanik v. ITT Corp.*, No. C.A. 09-00627 SDW-MCA, 2009 WL 2132434, at *4 (D.N.J. July 13, 2009) (dismissing state law claims that "relate to" ERISA benefits plan as preempted by ERISA); *Schmelzle v. Unum Life Ins. Co. of Am.*, No. CIV. 08-0734 (AET), 2008 WL 2966688, at *3 (D.N.J. July 31, 2008) (same); *Clark v. Hartford Life & Accident Ins. Co.*, No. 06-0945, 2006 WL 3359651, at *4 (E.D. Pa. Nov. 17, 2006) (preempting promissory estoppel claim which relates to an employee benefit plan where "[t]he existence of the plan created the alleged liability and this Court's analysis would be directed to the plan itself"); *Hartman v. Wilkes-Barre Gen. Hosp.*, 237 F. Supp. 2d 552, 556 (M.D. Pa. 2002)

(preempting promissory estoppel claim where plaintiff alleged defendant violated its promise regarding long-term disability benefits; court held that the claim related to an ERISA benefit plan); *Charter Fairmount Inst., Inc. v. Alta Health Strategies*, 835 F. Supp. 233, 240 (E.D. Pa. 1993) (dismissing state-law claims -- estoppel, misrepresentation, and negligent misrepresentation -- as preempted by ERISA); *Labus v. Navistar Int'l Transp. Corp.*, 740 F. Supp. 1053, 1065 (D.N.J. 1990) (preempting promissory estoppel claim where plaintiff alleged improper denial of early retirement benefits).

### VII.   All of Newton's Claims, Except Possibly Count II, Should Be Dismissed Pursuant To The Settlement Agreement And General Release He Executed On July 1, 2019.

Newton's claims, with the possible exception of Count II, are also barred by the Confidential Settlement Agreement and General Release ("Release") he signed on July 1, 2019.[8] *See* Declaration of Karyn Osmundson ("Osmundson Decl.") at Ex. 1. As such, dismissal of his claims is appropriate. *D.P. Enterprises v. Bucks Cty. Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984).

At the end of his employment with Specialty Products, Newton knowingly and voluntarily signed the Release, which included a general release of all claims, including a release of all ERISA claims (except for any claim for "vested benefits"), and a covenant not to sue. *See* Osmundson Decl. at Ex. 1, para. 4, a. through c.  Specifically, Section 4 of the Release states:

> "a. **General Release of Claims.** Employee **knowingly and voluntarily releases and forever discharges Employer**, its parent corporation, affiliates, subsidiaries, divisions, **predecessors**, insurers, successors and assigns, and their current and former employees, attorneys, officers,

---

[8] If a document is "integral to or explicitly relied upon in the complaint," it may be considered "without converting the motion [to dismiss] into one for summary judgment." *Cuchara v. Gai-Tronics Corp.*, No. CIV.A. 03-6573, 2004 WL 1438186, at *4 (E.D. Pa. Apr. 7, 2004), *aff'd*, 129 F. App'x 728 (3d Cir. 2005). The Third Circuit has explained that the purpose of this rule is to prevent the plaintiff from avoiding dismissal by deciding not to attach a dispositive document to the complaint. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document...Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."

directors and agents, whether now in existence or hereafter created, both individually and in their business capacities, **and their employee benefit plans and programs and their administrators and fiduciaries** (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and **from any and all claims**, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- **The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan)**;

    * * * * *

- **any other federal, state or local law, rule, regulation, or ordinance**;
- **any** public policy, contract, tort, or common law, including, without limitation, breach of contract, breach of a covenant of good faith and fair dealing, interference with business opportunity or contracts, negligence, misrepresentation, fraud, **detrimental reliance**, personal injury, assault, battery, defamation, false light, invasion of privacy, infliction of emotional distress, retaliation, constructive discharge, or wrongful discharge;
- any basis for recovering costs, fees, or other expenses, including attorneys' fees incurred in these matters.

b. **Claims Not Released.** Employee is not waiving any rights he/she may have to: (a) his/her own vested or accrued employee benefits under Employer's health, welfare, or retirement plans as of the Separation Date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) any bounty that may be recoverable as a result of participating in the Securities and Exchange Commission's whistleblower program, or any other bounty program for which recovery cannot be waived as a matter of law; ( d) pursue claims which by law cannot be waived by signing this Agreement; (e) enforce this Agreement; and/or (f) challenge the validity of this Agreement.

c. **Covenant Not to Sue.** Except as provided in this Agreement, Employee further agrees not to sue or otherwise institute, or cause to be instituted, any complaint against Employer or any of the other Releasees in any federal or state court or other forum concerning any claim released herein.

