IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT F. COCKERILL et al., *Plaintiffs,* v. CORTEVA, INC. et al., *Defendants.* | CIVIL ACTION NO. 21-3966 |
|---|---|

**MEMORANDUM RE: MOTIONS TO DISMISS AND FOR RECONSIDERATION**

**Baylson, J.**                                                                                            **September 1, 2023**

Congress gave federal courts significant responsibilities when it passed ERISA. Public policy demands that the Court take proper and plausible allegations seriously to vindicate the rights Congress sought to protect through the act. The crux of Plaintiffs' allegations is a significant failure to disclose material facts resulting from the DuPont-Corteva "Spin Off" transaction (the "Spin Off") pertaining to employees' continued eligibility for benefits under their ERISA plan (the "Plan"). If Plaintiffs' allegations are correct, ERISA is the proper remedial statute, which allows the Court to award broad equitable remedies.

Defendants have filed a pair of motions attempting again to defeat this putative class action prior to certification. The first is a motion to reconsider the Court's order (ECF No. 106) accepting Plaintiffs' filing of a Second Amended Complaint ("SAC"), complaining of manifest injustice. The second is a motion to dismiss the SAC in its entirety, which relitigates several issues the Court previously addressed. Neither convinces the Court that it must intervene to disrupt the progression of this case or halt it altogether.

1

## I. LEGAL STANDARDS

### A) Motion for Reconsideration

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)). A court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." Drake v. Steamfitters Local Union No. 420, No. 97-585, 1998 U.S. Dist. LEXIS 13791, at *7-8 (E.D. Pa. Sept. 3, 1998) (citing Smith v. City of Chester, 155 F.R.D. 95, 96-97 (E.D. Pa. 1994)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Industries, Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

### B) Motion to Dismiss – Standing

Under Article III federal courts only have jurisdiction over actual "cases or controversies." U.S. Const. Art. III, § 2. One key element is that plaintiffs "must establish that they have standing to sue." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quotations omitted). To establish Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. See., e.g., Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 358-59 (3d Cir. 2015); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case or controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better

2

Env't, 523 U.S. 83, 103-04 (1998).  An injury in fact must be concrete and "actual or imminent, not conjectural or hypothetical."  See Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (citing Lujan, 504 U.S., at 560).

In adjudicating a motion under Rule 12(b)(1), a district court must first determine whether the motion presents a "facial" attack or a "factual" attack on the claim.  See In re Schering Plough Corp. Intron, 678 F.3d 235, 243 (3d Cir. 2012).  A facial attack, as Defendants present here, is an argument that considers a claim on its face and asserts that it cannot invoke the subject matter jurisdiction of the court.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir. 1977).

**C) Motion to Dismiss – Failure to State a Claim**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'"  129 S. Ct. at 1953.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions;

3

therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

## II.  DISCUSSION

For the reasons below, the Court will deny both the Motion for Reconsideration and the Motion to Dismiss.

### A. Motion for Reconsideration

First, the Motion for Reconsideration. The Court is unconvinced that permitting the SAC will result in the complete restart of litigation that Defendants protests. In fairness to Defendants, the revised class definitions in the SAC result in minor substantive changes, and notably both contain what Plaintiff appears to imply is a drafting error that would expand the class beyond employees of Historical DuPont ("HD") who continued with New DuPont ("ND") after the spin-off. Plaintiffs have responded that any such expansion was inadvertent and expressed willingness to cooperate to modify the classes to that effect.[1] If the Court concludes

---

[1]  The Court recognizes that Plaintiffs have changed their proposed class definition and that Defendants contend a class should be denied as failing to meet the Rule 23 requirements. The Court also recognizes it has the responsibility and authority to certify a class under Rule 23 that is manageable and fair, pursuant to extensive Third Circuit precedent, and will carefully consider both parties' arguments as this case moves forward.

4

that class certification is appropriate here, the Court will take into account the reality that both parties agree that such limitations in the scope of the class are baked into the definition and may decide to clarify it accordingly.[2]

Given that no broad expansion of the classes would result, Defendants considerably exaggerate the burden that permitting this new complaint would create for them. As far as the Court can tell, the arguments for and against certification would be substantially the same (with minor modifications at most) and the only new discovery required would be a deposition of the new named Plaintiff Benson. Defendants have not offered specific suggestions to the contrary.