*See* Osmundson Decl. at Ex. 1, para. 4, a. through c. (emphasis added). In exchange for signing the Release, Newton received the severance benefits referenced in the Release. *See* Osmundson Decl. at Ex. 1, para. 2.

> **A.** **The Release Is Valid and Enforceable Because Newton Knowingly and Voluntarily Signed It.**

This Court should dismiss all of Newton's claims, other than Count II, because those claims are barred by the Release that he executed knowingly and voluntarily. *See Witasick v. Minnesota Mut. Life Ins. Co.*, 803 F.3d 184, 192 (3d Cir. 2015) (noting that "[c]ourts regularly take settlement agreements into consideration when dismissing complaints"); *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 733 (3d Cir. 2005) (affirming the grant of the defendant's motion to dismiss because the plaintiff "knowingly and voluntarily signed the Release").

There can be no doubt that Newton knowingly and voluntarily executed the Release. The Release is written in plain and concise language, it is effectively organized in an outline format with clear topical subheadings, and all attachments are visibly labeled. Newton is also an engineer who is more than capable of reading and understanding the Release. Compl. ¶¶ 60, 61. Newton was given forty-five days to consider the Release, giving him ample time for deliberation and consultation with legal counsel. *See* Osmundson Decl., Ex. 1, para. 17 and page 8. All of Newton's rights under the Release were readily apparent, including a description of the consideration he would receive if he executed it. *See* Osmundson Decl., Ex. 1, para. 2. And Newton was advised to consult with an attorney before signing the Release and was given the right to revoke his execution of the Release for a period of seven days after signing it. *See* Osmundson Decl., Ex. 1, para. 17 and page 8. Therefore, the Release is valid and enforceable.

> **B.** **The Carve-Out For "Vested Benefits" Is Not Applicable To Any Claims, Except Possibly Count II.**

In the ERISA context, "'accrued benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment.'" *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 371 (E.D. Pa. 2014). By contrast, "'[v]ested benefits ... refer to those normal retirement benefits to which an employee has a nonforfeitable claim.'" *Id.* "In short, an employee's vested benefits are the accrued benefits that the employee is actually '**entitled to keep**.'" *Id.*; *McDonald v. Pension Plan of NYSA–ILA Pension Tr. Fund*, 320 F.3d 151, 156 (2nd Cir. 2003) ("'Accrued' benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment.... 'Vested' benefits, on the other hand, refer to those normal retirement benefits to which an employee has a 'nonforfeitable' claim; in other words, those accrued benefits he is **entitled to keep**.").

The *Romero* court analyzed a situation where a court faced the interpretation of a broad release that waived "all Claims under [ERISA], and Claims under any SunTrust employee benefit plan," but preserved "Claims related to [Plaintiff's] entitlement to receive any vested benefits earned under any SunTrust employee benefit plan." *Romero*, 1 F. Supp. 3d at 371 (quoting *Stargel v. SunTrust Banks, Inc.*, 968 F. Supp. 2d 1215, 1223 (N.D. Ga. 2013)). In *Stargel*, the court agreed with the defendants' interpretation that the release "merely preserve[d] [Plaintiff's] right [to] the benefits *she was entitled to* under the terms of the SunTrust's employee benefit plans at the time she signed the Release." *Id.* (Emphasis in the original). Like *Stargel*, the *Romero* court equated the term "vested" with the term "entitlement," and, consistent with this ruling, found that "vested benefits" are defined as "benefits [an employee] is **entitled** to keep". *Romero*, 1 F. Supp. 3d at 371 (citing *McClain*, 413 F.3d at 584; *McDonald*, 320 F.3d at 156; *Hakim v. Accenture U.S. Pension Plan*, 718 F.3d 675, at 681–82 (7th Cir. 2013) ("An entitlement, as its name would suggest, refers to vested benefits to which a plaintiff is entitled under the terms of the pension plan