The Court has considered the remaining arguments in this motion (and the reply) and concluded they are without merit. None establish a clear error of law or manifest injustice in allowing Plaintiffs to file an amended complaint.

**B. Motion to Dismiss**

Second, the Motion to Dismiss. Multiple arguments raised by Defendants are retreads of those the Court addressed last year.[3] See Cockerill v. Corteva, Inc., No. CV 21-3966, 2022 WL

---

[2] The Court takes at face value Plaintiffs' assertion that any such expansion in the scope is not intended in the revised definitions. If the Court concludes that either class should be certified, it is likely that the Court will modify its definition to include the limitations to former HD employees continuing with ND explicitly. If Plaintiffs change their tune and later attempt to argue that such limitations are unwarranted, contrary to their express representations in their response, such contentions will be scrutinized and the Court will consider anew the arguments raised by Defendants in these briefings as to whether such modifications in scope would effectively restart the litigation and result in considerable prejudice to Defendants.

[3] Defendants make little effort to cite the Court's previous opinion addressing several of these issues except by briefly alluding to the Court's prior decision not to address ERISA pre-emption in August 2022. They could and should have done so. This omission only highlights that this motion to dismiss is, at least in part, an attempt to relitigate settled matters. Defendants are adamant that they had every right to "raise (or re-raise as may be the case) any arguments applicable to the newly filed SAC." Reply at 9. Procedurally, they are correct. But they should have articulated why the Court would rule differently on previously rejected arguments based on specific changes to the SAC, rather than offering a few halfhearted bullet point summaries of

3099771 (E.D. Pa. Aug. 4, 2022). To the extent that Defendants' arguments are duplicative of their arguments in the original motion to dismiss (in some cases, explicitly), they are dismissed. The new arguments that Defendants raise fail to move the needle.

    i)    *Benson Has Standing Because He Allegedly Suffered a Concrete Injury*

Defendants argue that Benson suffered no harm because even if he purportedly lost Optional Retirement benefits (which Defendants deny), the benefits available to him under Early and Optional Retirement are the same and he will be able to obtain them as soon as he qualifies for a 100% retirement benefit. This argument holds no water. If Plaintiffs can prove their allegations are true, even if Benson elected to take Early Benefits, he may no longer be eligible to receive 100% of those Early Benefits at age 59, but only at age 62 – a concrete reduction in his benefits.[4] Benson's alleged loss of Optional Benefits cannot be wholly alleviated by the existence of Early Benefits when Class A plausibly alleges that <u>both</u> have been reduced. No choice would spare Benson the alleged harm: whether Early Benefits or Optional Benefits, he was allegedly harmed either way.

    ii)    *Discovery is Necessary to Determine Whether Futility or Concealment Excuse Plaintiffs' Failure to Exhaust Administrative Remedies*

Defendants assert that Benson is one of many putative class members who has not exhausted his administrative remedies. Plaintiffs do not appear to dispute this. Defendants argue this

---

their prior contentions and casually incorporating their entire previous motion by reference. Mot. at 17-18. The Court, for its part, has reviewed the SAC and has not been able to identify changes that warrant a different disposition.

[4]    Defendants insist in their reply brief that Benson would have been eligible for Optional Benefits at the same age of 62 as he would have been eligible for optional benefits. But Plaintiffs state that Benson seeks entitlement to optional retirement benefits as of the date of the spin off. See ECF No. 112 at 5.

should bar his participation in the action. The Court has raised the possibility of allowing putative class members the opportunity to exhaust by means of a pre-certification notice to the class. Defendants firmly resist that idea, noting that under the Plan the administrative procedures must be followed "in a timely manner." Defendants assert the putative class members did not do so here. Mot. at 7.

Contrary to Defendants' assertions, the Court does not intend to ignore any timeliness requirements unilaterally and without authority. Rather, Plaintiffs specifically allege that the harms in this case were concealed by misleading or false representations. Federal common law includes a "discovery rule" which, in the case of fraud or concealment, tolls the limitations periods for plaintiffs. Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006). Fraudulent concealment equitably tolls a limitations period if three elements are pled with specificity and ultimately proven: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." Id. Defendants argue that Plaintiffs have not pled such matters with enough specificity. But Plaintiffs' allegations of concealment are at the heart of the SAC and the Court is satisfied that specific examples can be found in the SAC. See, e.g., SAC ¶ 57, 92, 100-01.