itself."); *Gilley v. Monsanto Co.,* 490 F.3d 848, 859 (11th Cir. 2007) (noting that at the time a challenged amendment to a pension plan was put into place, plaintiff was not "entitled to any benefits," because he "could not have earned ten years of Vested Service until after that date."); *Hein v. TechAmerica Grp., Inc.*, 17 F.3d 1278, 1280 (10th Cir.1994) ("Thus, an interest in a pension benefit program is 'vested' if the employee is ***entitled to retain benefits*** even if his or her employment is terminated prior to retirement.").

Here, the Release prevents Newton from bringing any claims that allege a violation of ERISA, unless the claim is for vested or accrued benefits. *See* Osmundson Decl., Ex. 1, para. 4(a). This unambiguous carve-out is not applicable to the claims brought by Newton, with the possible exception of Count II, because none of the claims seek benefits which he had already earned, or to which he was already "entitled to keep," at the time he executed the Release. *Romero*, 1 F. Supp. 3d at 371. In particular, Count I seeks benefits that Newton might "age into" in the future. Count III asserts claims for breach of fiduciary duty and co-fiduciary duty. Count IV asserts a claim for interference with benefits and Count V asserts a state law claim for promissory estoppel. None of these claims seeks vested or accrued benefits. Therefore, they are all subject to the Release.

**VIII.  This Action Must Also Be Dismissed As To The Putative Class Members.**

Plaintiffs assert all of their claims (Counts I through V) on behalf of themselves and on behalf of a putative class of unnamed individuals. If Plaintiffs' claims are dismissed, the class allegations must also be dismissed. *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [the named plaintiff's] claim fails, the entire action must be dismissed."); *Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) ("[W]hen claims of the named plaintiffs become moot before class certification, dismissal of the action is required."); *Velazquez v. State Farm Fire & Cas. Co.*, No. 19-CV-3128, 2020 WL 1942784, at *11 (E.D. Pa. Mar. 27, 2020) (dismissing named plaintiffs' individual claims and holding that

"class allegations should follow the same fate"); *Plavin v. Group Health Inc.*, 323 F. Supp. 3d 684, 706 (M.D. Pa. 2018) ("Because Plavin is the only named Plaintiff in this case, and having ruled that his claims must be dismissed, the putative class action claims must also fail."); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 WL 4724094, at *8 (E.D. Pa. Aug. 11, 2008) (dismissing entire action where no class had been certified and all claims of the class representatives had been dismissed); *Donachy v. Intrawest U.S. Holdings, Inc.*, No. CIV.A. 10-4038 RMB, 2012 WL 869007, at *9 (D.N.J. Mar. 14, 2012) ("Because this Court dismisses all of Plaintiffs' individual claims, and Plaintiffs' purported class has not yet been certified, Plaintiffs' class allegations must also be dismissed.").

## CONCLUSION

For each of the foregoing reasons, Plaintiffs' Class Action Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Cory A. Thomas*
Cory A. Thomas (I.D. No. 308807)
Nipun J. Patel (I.D. No. 208130)
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA  19104
(215) 252-9600
Cory.Thomas@hklaw.com
Nipun.Patel@hklaw.com

Todd D. Wozniak *
1180 West Peachtree Street N.W., Suite 1800
Atlanta, GA  30309
(404) 817-8431
Todd.Wozniak@hklaw.com

Dated: November 10, 2021                    * *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2021, a true and correct copy of the foregoing Motion to Dismiss Plaintiffs' Class Action Complaint, accompanying Memorandum of Law and Proposed Order were filed using the Court's ECF system, and thereby served copies of same on counsel for all parties of record registered with the ECF system.

<i>/s/ Cory A. Thomas</i><br>
Cory A. Thomas (I.D. No. 308807)<br>
Cira Centre<br>
2929 Arch Street, Suite 800<br>
Philadelphia, PA  19104<br>
(215) 252-9600<br>
Cory.Thomas@hklaw.com