Further, Plaintiffs also allege that exhaustion for Benson would have been futile because Defendants' rejection of the named Plaintiffs was not based on his individual circumstances, but a new policy put in place after the Spin-Off. To determine whether exhaustion would be futile in ERISA cases, courts in the Third Circuit consider (1) whether plaintiff diligently pursued administrative relief, (2) whether plaintiff acted reasonably in seeking immediate judicial review

7

under the circumstances, (3) existence of a fixed policy denying benefits, (4) failure of the company to comply with its own internal administrative procedures, and (5) testimony of plan administrators that any administrative appeal was futile.  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002).  Resolving several of these questions prior to discovery would be premature, as they are fact intensive in nature.  For now, Plaintiffs' specific allegations that Defendants had reduced the benefits as a matter of fixed policy are sufficient to suggest that filing a claim for benefits according to the old policy would have been futile.

The Court acknowledges that factual development may be required to determine that fraudulent concealment or futility apply here.[5]  Since Plaintiff may need to establish either futility or fraudulent concealment by Defendants to defeat the timeliness arguments here, Defendants may raise the issue of exhaustion subsequently in a post-discovery summary judgment motion.

> iii) *Plaintiffs Benson and Major are Not Time Barred Because the Allegations Specifically Allege Fraudulent Concealment Related to the Cause of Action*

Defendants also allege that claims by Major and Benson (and, by extension, putative class members) are barred by relevant state statutes of limitations.  For the reasons addressed above, Plaintiffs' specific allegations of fraudulent concealment are sufficient to survive a motion to dismiss.  Defendants may raise the issue again at summary judgment if they wish to contend that Plaintiffs failed to prove that such concealment took place.

---

[5]   The Court need not yet consider whether failure to exhaust would bar claims related to breach of fiduciary duty.

> iv) *Determining Whether Major or Benson Were Eligible for Optional Benefits Would Be Premature*

Defendants ask the Court to conclude as a matter of law that Major and Benson were not eligible for Optional Benefits and therefore cannot state a claim. That, too, would be premature. What the parties are essentially disputing here is proper interpretation of the language of the plan and the scope of its coverage. The Court addressed plan interpretation of possibly ambiguous language at length in a memorandum discussing the previous motion to dismiss in August last year. See Cockerill, 2022 WL 3099771 at *7-8; see also Bergamatto v. Bd. of Trustees of the NYSA- ILA Pension Fund, 933 F.3d 257, 264 (3d Cir. 2019) (discussing legal standards for judicial review of plan administrator's interpretations of plan language). The Court's approach is the same here. The language that Defendants contend precludes Benson and Major from receiving Optional Benefits includes terms that may be ambiguous, just as the language addressed in the previous opinion did.[6] See id. For the reasons outlined in the previous memorandum, the reasonability of the plan administrator's determinations here is best left for a Rule 56 motion or for a jury, as the trier of fact. Id. at *8.

> v) *The Court Declines to Address ERISA Pre-Emption of Count VII for the Same Reasons Previously Addressed*

Defendants again ask the Court to take up the issue of ERISA pre-emption of the state law promissory estoppel claim. The Court declined to do so previously when Defendants filed their

---

[6] The Court previously observed that the Supreme Court has held that "employee" is subject to multiple interpretations. Cockerill, 2022 WL 3099771 at *7 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992)). Further, the Plan language "employee is offered and accepts employment with buyer or joint venture at the site in conjunction with a sales agreement" contains terms that may be ambiguous. Such questions are better resolved later in the litigation and the Court declines to address them prematurely.

previous motion to dismiss.  See Cockerill, 2022 WL 3099771 at *8.  Defendants argue that the discovery to date in the case provides enough reason for the Court to take up the issue again.  The Court disagrees.  Significant discovery has taken place, but this remains a motion to dismiss in a putative class action with much work still to do.  The Court will again decline to address the issue but may do so at a later stage of the litigation.

### III. CONCLUSION

For the reasons above, the Court will deny both motions.  No legal error or manifest injustice warrants reconsideration and many of the issues raised in the Motion to Dismiss are fit for disposition in a summary judgment motion or trial instead (if at all).

An appropriate order follows.