**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT F. COCKERILL, CHRISTOPHER WILLIAM NEWTON, OLIVER MAJOR, and DARRELL D. BENSON, SR., individually and as representatives on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>  v.<br><br>CORTEVA, INC.; DUPONT SPECIALTY PRODUCTS USA, LLC; DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; THE PENSION AND RETIREMENT PLAN; and THE BENEFIT PLANS ADMINISTRATIVE COMMITTEE,<br><br>    Defendants. | Civil Action No. 2:21-cv-03966-MMB |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT AS TO
<u>PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>**

**HOLLAND & KNIGHT LLP**
Nipun J. Patel (I.D. No. 208130)
Cory A. Thomas (I.D. No. 308807)
One Liberty Place, Suite 3300
1650 Market St.
Philadelphia, PA 19103
(215) 252-9600
Nipun.Patel@hklaw.com
Cory.Thomas@hklaw.com

Andrew W. Balthazor (*pro hac vice*)
701 Brickell Ave., Suite 3300
Miami, FL 33131
(305) 789-7584
Andrew.Balthazor@hklaw.com

**HOLLAND & KNIGHT LLP**
Todd D. Wozniak (*pro hac vice*)
1180 West Peachtree Street N.W.
Suite 1800
Atlanta, GA 30309
(404) 817-8431
Todd.Wozniak@hklaw.com

Kayla Pragid (*pro hac vice*)
777 S. Flagler St., 1900W
West Palm Beach, FL 33401
(561) 650-8303
Kayla.Pragid@hklaw.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................III

INTRODUCTION ...................................................................................................1

LEGAL STANDARDS ..........................................................................................3

LEGAL ARGUMENTS...........................................................................................3

I.     Plaintiffs Offer No Evidence That The Plan Administrator Acted Arbitrarily And Capriciously. .......................................................................................3

     A.     Early Retirement Class (Count I): The Plan Administrator's Denials Of Early Retirement Benefits Were Reasonable And Supported By Substantial Evidence. ..............................................................5

     B.     Optional Retirement Class (Count II): The Plan Administrator Did Not Abuse Its Discretion In Determining The Plan's Business Reorganization Exception Applied To The Spin-Off And The Optional Retirement Benefits. .......................................................7

II.     Statutes of Limitation Bar Counts I, II, And V.........................................9

     A.     Delaware Law Provides the Statute Of Limitations For Counts I, II, and V...............................................................................10

     B.     Delaware's One-Year Statute of Limitations Bars Counts I, II, and V. ....11

III.     Summary Judgment is Appropriate for Count IV Because A Plan Fiduciary Did Not Make Any Material Misrepresentations Or Inadequate Disclosures; Nor Have Plaintiffs Shown an Entitlement to Their Requested Count IV Equitable Remedies. ...................................................................12

     A.     The Facts Establish No Material Misrepresentation Or Inadequate Disclosure By A Plan Fiduciary. .............................................12

     B.     Plaintiffs Have Not Proven an Entitlement to Their Requested Count IV Equitable Remedies. ................................................19

IV.     Summary Judgment Must Be Entered As To Count V Because Plaintiffs Have No Evidence To Support Their Claim For Interference With A Protected Right.........................................................................24

V.     Plaintiffs' Anti-Cutback Claim Fails Because No Plan Amendment Eliminated The Optional Retirement Benefit. .......................................27

VI.     Summary Judgment Should Be Entered On Count VII Because It Is Preempted By ERISA And Not Supported By The Evidence. ..............................28

VII.     Major's Claims Are Barred By His Settlement Agreement And General Release. ...................................................................................30

i

      A.    The Releases Are Valid And Enforceable ..................................................30

      B.    The Carve-Out For "Vested Or Accrued Employee Benefits" Is Inapplicable To Any Class Claims. ..........................................................31

VIII.   Summary Judgment Is Appropriate Because Major And Benson Failed To Properly Exhaust The Administrative Remedies Required Under The Plan.........32

      A.    The Exhaustion Requirement Outlined in the SPD is enforceable against Major and Benson...........................................................................33

      B.    Benson and Major failed to Exhaust Administrative Remedies Required under the Plain Prior to this Suit. ................................................34

IX.    The Optional Retirement Class Must Be Decertified for Failing to Satisfy Rule 23's Typicality and Adequacy Requirements. ...............................................34

CONCLUSION...................................................................................................................35

CERTIFICATE OF SERVICE ..........................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                              **Page(s)**

*Alvares v. Montell USA Inc.*,
101 F. App'x 881 (3d Cir. 2004) ........................................................................11

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014)...............................................................................20

*Amara v. CIGNA Corp.*,
925 F. Supp. 2d 242 (D. Conn. 2012), *aff'd* 775 F.3d 510 (2d Cir. 2014) ............22

*Antolik v. Saks, Inc.*,
463 F.3d 796 (8th Cir. 2006) ..............................................................................22

*Bennett v. Indep. Blue Cross*,
No. CIV. A. 92-4249, 1993 WL 15603 (E.D. Pa. Jan. 13, 1993)...........................30

*Bergamatto v. Bd. of Trustees of the NYSA-ILA Pension Fund*,
933 F.3d 257 (3d Cir. 2019)..................................................................................4

*Bicknell v. Lockheed Martin Grp. Benefits Plan*,
410 F. App'x 570 (3d Cir. 2011) ...............................................................18, 19, 21

*Charter Fairmount Inst., Inc. v. Alta Health Strategies*,
835 F. Supp. 233 (E.D. Pa. 1993) ........................................................................28

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)............................................................................... *passim*

*Clark v. Hartford Life & Accident Ins.*,
No. 06-0945, 2006 WL 3359651 (E.D. Pa. Nov. 17, 2006) ..................................28

*Cunningham v. Wawa, Inc.*,
387 F. Supp. 3d 529 (E.D. Pa. 2019) .........................................................19, 20, 21

*D'Amico v. CBS Corp.*,
297 F.3d 287 (3d Cir. 2002)................................................................................32

*Dade v. N. Am. Philips Corp.*,
68 F.3d 1558 (3d Cir. 1995)................................................................................27

*Dewitt v. Penn-Del Directory Corp.*,
106 F.3d 514 (3d Cir. 1997)................................................................................25

*Dix v. Total Petrochemicals USA, Inc.*,
 No. CIV. 10-3196, 2012 WL 6005011 (D.N.J. Nov. 30, 2012), *aff'd sub nom.*
 *Dix v. Total Petrochemicals USA, Inc., Pension Plan*, 540 F. App'x 130 (3d
 Cir. 2013) ................................................................................................................9, 10

*Doe v. Indep. Blue Cross*,
 No. CV 23-1530, 2023 WL 8050471 (E.D. Pa. Nov. 21, 2023)............................................22

*Doroshow v. Hartford Life & Acc. Ins.*,
 574 F.3d 230 (3d Cir. 2009)....................................................................................................4

*Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates*,
 871 F.3d 239 (3d Cir. 2017)....................................................................................................6

*Durand v. Hanover Ins.*,
 806 F.3d 367 (6th Cir. 2015) .................................................................................................10

*Engers v. AT&T*,
 428 F. Supp. 2d 213 (D.N.J. 2006), *opinion clarified on denial of*
 *reconsideration sub nom. Engers v. AT&T Corp.*, 2006 WL 3359722 (D.N.J.
 Nov. 20, 2006), *aff'd sub nom. Engers v. AT&T, Inc.*, 466 F. App'x 75 (3d
 Cir. 2011) ........................................................................................................................33, 34

*Fleisher v. Standard Ins.*,
 679 F.3d 116 (3d Cir. 2012)..............................................................................................4, 5

*Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*,
 271 F.3d 551 (3d Cir. 2001)....................................................................................................9

*Giroux v. Fortis Benefits Ins.*,
 353 F. Supp. 2d 45 (D. Me. 2005) ..........................................................................................3

*Goldenberg v. Indel, Inc.*,
 No. CV 09-5202, 2012 WL 12906332 (D.N.J. Feb. 28, 2012)..............................................22

*Hammersmith v. TIG Ins.*,
 480 F.3d 220 (3d Cir. 2007)...........................................................................................10, 11

*Harrow v. Prudential Ins.*,
 279 F.3d 244 (3d Cir. 2002)..................................................................................................32

*Hendricks v. Edgewater Steel Co.*,
 898 F.2d 385 (3d Cir. 1990)..................................................................................................25

*Henshaw v. Roofers Loc. No. 4 Pension Fund*,
 No. 04CV6106, 2006 WL 2715138 (D.N.J. Sept. 22, 2006)....................................32, 33, 34

*Hickman v. Tosco Corp.*,
 840 F.2d 564 (8th Cir. 1988) ................................................................................................12

iv

*Howley v. Mellon Fin. Corp.*,
   625 F.3d 788 (3d Cir. 2010)............................................................................5

*Hozier v. Midwest Fasteners, Inc.*,
   908 F.2d 1155 (3d Cir. 1990)........................................................................18

*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry.*,
   520 U.S. 510 (1997).......................................................................................25

*Keller-Smith v. Rel. Standard Life Ins.*,
   No. CV 17-1549, 2018 WL 4046511 (E.D. Pa. Aug. 23, 2018)......................3

*Kenseth v. Dean Health Plan, Inc.*,
   722 F.3d 869 (7th Cir. 2013) ...........................................................20, 21, 23

*Kollman v. Hewitt Assocs.*,
   487 F.3d 139 (3d Cir. 2007)..........................................................................28

*Korotynska v. Metro. Life Ins.*,
   474 F.3d 101 (4th Cir. 2006) ........................................................................22

*Kowalchick v. Director, OWCP*,
   893 F.2d 615 (3d Cir. 1990)............................................................................4

*Kruzits v. Okuma Mach. Tool, Inc.*,
   40 F.3d 52 (3d Cir. 1994) ..............................................................................10

*Leahy v. Raytheon Co.*,
   315 F.3d 11 (1st Cir. 2002)..............................................................................3

*Lehman v. Prudential Ins. Co. of Am.*,
   74 F.3d 323 (1st Cir. 1996)............................................................................25

*Lipstein v. UnitedHealth Grp.*,
   296 F.R.D. 279 (D.N.J. 2013)..........................................................................5

*Lutz v. Philips Elecs. N. Am. Corp.*,
   347 F. App'x 773 (3d Cir. 2009) ...................................................................11

*McDonald v. Pension Plan of NYSA–ILA Pension Tr. Fund*,
   320 F.3d 151 (2nd Cir. 2003).........................................................................31

*McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*,
   686 F. App'x 118 (3d Cir. 2017) ...................................................................33

*McLendon v. Cont'l Can Co.*,
   908 F.2d 1171 (3d Cir. 1990)........................................................................25

*Orvosh v. Program of Grp. Ins. for Salaried Emp. of Volkswagen of Am.*,
    222 F.3d 123 (3d Cir. 2000)....................................................................................9

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997)..............................................................................................6

*Romero v. Allstate Ins.*,
    52 F. Supp. 3d 715 (E.D. Pa. 2014) ...........................................................11, 31, 32

*Salvucci v. Glenmede Corp.*,
    657 F. Supp. 3d 677 (E.D. Pa. 2023) ...................................................................19

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983).............................................................................................28

*Shook v. Avaya, Inc.*,
    625 F.3d 69, 73 (3d Cir. 2010)..........................................................................23

*Silva v. Metro. Life Ins.*,
    762 F.3d 711 (8th Cir. 2014) .............................................................................23

*Stratton v. E.I. DuPont De Nemours & Co.*,
    363 F.3d 250 (3d Cir. 2004)................................................................................5

*Thondukolam v. Corteva, Inc.*,
    No. 19-CV-03857, 2020 WL 5944423 (N.D. Cal. Oct. 7, 2020) ..........................26

*Tolson v. Avondale Indus.*,
    141 F.3d 604 (5th Cir. 1998) .............................................................................22

*In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*,
    58 F.3d 896 (3d. Cir. 1995)..........................................................................18, 21

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)..........................................................................................22

*Wilkins v. Baptist Healthcare Sys., Inc.*,
    150 F.3d 609 (6th Cir. 1998) .............................................................................22

**Statutes**

29 U.S.C. § 1054(g) ................................................................................................27

29 U.S.C. § 1132(a)(1)(B) .........................................................................................3

29 U.S.C. § 1140.....................................................................................................25

29 U.S.C. § 1144(a) .................................................................................................28

ERISA § 204(g) .......................................................................................................2, 27, 28

ERISA § 502(a)(1)(B).......................................................................................................3, 11

ERISA § 502(a)(3) .......................................................................................2, 19, 21, 23

ERISA § 510 ................................................................................................... *passim*

ERISA § 514(a).......................................................................................................28

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................................35

Fed. R. Civ. P. 56(a) .......................................................................................................3

## INTRODUCTION

The Court should enter summary judgment in favor of Defendants because the Plan Administrator of the DuPont Pension and Retirement Plan ("Plan") appropriately exercised its broad discretion in denying the benefit claims and appeals of the Plaintiffs seeking either Early Retirement or Optional Retirement benefits. With regard to Early Retirement benefits under the Plan, the Plan and the 2018 Summary Plan Description ("SPD") make clear that a participant is only eligible for Early Retirement benefits if they are at least age 50 with at least 15 years of service ***while still working for a participating employer in the Plan***. Plan participants with at least 15 years of service who are not yet 50 years old at the time they cease employment with a participating employer are eligible only for Vested Deferred benefits. There was no abuse of discretion by the Plan Administrator in construing the Plan according to its clear and unambiguous terms to deny Early Retirement benefits to the Early Retirement Class who went to work at New DuPont, an entity that indisputably did not participate in the Plan, following the May 31, 2019, Spin-Off transaction at issue in this litigation.

As to Plaintiffs' Optional Retirement benefits claims, the Plan makes clear such benefits are unavailable to individuals who no longer work for a participating employer as a result of a corporate reorganization, like the Spin-Off. The Benefit Plans Administrative Committee ("Administrative Committee"), acting as Plan Administrator, formally interpreted the Plan language "'to include corporate spin-offs as an exception to the applicability of Optional Retirement benefits,' consistent with past practice and the intent of the Plan's provision[s]" to provide Optional benefits only in situations where an individual experiences a job loss. Plaintiffs in the Optional Retirement Class experienced no such job loss and there was no abuse of discretion by the Plan Administrator in interpreting and applying the Plan in accordance with past practice.

Both of Plaintiffs' benefit denial claims, Counts I and II, thus fail pursuant to the Plan's plain terms and the heavy deference afforded to the Plan Administrator in construing the Plan. Plaintiffs' remaining claims are unsupported by evidence sufficient to raise a triable issue of fact:

- Count IV, pled in the alternative to Counts I and II, seeks equitable relief under ERISA § 502(a)(3) against all Defendants (other than the Plan) for alleged fiduciary and co-fiduciary breaches. This claim fails because the evidence is insufficient to raise a genuine issue as to the essential elements of Plaintiffs' claims, including evidence of actual, material misrepresentations or omissions, or any evidence of fraud, causation and harm, or detrimental reliance.

- Count V asserts an untimely ERISA § 510 claim against all Defendants (other than the Plan) for allegedly interfering with the Early Retirement Class's ability to obtain Early Retirement benefits under the Plan. Count V fails because there is no evidence of "intentional interference" with Plaintiffs' attainment of benefits that were never available, or any evidence that Defendants engaged in anything other than ordinary business transactions.

- Count VI asserts on Plaintiff Major's and Benson's behalf an ERISA § 204(g) claim against the Plan and Plan Administrator for allegedly amending the Plan to eliminate Optional Retirement benefits for participants who were at least age 50 with 15 years of service at the time of the Spin-Off. Count VI fails because Plaintiffs fail to identify an amendment which caused the alleged benefit elimination. Major and Benson also failed to exhaust their administrative remedies with respect to this Count.

- Count VII is a state-law promissory estoppel claim that is clearly preempted by ERISA and because there is no evidence Defendants made any actionable promises to Plaintiffs or that Plaintiffs detrimentally relied on any such promise.

All Counts also fail as to Major and similarly situated Optional Retirement Class members, because they signed general releases of claims that bar their claims. Moreover, all Counts asserted by Major and Benson should also be disposed of on summary judgment because neither exhausted their administrative remedies prior to filing suit.

To the extent the Court denies Defendants' Motion for Summary Judgment as to any Optional Retirement Claims, Defendants also renew their Motion to Decertify the Optional Retirement Class because Benson is not adequate or typical and Major's "fatal flaws" recognized by the Court prevent him from serving as a class representative.

## LEGAL STANDARDS

Summary judgment is appropriate where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment in an ERISA benefits case differs from ordinary civil case review. *See Keller-Smith v. Rel. Standard Life Ins.*, No. CV 17-1549, 2018 WL 4046511, at *7 (E.D. Pa. Aug. 23, 2018). "Unlike typical summary judgment proceedings, courts reviewing dispositive motions in ERISA cases have recognized that 'summary judgment is simply a vehicle for deciding the [benefits] issue and the non-moving party is not entitled to the usual inferences in its favor.'" *Id.* (citing *Nolan v. Heald Coll.*, 551 F.3d 1148, 1153 (9th Cir. 2009) ("[A] motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.")).

ERISA benefits claims are typically decided on cross-motions for summary judgment, based exclusively on the administrative record, and utilizing an abuse of discretion standard of review. *See Giroux v. Fortis Benefits Ins.*, 353 F. Supp. 2d 45, 51 (D. Me. 2005). "In an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002) (a district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary").

## LEGAL ARGUMENTS

**I.    Plaintiffs Offer No Evidence That The Plan Administrator Acted Arbitrarily And Capriciously.**

Counts I and II are ERISA Plan benefits claims asserted under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs assert that the Plan Administrator acted arbitrarily and

capriciously when it denied Cockerill's administrative claim for Early Retirement benefits (Count I) and denied Major's and Benson's administrative claims for Optional Retirement benefits (Count II).[3] Plaintiffs' claims are baseless and judgment should be entered on Counts I and II.

As the Court has already held, an arbitrary and capricious standard of review applies where, as here, a plan vests a fiduciary "with discretionary authority to manage and administer the plan[.]" Aug. 4, 2022, Order [ECF 26] at 14 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09 (1989)). Here, the Plan grants the Plan Administrator such discretionary authority, *see id.*, and the Administrator's denial of Plaintiffs' claims must be upheld unless the denials were "an abuse of discretion or arbitrary and capricious." *Bergamatto v. Bd. of Trustees of the NYSA-ILA Pension Fund*, 933 F.3d 257, 263–64 (3d Cir. 2019). The arbitrary and capricious standard is "essentially identical" to the abuse of discretion standard and the terms are used interchangeably. *Fleisher v. Standard Ins.*, 679 F.3d 116, 121 n.2 (3d Cir. 2012).

When applying the arbitrary and capricious standard to plan interpretation or plan claims decisions, the Third Circuit considers the administrative record—and only the administrative record—to determine whether the administrator's decisions were "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Life & Acc. Ins.*, 574 F.3d 230, 234 (3d Cir. 2009). Evidence is "substantial" if it is supported "more than a mere scintilla." *Kowalchick v. Director, OWCP*, 893 F.2d 615, 619 (3d Cir. 1990)).

Under the abuse of discretion standard of review, even if a court disagrees with the

---

[3] No other members of either Class have properly exhausted their administrative remedies; the claims asserted in the administrative process by Major are not the same as the claims being asserted in the Second Amended Complaint ("SAC"); and the administrative claims asserted on Benson's behalf are not his actual claims. As a result, Major and Benson have not properly exhausted their administrative remedies. Plaintiffs' counsel attempted to file class wide claims through the administrative process, but such claims are not proper for several reasons, including the fact that Plaintiffs' counsel did not represent any putative class members at the time.

administrator's decision, it "may not substitute its own judgment for that of plan administrators." *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 256 (3d Cir. 2004). District courts are limited to determining whether an administrator's plan interpretation is reasonable. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 795 (3d Cir. 2010). If the district court determines that a plan term is ambiguous, it must defer to the plan administrator's reasonable interpretation. *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 295 (D.N.J. 2013) (defendants' calculation was a reasonable implementation of the plan's ambiguous language); *Fleisher*, 679 F.3d at 124.

When deciding whether an administrator's interpretation of a plan is reasonable, the Third Circuit considers a number of factors including: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." *Howley*, 625 F.3d at 795. All of these factors weigh in favor of upholding the Administrator's benefits denials.

### A.  Early Retirement Class (Count I): The Plan Administrator's Denials Of Early Retirement Benefits Were Reasonable And Supported By Substantial Evidence.

Defendants are entitled to judgment as a matter of law on Count I because the Plan Administrator reasonably applied the terms of the Plan in denying Plaintiffs' Early Retirement benefit claims. In particular, the Plan only provides Early Retirement benefits to "an employee . . . after reaching age 50 . . . with at least 15 years of service." *See* SoF ¶ 15. The Plan defines "employee" as "all employees of the Company hired on or before December 31, 2006." SoF ¶ 16. "Company" is defined in the Plan as "E.I. du Pont de Nemours and Company [*i.e.*, Historical DuPont] and/or any wholly owned subsidiary or part thereof which adopts this Plan[.]" SoF ¶ 18. This language is unambiguous: to be considered an "employee" for purposes of the Plan, the

individual must be an employee of Historical DuPont or one of its subsidiaries that adopts the Plan.

The plain, natural meaning of the term "employee" means a current employee unless modified to also include "former employees." This interpretation is consistent with the Plan language and context, which *distinguishes* between employees and former employees—referring to "former employees" at least 51 times in Title I of the Plan. *See* SoF ¶ 17; *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341–42 (1997) (determining the term "employee" ambiguous as to whether it included former employees because the statute at issue *never* used the phrase "former employees" despite clearly covering former employees). Moreover, even if "employee" were ambiguous and required interpretation, the Plan Administrator's interpretation that "employee" only encompasses *current* employees was reasonable in light of the Plan's numerous references to *former* employees. *See Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 248 (3d Cir. 2017) ("[W]hen granting deference 'we do not demand the *best* interpretation, only a reasonable one.'").

With this backdrop, Cockerill and members of the Early Retirement Class do not qualify for Early Retirement benefits. First, by definition, the Early Retirement Class only includes employees who were under age 50 as of the Spin-Off date, *see* Class Cert. Order [ECF 137], and thus were not eligible for Early Retirement as of the Spin-Off. Second, the Early Retirement Class's post-Spin employers—Specialty Products or other New DuPont subsidiaries—were not participating employers in the Plan following the Spin-Off. *See* SoF ¶ 39–41. Consequently, the Early Retirement Class members ceased being "employees" of the "Company" (Historical DuPont) immediately following the Spin-Off, rendering the Early Retirement Class members ***ineligible*** for Early Retirement benefits.

Plaintiffs provide no evidence that the denial of their benefits is inconsistent with any prior

Plan interpretations or benefits decisions. Indeed, Cockerill admitted that he knows of no one who was permitted to "age into" Early Retirement benefits after separating their employment from Historical DuPont. *See* SoF ¶ 68. Moreover, even if the term "employee" was ambiguous, as Plaintiffs argue, the Plan Administrator's construction of the term to mean current employees of Historical DuPont—or one of its subsidiaries that adopted the Plan—is not arbitrary and capricious. To the contrary, that construction is consistent with the Plan's language, consistent with past practice, and is reasonable. Judgment should be entered in Defendants' favor on Count I.

**B.** **Optional Retirement Class (Count II): The Plan Administrator Did Not Abuse Its Discretion In Determining The Plan's Business Reorganization Exception Applied To The Spin-Off And The Optional Retirement Benefits.**

Count II fails because the Plan Administrator reasonably construed the terms of the Plan to deny Major's and Benson's Optional Retirement benefits claim. The undisputed record evidence establishes the Administrator's interpretation of the Plan was reasonable, consistent with the Plan sponsor's intentions, and consistent with past practice. As a result, Major, Benson, and members of the Optional Retirement Class do not have a right to Optional Retirement benefits.

Unlike Early Retirement, which is available to employees based on age and Eligibility Service at the time they separate their employment from the Plan's participating employers, the Optional Retirement benefit requires that the employee also be involuntarily terminated without cause. SoF ¶ 19. The Plan also expressly precludes Optional Retirement benefits under certain circumstances involving corporate transactions. *See* SoF ¶ 19–21. As relevant here, those circumstances include when "the employee is offered and accepts employment with the buyer or joint venture at the site in conjunction with a sales agreement between the Company and a buyer of company assets or in conjunction with the formation of a joint venture[.]" *See* SoF ¶ 21; 29 (hereinafter "Business Reorganization Exception").

In denying Benson's benefits claim, the Plan Administrator determined that "Optional

Retirement benefits for participants who experience a separation of employment is generally intended to help soften the financial impact of [involuntary] unemployment" and that "[i]n situations where the participant is continuing employment at the same 'site,' the participant typically experiences no lapse of income or employment even though the participant's employer ceased participating in the Plan." SoF ¶ 102. The Administrator explained that it examined prior spin-offs and business reorganizations involving Historical DuPont or one of its subsidiaries and found that Optional Retirement benefits were not available to employees who separated employment from a Plan participating employer as a result of such business reorganizations. The Committee then formally interpreted the Business Reorganization Exception to apply to the Spin-Off "consistent with the intent of the plan provisions and consistent with past practice." SoF ¶ 103. The Administrator thus denied Plaintiffs' requests for Optional Retirement benefits because Plaintiffs continued to work in the same position and location for New Dupont (or one of its subsidiaries) following the Spin-Off, *i.e.,* there was no job/income loss. *See* SoF ¶ 86; 95–98; 101–02 (citing the Spin-Off as the reason for denying Benson's and Major's claims).

The Plan Administrator's interpretation of the Business Reorganization Exception and application to the Spin-Off was reasonable and consistent with past practice and the Plan sponsor's intentions. Indeed, such an interpretation was consistent with the goal of the Optional Retirement provision—which was to provide a more generous benefit than Early Retirement in the event of certain involuntarily terminations that result in a loss of employment/income—because in certain business transactions, the employee is still employed and earning income notwithstanding the employer is no longer participating in the Plan. SoF ¶¶ 39–40. In such circumstances, employees have not suffered a financial blow and thus do not need the financial cushioning of Optional Retirement intended for the unexpectedly unemployed. Moreover, the Administrator's

interpretation is consistent with past practice—as explained by the Administrator and as demonstrated in the list of prior business reorganizations produced during discovery. SoF ¶ 29.

There is no evidence that the Committee's interpretation of the Business Reorganization Exception rendered the Plan internally inconsistent, or that the interpretation conflicted with any ERISA requirements, or was contrary to the Plan's plain language—because, in fact, the interpretation was reasonable and consistent with past practice. SoF ¶ 29; *see Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund*, 271 F.3d 551, 555 (3d Cir. 2001) (district court "was bound to affirm [the administrator's] decision if it was not contrary to the Plan's terms and was rationally related to a legitimate Plan purpose"). Plaintiffs' proffered expert (Altman) admitted Optional Retirement was intended "[t]o cushion the blow felt by otherwise loyal employees who lost their jobs" or "[t]o compensate employees for losing their jobs" and "[l]osing their income." SoF ¶ 20. Altman could not recall a single instance when a benefit like Optional Retirement was ever offered to an employee who kept their job or separated their employment from the plan sponsor but kept working for a previously related entity. SoF ¶ 116.

Accordingly, the Plan Administrator's denial of Plaintiffs' claims for Optional Retirement benefits was a reasonable exercise of discretion in interpreting the Plan's terms and must be upheld. *See Orvosh v. Program of Grp. Ins. for Salaried Emp. of Volkswagen of Am.*, 222 F.3d 123, 129 (3d Cir. 2000) ("[A] plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.").

## II.    Statutes of Limitation Bar Counts I, II, And V.

Counts I, II, and V are time-barred. Statutes of limitation generally begin to run when a plaintiff receives a calculation of their pension benefit or there is otherwise a clear repudiation of benefits made known to the plaintiff. *See Dix v. Total Petrochemicals USA, Inc.*, No. CIV. 10-

3196, 2012 WL 6005011, at *15 (D.N.J. Nov. 30, 2012), *aff'd sub nom. Dix v. Total Petrochemicals USA, Inc., Pension Plan*, 540 F. App'x 130 (3d Cir. 2013). In *Dix*, the court explained that the statute of limitations barred claims in almost identical circumstances as in this case: "[t]he Plaintiff received the final calculation of his lump sum payment in a letter dated November 10, 2003 which was received by the Plaintiff no later than November 14, 2003. At the latest, Plaintiff's claim accrued on November 14, 2003." *Id*. Here, there is a one-year statute of limitations for Counts I, II, and V. Because the Complaint was filed more than year after Counts I, II, and V accrued, they are time barred.

### A.    Delaware Law Provides the Statute Of Limitations For Counts I, II, and V.

ERISA does not supply a statute of limitations for claims brought under ERISA § 502(a)(1)(B) (Counts I–II) or § 510 (Count V). Consequently, courts look to the most analogous state law statute of limitations. *See Durand v. Hanover Ins.*, 806 F.3d 367, 374 (6th Cir. 2015).

Pennsylvania's choice of law rules determine which state's law controls the limitations period. *See Kruzits v. Okuma Mach. Tool, Inc*., 40 F.3d 52, 55 (3d Cir. 1994) ("[a] federal court exercising diversity jurisdiction [applies] the choice of law rules of the forum state") Pennsylvania's choice of law analysis uses a two-step framework: (1) the Court determines whether a conflict exists between the respective laws; and (2) the Court then determines which state has the greater interest in the application of its law. *Hammersmith v. TIG Ins.*, 480 F.3d 220, 230 (3d Cir. 2007).

With regard to the first step, the potential states with interest in this matter are: (1) Delaware (where Defendants are located and the Plan is administered);[4] (2) Pennsylvania (where Cockerill resides);[5] and (3) all other states in which class members reside. A conflict exists between the

---

[4] *See* SoF ¶¶ 1–3.
[5] *See* SoF ¶ 51.

respective laws of these jurisdictions and a choice of law analysis is required.

In Delaware, the statute of limitations on a benefits-related claim, like Counts I, II, and V, is one year. *Id.* (citing *Syed v. Hercules, Inc.*, 214 F.3d 155, 159–61 (3d Cir. 2000)); *Alvares v. Montell USA Inc.*, 101 F. App'x 881, 884 (3d Cir. 2004) (citing 10 Del. C. § 8111). The relevant statute of limitations in Pennsylvania is four years. *Lutz v. Philips Elecs. N. Am. Corp.*, 347 F. App'x 773, 776 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. Ann. § 5525(a)(8)). In other states, the limitations periods range from 1 to 10 years. A conflict thus exists between the laws of Delaware, Pennsylvania, and other states where class members reside regarding the statute of limitations for ERISA § 502(a)(1)(B) and § 510 claims.

The second step is for a court to determine which state "has the greater interest in the application of its law" by using a five-factor contacts analysis considering: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Romero v. Allstate Ins.*, 52 F. Supp. 3d 715, 733 (E.D. Pa. 2014) (citing *Hammersmith*, 480 F.3d at 231, 233). Weighing these factors, Delaware law should apply. The first four factors all favor Delaware because it is undisputed the Plan was drafted, offered, and administered in Delaware. SoF ¶ 2. The fifth factor favors Delaware because that is where Historical DuPont and Corteva were headquartered through 2021, the year this action was filed. SoF ¶ 2. The **only** connection to Pennsylvania is Cockerill's residence, but he works in Delaware. SoF ¶¶ 51–53. Other class members' connection to other states are similarly limited to their residence. Delaware thus has the far greater interest in the application of its law to Counts I, II, and V and Delaware's one-year statute of limitations applies to bar those Counts.

### B.   Delaware's One-Year Statute of Limitations Bars Counts I, II, and V.

Delaware's one-year statute of limitations bars Counts I, II, and V. In July 2019, the

Classes received a benefits statement informing them of their post-Spin benefits. *See* SoF ¶ 42.

Those statements clearly stated the benefits to which Class members were (and were not) eligible.

As a result, the statute of limitations was triggered in July 2019; yet Plaintiffs waited to file this

action until September 3, 2021—after the expiration of the statute of limitations for Counts I, II,

and V—requiring judgment in Defendants' favor on these Counts.

**III.    Summary Judgment is Appropriate for Count IV Because A Plan Fiduciary Did Not Make Any Material Misrepresentations Or Inadequate Disclosures; Nor Have Plaintiffs Shown an Entitlement to Their Requested Count IV Equitable Remedies.**

Plaintiffs' Count IV breach of fiduciary duty claim has "at least three elements: (1) that the

defendant was acting as a fiduciary; (2) that the defendant made misrepresentations or omissions

about the Plan; and (3) that the misrepresentations or omissions were material." Class Cert. Mem.

[ECF 136] 31 (citing *Burstein v. Ret. Acct. Plan For Emps. of Allegheny Health Educ. & Rsch.*

*Found.*, 334 F.3d 365, 387 (3d Cir. 2003)). Plaintiffs must also prove an entitlement to their

requested equitable remedies. *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011). Count IV fails

because Plaintiffs (A) cannot establish that material misrepresentations or omissions were made

to them by a Plan fiduciary; and (B) have not met the requirements for any of their claimed

equitable remedies.[6]

**A.    The Facts Establish No Material Misrepresentation Or Inadequate Disclosure By A Plan Fiduciary.**

A close examination of the purported misrepresentations made to Plaintiffs demonstrate

they are accurate—not misrepresentations. Moreover, Plaintiffs have failed to show a material

---

[6] If Count IV is meant to allege that Defendants breached their fiduciary duties by terminating class members prior to their early retirement eligibility age and failing to "bridge" their employment until eligibility, such conduct is an employment decision and not a fiduciary decision subject to ERISA. *Hickman v. Tosco Corp.*, 840 F.2d 564, 567 (8th Cir. 1988) ("Tosco's decisions to terminate appellants rather than carry them on the payroll were employment decisions that did not directly affect the administration of the pension plan or the investment of its assets . . . . For this reason, Tosco's refusal to 'bridge' is not subject to ERISA's fiduciary standard of care.").

dispute regarding the adequacy of the numerous disclosures made.

        **1.**      **There is no Evidence of Classwide Misrepresentations or Inadequate Disclosures.**

Plaintiffs do not provide any evidence that any of the Defendants (let alone *which* Defendant) made false or inadequate classwide statements relating to the effect of the Spin-Off on the Classes' benefits. Even if there were any misrepresentations—and there were not—there is no evidence that the misrepresentations were made to Cockerill, Major, Benson, or any member of the two Classes.

For example, Ed Breen's November 1, 2018, email to Plan participants contains only accurate statements[7] regarding Historical DuPont's fulfillment of Plan obligations and additional resources with more information for Plan participants. *See* SoF ¶ 31. As such, Plaintiffs have not and cannot show these statements are inaccurate or misleading.

Further, presentations were provided to Class members regarding the Spin-Off's effects on Plan participants—both those under 50 and over 50. *See* SoF ¶¶ 31–37. The under 50 presentation informed the under 50 employees—including Cockerill—that they are "a term-vested eligible pension plan participant if you have not reached age 50 with at least 15 years of service as of May 31, 2019 when New DuPont is no[] longer a participating employer in the plan." *See* SoF ¶¶ 33–34. While Cockerill claims he never saw this document—though he admitted he could have been invited to a meeting where it was presented and either missed it or forgot about it—he

---

[7] For example, Mr. Breen states in the email: (1) "continuing to fulfill our obligations to plan participants is a top priority and we have given careful and diligent thought to the structure of the U.S. DuPont Pension and Retirement Plan (the 'Plan') with the best interests of our pensioners in mind, including assignment of the retirement program obligations"; (2) "[i]f you have not started receiving your pension, your accrued benefit can't, and won't, be reduced"; and (3) that the nearly $4 billion contributed to the Plan over the prior two years "demonstrate our commitment to your best interests and underscore the priority we place on the long term funding of the Plan." *See* SoF ¶ 31. These are all accurate statements and Plaintiffs provide no evidence to the contrary.

concedes that Defendants posted the presentation on their internal employee portals. *See* SoF ¶¶ 70–75. Moreover, the undisputed evidence establishes that, on March 20, 2019, Defendants mass-distributed the presentation to all potentially impacted employees—including Cockerill—and that mass mailing included a link to where this under 50 presentation could be found. *See* SoF ¶¶ 73–74. Cockerill admits this presentation makes it clear that people in the under 50 age group "were not eligible to grow into an early retirement benefit." *See* SoF ¶ 74. And it is undisputed that Defendants emailed employees and invited them to visit intranet sites for additional communications to help them better understand what the Spin-Off means for all categories of employees, invited them to attend global broadcasts, and invited them to visit websites to receive more information specifically about retirement benefits. *See* SoF ¶¶ 31–38.

Plaintiffs have failed to identify any purported misrepresentations in the March 2019 presentation related to those over age 50 with 15 or more years of service. *See* SoF ¶ 31, 34, 73–74, 84–85, 107–10. The presentation "notified the age 50 group that they would be considered a 'retiree' as of June 1, 2019"; "notified employees who had the age and service for an *unreduced* pension benefit as of June 1, 2019, that they could commence their benefit immediately"; and "provided that participants who were age 50 but who could receive a reduced pension benefit as of June 1, 2019, could wait until they reached an age where the benefit was no longer reduced." *See* SoF ¶ 31, 34. Plaintiffs have failed to put forth any evidence that those statements were inaccurate or inadequate—nor could they, as neither Major nor Benson opted to view the presentation, and thus, they could not have been misled by a presentation they elected not to review. *See* SoF ¶¶ 84–85, 107–10.

Several of the alleged misrepresentations are also simply misunderstandings or are rooted in Plaintiffs' subjective belief that their benefits should have been more. For example, Cockerill

admitted in his deposition that he does not claim that any Defendant made any material misrepresentations. *See* SoF ¶ 57. Instead, Cockerill disagrees with the accuracy of a Q&A document that was circulated because Lisa White, an HR pension affairs representative with New DuPont, told him—after the Spin-Off—that question-and-answer number 4 notified employees of the Spin-Off impact. *See* SoF ¶ 60. But Question and answer 4 **are** accurate, stating as the question: "I am currently a participant in DuPont's U.S. Pension Plan and will be an employee of Specialty Products in the US. How does this affect my pension?" And the answer, broken down by employee category, includes:

> At spin, ***future service for Specialty Products employees who participate in the Plan will no longer be recognized in determining eligibility for pension benefits*** . . . For those employees who qualify for retirement by meeting the Plan's age and service requirements [i.e., over 50 with at least 15 years of service], growth in age will continue to be recognized allowing those participants to age into an improved reduction factor prior to commencing their pension.

SoF ¶¶ 61–62 (emphasis added). This accurately informs employees that if they remain employed by Specialty Products, that employment will not be considered to determine eligibility for pension benefits or contribute towards years of service in determining the amount of Early Retirement benefits. SoF ¶¶ 14, 61–62. Relatedly, Ms. White's conversation with Cockerill was nothing but truthful, as she explained to him that because he was under the age of 50 on May 31, 2019 (the Spin-Off date), he would ***never*** become eligible for Early Retirement benefits. *See* SoF ¶ 60. Cockerill may not have liked what he heard, but it was an accurate statement—not a misrepresentation.

Cockerill's subjective interpretation of the Summary Plan Description is also not an actionable misrepresentation. Cockerill complains that the "language in the plan description is very different than the way I would interpret it", SoF ¶ 65—but the mere fact his Plan interpretation differs from his Plan entitlement is not the basis for a misrepresentation claim. Indeed, a plain

reading of the Plan documents Cockerill cites reveals that Cockerill was simply not eligible following Spin-Off for the Early Retirement benefits he seeks, and his interpretation was his own unreasonable misunderstanding—not an inaccurate or misleading statement. *See* SoF ¶¶ 65–67.

Cockerill takes issue with a benefits calculator because "there were a number of calculators within the plan information itself over the years that could be used by employees to model their retirement plans and impact, put your years of service, put your age of retirement, and it tells you what your benefit would be" and "up until 2019, would always show and calculate taking into account the opportunity to retire without a reduction in your pension at age 58, if you met the rule of 85." *See* SoF ¶ 63. However, Cockerill acknowledges that he "understood that those calculators weren't guaranteeing [him] continued employment", and that "those calculators were not guaranteeing . . . the benefit [he was] going to receive whenever [he] did finally retire." SoF ¶ 64.

Major denied that any misrepresentations were made to him. *See* SoF ¶ 82. Instead, he simply did not like the (accurate) information provided to him by New Dupont. *See* SoF ¶ 83. When asked about misrepresentations, he pointed only to two statements, both of which were entirely accurate: (1) when he called Corteva Connections, he was correctly informed that he would be eligible for an unreduced pension benefit starting at age 63-plus, SoF ¶ 83;[8] and (2) when he asked about Optional Retirement benefits after he was told he would be laid off by New DuPont in 2021, he was correctly told Optional Retirement benefits did not apply to him, SoF ¶ 83.[9] Both statements are accurate, and thus, not actionable by Major individually or on a classwide basis.

Benson's misrepresentation claim is based on his personal misunderstanding of the age at which he was entitled to an unreduced **Early Retirement** benefit—not any classwide

---

[8] This is fully accurate under the terms of the Plan, taking into consideration the Hard Freeze implemented in November 2018. *See* SoF ¶¶ 8–10.
[9] This was accurate under the Plan terms, as explained in Section I.B, *supra.*

communications concerning Optional Retirement. Benson explained his understanding was that he was eligible for unreduced Early Retirement benefits when his combined age and service reached 85 (the "Rule of 85"). SoF ¶ 108. But Benson did not understand that the Hard Freeze[10] and his subsequent employment with New DuPont—which was not a participating employer in the Plan after the Spin-Off—rendered irrelevant, for Rule of 85 calculations, his post-Hard Freeze service with that non-participating employer. Benson's subjective misunderstanding of the effect of the Hard Freeze on his benefits is not evidence of a classwide actionable misrepresentation. Moreover, Benson's alleged misrepresentation is irrelevant because it is untethered from the claims asserted in this case on his behalf—which have nothing to do with Early Retirement.

Finally, Plaintiffs' proffered expert, Altman, admitted that thousands of employees must have correctly understood the Plan communications. When asked how it is that thousands of over-50 employees knew to commence Early Retirement benefits on the day of the Spin-Off (*i.e.,* they understood their employment had separated from the Plan sponsor), yet the named Plaintiffs claimed they had no idea, Altman said the others must have "received clear communications about it." SoF ¶ 112. Indeed, Altman testified that post-Spin participants commenced benefits at a "rapid pace," but still could not articulate how it was that such participants knew that they *could* commence benefits immediately if the communications were inaccurate or misleading. SoF ¶ 113.

## 2. Plaintiffs' Access to the Plan and SPD Render Immaterial Any of Defendants' Statements Regarding the Plan.

Plaintiffs' assertions of misrepresentations also fail given that they had, or were repeatedly told where to find, written information accurately conveying the Plan's terms. SoF ¶¶ 31–38. Where Plaintiffs have information accurately conveying Plan terms, courts have been unwilling to

---

[10] In November 2016, the Plan announced an anticipated "Hard Freeze," pursuant to which the Plan's benefits would be frozen and increases in service or pay would no longer lead to an increased benefit. The Hard Freeze went into effect on November 30, 2018. SoF ¶¶ 8–10.

find employer representations to be material, reasoning that Plaintiffs will have had full notice of their benefit rights and could not have been misled by written or oral statements to the contrary. *See, e.g.*, *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 905–06 (3d. Cir. 1995) (a participant's "reasonable understanding of their benefits must be limited to the reasonable understanding of the summary plan descriptions or plan documents, due to our strong precedent which precludes informal amendments to ERISA benefit plans"); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163 (3d Cir. 1990) ("ERISA requires that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument'" and that "ERISA precludes oral amendments to employee benefit plans"); *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 575 (3d Cir. 2011) ("[I]t is unreasonable for a plan participant to rely upon an employer's representation as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation.").

The Plan plainly informed Plaintiffs that "[a]n employee will be eligible for Early Retirement [only] after reaching age 50 and prior to reaching age 65 with at least 15 years of service." SoF ¶ 15. Thus, far from being a misrepresentation, the Plan explicitly advised Plaintiffs that they would not be eligible for Early Retirement benefits unless they continued to be employed by the "Company" [*i.e.*, Historical DuPont or its subsidiaries] past age 50, which Plaintiffs admit they did not accomplish. SoF ¶¶ 36, 52, 55, 80, 99. Additionally, Defendants sent numerous communications to all affected employees explaining the effect of the Spin-Off on their benefits; telling them where to obtain more information; and giving them a phone number to call if they had any questions. SoF ¶¶ 31–38. Plaintiffs' proffered expert, Altman, testified he "would advise plan participants to read communications from their sponsor" and that if he received unclear communications, he "might have called up with questions" or "applied for benefits and been

denied"—none of which Plaintiffs did. SoF ¶ 112. It was Plaintiffs who failed to access the pension-related websites Defendants created to provide information and it was Plaintiffs who failed to use the phone number provided to seek answers to any questions they may have had. *See* SoF ¶¶ 31–38, 122. Plaintiffs cannot bury their heads in the sand and then complain they were not properly informed. *See Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 575 (3d Cir. 2011) ("ERISA plan 'participants have a duty to inform themselves of the details provided in their plans.'"); *Salvucci v. Glenmede Corp.*, 657 F. Supp. 3d 677, 684 (E.D. Pa. 2023) (same).

Because there were no misrepresentations made to Plaintiffs—let alone actionable class-wide misrepresentations—and because Plaintiffs received and had access to complete and accurate Plan information, summary judgment should be entered in Defendants' favor on Count IV.

## B. Plaintiffs Have Not Proven an Entitlement to Their Requested Count IV Equitable Remedies.

In its class certification order, the Court stated that it is "unpersuaded that detrimental reliance remains an element of § 404(a)(1) claims in light of *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011)". Class Cert. Mem. 34. Although *CIGNA* expanded permissible ERISA equitable remedies for ERISA § 502(a)(3) claims, Plaintiffs must **still** prove the requirements of the specific remedies being sought. *See Amara*, 563 U.S. at 443; *see also Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 541 (E.D. Pa. 2019) (explaining that "the elements a plaintiff must establish to obtain 'appropriate equitable relief' depend on the specific equitable relief requested" (quoting *Amara*, 563 U.S. at 443)). Plaintiffs have no admissible evidence warranting any of the three types of equitable remedies Plaintiffs seek: (1) plan reformation; (2) surcharge; and (3) equitable estoppel. Each is discussed in turn.

### 1. Plan Reformation.

As relevant here, a plaintiff seeking reformation must show by clear and convincing

evidence that "'one party is mistaken and the other commits fraud or engages in inequitable conduct.'" *Cunningham*, 387 F. Supp. 3d at 542 (quoting *Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014)); *see also Amara*, 775 F.3d at 526 (supplying the clear and convincing standard). There is no evidence Defendants engaged in equitable fraud or that Plaintiffs were **reasonably** mistaken.

**Equitable Fraud.** Plan reformation is only warranted when "fraudulent suppressions, omissions, or insertions materially affected the substance of the [Plan]." *Amara*, 563 U.S. at 433 (cleaned up). The "equitable conception of fraud" "generally consists of 'obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith.'" *Amara*, 775 F.3d at 526 (citation omitted). There is no evidence Defendants obtained an undue advantage caused by any purported misrepresentation. And to the extent Defendants gained a business or economic advantage from the Spin-Off, that well-publicized business reorganization merely altered which employers **participated** in the Plan—it did not affect the **substance** of the Plan.

**Mistake.** Where plan participants allege they are mistaken, that "[m]istake is measured by the plan participants' **reasonable** expectations of the plan—an objective standard." *Id.* (emphasis added) (quoting *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 262 (D. Conn. 2012), *aff'd* 775 F.3d 510 (2d Cir. 2014)). Moreover, a plan participant's mistaken understanding of a plan cannot be based on the participant's own negligence. *Amara*, 563 U.S. at 443; *accord Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 879 (7th Cir. 2013).

Plaintiffs provide no evidence that their mistaken, subjective interpretations of the Plan are objectively reasonable. As previously explained, Plaintiffs' "reasonable understanding of their benefits must be limited to the reasonable understanding of the summary plan descriptions or plan

documents." *Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d at 905–06. As it pertains to the Early Retirement Class, Plaintiffs' proffered expert, Altman, admits that thousands of eligible employees knew to commence Early Retirement benefits at the time of the Spin-Off—signaling they must have known of the impact of the Spin-Off on their Early Retirement benefits. *See* SoF ¶¶ 112–14. And the Optional Retirement Class have failed to articulate how it is reasonable they should be entitled to an Optional Retirement when they were employed by New DuPont (or one of its subsidiaries) both before and after the Spin-Off and suffered no loss of income.

Finally, Cockerill, Benson, and Major all admit to failing to use the wide variety of resources available to them to assist plan participants in understanding the impact of the Spin-Off on their benefits. *See* SoF ¶¶ 69–75, 84, 107. Plaintiffs' disappointment—in realizing their own subjective expectations of benefits is not realistic—is directly attributable to Plaintiffs failing to exercise reasonable prudence. *Bicknell*, 410 F. App'x at 575 ("ERISA plan 'participants have a duty to inform themselves of the details provided in their plans.'"). Plaintiffs have not shown an entitlement to plan reformation in connection with Count IV and thus summary judgment should be entered in Defendant's favor as to this requested remedy.

### 2. Surcharge.

The *Amara* Court explained that "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved . . . by a preponderance of the evidence." 563 U.S. at 444. Put differently, the plan participant "must show that the violation injured him or her" by showing "harm and causation." *Id.* As this Court recognized, detrimental reliance may not always be necessary, Class Cert Mem. 34—but "actual harm must be shown", *Amara*, 563 U.S. at 444. In the context of a breach of fiduciary duty claim, actual harm means those losses the plan participant can establish were caused by the fiduciary breach. *See Cunningham*, 387 F. Supp. 3d at 543 (citing *Amara*, 925 F. Supp. 2d at 257); *see also Kenseth*, 722 F.3d at 879 (same).

Determining whether Plaintiffs have shown causation and harm with respect to Count IV will entail "considering what would have happened had [Defendants'] notices not been materially misleading." *Amara*, 925 F. Supp. 2d at 258. Specifically, the asserted misrepresentations or inadequate disclosures must be the but-for cause of Plaintiffs' alleged harm—as opposed to purported harms arising from decisions about the Plan. *See, e.g.*, *Goldenberg v. Indel, Inc.*, No. CV 09-5202, 2012 WL 12906332, at *6 (D.N.J. Feb. 28, 2012).

The Classes allege two specific harms. The Early Retirement Class alleges it was harmed by the Plan Administrator's determination that participants under the age of 50 at the time of the Spin-Off could not "age into" eligibility for Early Retirement benefits. The Optional Retirement Class alleges they were harmed by the Plan Administrator's determination that the Business Reorganization Exception Plan provision precluded over-50 employees from receiving Optional Retirement benefits when they continued to be employed by New DuPont and receive a paycheck post-Spin. These "harms," however, are duplicative of their Counts I and II benefits claims and cannot be repackaged as fiduciary breach claims. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *Doe v. Indep. Blue Cross*, No. CV 23-1530, 2023 WL 8050471, at *8 (E.D. Pa. Nov. 21, 2023) (collecting cases and explaining that "[d]istrict courts in the Third Circuit have construed *Varity* to mean that a plaintiff may proceed under subsection 1132(a)(3) **only** where she seeks a remedy for injuries not available under subsection 1132(a)(1)(B)"); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998) (explaining that ruling in plaintiff's favor "would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected [in *Varity*].")); *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006) (same); *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) (same); *Korotynska v. Metro. Life Ins.*, 474 F.3d 101,

106 (4th Cir. 2006) (same).

Moreover, Plaintiffs have not provided any evidence that any purported misrepresentation or omission **caused** either alleged harm. Indeed, their supposed harm was caused solely by the Spin-Off and/or the Plan Administrator's reasonable interpretation of the Plan's provisions.

### 3.    Equitable Estoppel.

"The concept of equitable estoppel is simple; it 'operates to place the person entitled to its benefit in the same position he would have been in had the representations been true.'" *Silva v. Metro. Life Ins.*, 762 F.3d 711, 723 (8th Cir. 2014) (quoting *Amara*, 563 U.S. at 441). Detrimental reliance remains an element of breach of fiduciary duty claims seeking equitable estoppel post-*Amara*. *See* 563 U.S. at 443 ("[W]hen a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made."); *accord Kenseth*, 722 F.3d at 879 (same).

To demonstrate detrimental reliance, each Plaintiff "must have taken some action as a result of the misrepresentation; the mere expectation of a continued benefit is not enough." *Shook v. Avaya, Inc.*, 625 F.3d 69, 73 (3d Cir. 2010). Plaintiffs have failed to provide evidence of individual or class-wide detrimental reliance. And, at Plaintiffs' depositions, it was clear they did not detrimentally rely on any purported misrepresentations.

As to Cockerill, he was informed of the effect of the Spin-Off on his pension and maintained his employment with Specialty Products. SoF ¶ 53. The only change was that Specialty Products stopped participating in the Plan as a result of the Spin-Off. SoF ¶¶ 28, 40. During his deposition, Cockerill suggested he could have applied for a job with Corteva if he had been informed of the Spin-Off's impact on his pension—although he still has not applied for such a role nor does he even point to an available position for which he would have been qualified. *See* SoF ¶ 54. Cockerill also asserts he could have started his appeal process earlier, *see* SoF ¶ 54—

but his appeal was denied due to unambiguous Plan language, and thus no change in the timing of his appeal would have impacted the outcome. Cockerill further speculates he could have left Specialty Products to work for another employer, SoF ¶ 54, despite the fact that: (1) this would not have positively impacted his pension under the Plan; and (2) he has had several years to seek employment elsewhere and has never done so. Cockerill's threadbare allegations as to his detrimental reliance are belied by the undisputed facts.

Major likewise cannot establish he detrimentally relied on the purported misrepresentations because the only two misrepresentations he asserts occurred after the Spin-Off. *See* SoF ¶ 83. Thus, none of the purported misrepresentations could have impacted Major's pre-Spin-Off behavior, making the communications at issue irrelevant to his claims.

Finally, Benson testified he does not even want Optional Retirement and, thus, could not have detrimentally relied on any communications relating to Optional Retirement benefits. *See* SoF ¶ 110. Instead, and as explained above, Benson complains that he should be able to obtain **Early Retirement** benefits earlier than he is permitted. SoF ¶¶ 108–10. Indeed, Benson testified that his grievance is limited to his misunderstanding of the Spin-Off's impact on the Rule of 85 unreduced Early Retirement benefit calculation. SoF ¶¶ 108–10; *see supra* § A.1. To be clear, Benson is not a member of the Early Retirement class and, thus, any purported detrimental reliance relating to Early Retirement benefits has no bearing on his claim for Optional Retirement.

## IV. Summary Judgment Must Be Entered As To Count V Because Plaintiffs Have No Evidence To Support Their Claim For Interference With A Protected Right.

In Count V, Plaintiffs bring a cause of action under ERISA § 510, 29 U.S.C. § 1140, against all Defendants except the Plan for interference with ERISA rights. However, Plaintiffs have provided no evidence to support their assertion that Defendants engaged in prohibited conduct or that Defendants had a specific intent to violate ERISA.

Under ERISA § 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . **for the purpose of** interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (emphasis added). To prove interference with ERISA rights under § 510, a plaintiff must show: (1) prohibited employer conduct, (2) taken for the purpose of interfering, (3) with the attainment of any ERISA right to which the employee would otherwise become entitled. *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997). This requires that the "plaintiff . . . demonstrate that the defendant had the 'specific intent' to violate ERISA." *Id*.

Plaintiffs must prove that "but for" a conscious discriminatory decision by Defendants to interfere with the Plaintiffs' attainment of benefits, the Plaintiffs' job would not have been adversely affected. *See McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1178 (3d Cir. 1990) ("Plaintiff must prove that 'but for' the discriminatory purpose, he or she would not have lost work."); *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330–31 (1st Cir. 1996) ("ERISA provides no relief if the loss of an employee's benefits was incidental to, and not the reason for, the adverse employment action. Were this not so, every discharged employee who had been a member of a benefit plan would have a potential cause of action against his or her former employer under ERISA."). In addressing these principles, the Supreme Court has distinguished employment decisions that are **designed to preclude employees from receiving benefits** from "fundamental business decisions" that have the **incidental effect of precluding the award of benefits**. *See Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 516 (1997) (employer making "fundamental business decisions" to amend or terminate plan does not trigger § 510 unless employer does so with purpose of interfering with rights under the plan); *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385 (3d Cir. 1990) (granting judgment on ERISA 510 claim where employee

"did not show that terminating employment 11 months short of pension vesting was done with specific intent to interfere with attainment of pension eligibility"); *Thondukolam v. Corteva, Inc.*, No. 19-CV-03857, 2020 WL 5944423, at *1, 4 (N.D. Cal. Oct. 7, 2020) (dismissing with prejudice breach of fiduciary duty claim because spin-off decision was not fiduciary decision (citing *Blaw Knox Ret. Income Plan v. White Consol. Indus.*, 998 F.2d 1185, 1189 (3d Cir. 1993))).

The undisputed evidence establishes that Defendants' business decisions were not made **for the purpose** of depriving Plaintiffs of any retirement benefits but were instead made for legitimate business reasons and only incidentally affected employee benefits. The only record evidence shows that Defendants' business decisions to merge and then restructure the businesses via the Spin-Off was a corporate strategy spanning more than four years that was "intended 'to create[e] three strong, independent growth companies set to be industry leaders focused on driving innovation and delivering long-term value for shareholders." SoF ¶ 26. These facts are undisputed. Plaintiffs provide no support for their assertion that Defendants' Spin-Off and related business decisions were undertaken "for the purpose of interfering" with either Early or Optional Retirement benefits.

Further, thousands of employees received a welcome windfall from the Spin-Off because they were able to continue working full time for New DuPont while simultaneously electing to immediately receive Early Retirement benefits. SoF ¶¶ 44, 45, 81. Indeed, Cockerill acknowledged that many employees benefited from the Spin-Off because they could commence their Early Retirement benefits while still working for New DuPont (something they could not do before the Spin-Off). *See* SoF ¶¶ 44, 45, 81. Major also admitted he could have taken Early Retirement benefits after the Spin-Off while still employed by New DuPont and he understood that at the time. *See* SoF ¶ 81. The fact that many employees benefited from the Spin-Off with regard to their

pension benefits, *see* SoF ¶ 45—at a substantial cost to Defendants, SoF ¶ 44—establishes that Defendants did not undergo the Spin-Off with the purpose of interfering with employees' attainment of benefits. Rather, Defendants made fundamental business decisions that had incidental pension impacts (either positive or negative) for thousands of Plan participants.

Because the Spin-Off and related decisions were fundamental business decisions, and Plaintiffs have failed to put forth any evidence to the contrary, summary judgment should be entered in Defendants' favor as to Count V.

## V.   Plaintiffs' Anti-Cutback Claim Fails Because No Plan Amendment Eliminated The Optional Retirement Benefit.

In Count VI, Major and the Optional Retirement Class claim Defendants' denials of their Optional Retirement benefits is an improper elimination of an accrued benefit under ERISA § 204(g). ERISA's anti-cutback provision only protects accrued pension benefits from reduction or elimination via plan *amendment*. *See* 29 U.S.C. § 1054(g); *Dade v. N. Am. Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir. 1995). Plaintiffs point to no Plan amendment affecting Optional Retirement benefits in connection with the Spin-Off. Instead, the Plan Administrator's benefits denials were rooted in a determination that the Spin-Off fell within the Business Reorganization Exception, rendering the Optional Retirement Class ineligible for Optional Retirement benefits. *See* SoF ¶ 29.[11]

The Optional Retirement Class thus has no claim under § 204(g) for Defendants' application of the Plan and Business Reorganization Exception in denying the Optional Retirement Class's requests for Optional Retirement benefits in connection with the Spin-Off. *See, e.g.*, *Dade*,

---

[11] Although the Committee's denial of Major's benefits claim included references to the Plan as amended post-Spin, post-Spin amendments were not the basis for the denial of Major's benefits claims. Instead, the Committee's denial was based on Major's May 31, 2019 separation from a participating employer "due to the Spin-Off[.]" SoF ¶¶ 95–98.

68 F.3d at 1562 ("Section 204(g) is not applicable under the facts of this case because there has been no amendment of the Plan that reduced a benefit, accrued or otherwise."). Without an amendment, there is no claim, and the Court should enter summary judgment in Defendants' favor as to Count VI.

## VI.   Summary Judgment Should Be Entered On Count VII Because It Is Preempted By ERISA And Not Supported By The Evidence.

Count VII, which is an individual claim brought against all Defendants except New DuPont and the Plan, alleges liability under a state-law theory of promissory estoppel—namely, that Defendants allegedly promised Plaintiffs certain Plan benefits. SAC ¶¶ 153–160. Count VII is preempted by ERISA because Plaintiffs' state-law promissory estoppel claim "relates to" an employee benefit plan. ERISA § 514(a) explicitly "supersede[s] any and all State laws insofar as they . . . *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has repeatedly held that § 514(a)'s express preemption provisions are far-reaching. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983).

Here, Plaintiffs bring a state-law promissory estoppel claim based on alleged promises that Plaintiffs could qualify for Early Retirement benefits or Optional Retirement benefits under the terms of the Plan. SAC ¶¶ 153–160. Plaintiffs' claim "goes to the essence of the function of an ERISA plan—the calculation and payment of the benefit due to a plan participant." *Kollman v. Hewitt Assocs.*, 487 F.3d 139, 150 (3d Cir. 2007). It is thus preempted by ERISA. *See, e.g.*, *Clark v. Hartford Life & Accident Ins.*, No. 06-0945, 2006 WL 3359651, at *4 (E.D. Pa. Nov. 17, 2006) (preempting promissory estoppel claim which relates to an employee benefit plan where "[t]he existence of the plan created the alleged liability and this Court's analysis would be directed to the plan itself"); *Charter Fairmount Inst., Inc. v. Alta Health Strategies*, 835 F. Supp. 233, 240 (E.D. Pa. 1993) (dismissing state-law claims for estoppel, misrepresentation, and negligent

misrepresentation as preempted by ERISA).

Summary judgment should also be granted to Defendants on Count VII because the evidence does not support Plaintiffs' allegations. Plaintiffs asserted three alleged promises: (i) they could continue to qualify for full, unreduced Early Retirement benefits under the Plan's "Rule of 85" provision, if they continued to work for Historical DuPont until they met the age and service requirements; (ii) they could qualify for reduced Early Retirement benefits when they reached age 50, if they had at least 15 years of service, regardless of whether they continued to work for Historical DuPont; and (iii) they could obtain Optional Retirement benefits at certain percentages tied to an employee's age if an employee was terminated for lack of work. SAC ¶¶ 156–158.

As to the first alleged promise, Plaintiffs did not "continue[] to work for Historical DuPont" and, as such, the evidence establishes that even under the purported promise made, Plaintiffs were not entitled to continue growing into benefits under the Rule of 85 provision.[12] *See* SoF ¶¶ 52–57, 80, 99. Further, Plaintiffs admit that Defendants advised them that Historical DuPont had the right to change, modify, or discontinue the Plan at its discretion at any time, eviscerating any assertion that Defendants promised them benefits that could never be changed. *See* SoF ¶ 67.

As to the second alleged promise—that Cockerill could qualify for reduced Early Retirement benefits when he reached age 50 with at least 15 years of service—this purported promise is irrelevant to Cockerill who was less than 50 years old at the time of Spin-Off. SoF ¶¶ 60, 74–75. As described in Section I.A, *supra*, the plain language of the Plan states that only employees of the Company at age 50 are eligible for Early Retirement benefits; and as described in Section III.A.1, the under-50 presentation Defendants circulated to employees made clear that

---

[12] Unlike Cockerill, who was under 50 at the time of Spin-Off, Major and Benson were over 50 and were entitled to Early Retirement benefits. *See* SoF ¶¶ 60; 81; 99. As they age, they are entitled to an increasingly greater monthly benefit until they commence the benefit.

those participants under 50 at Spin-Off would never qualify for Early Retirement.

For the third purported promise regarding Optional Retirement benefits, the Plan makes clear that not all involuntary terminations without Cause will lead to an Optional Retirement benefit. SoF ¶¶ 95–98. As discussed in greater detail in Section I.B, the Plan does not permit employees separated as a result of corporate transaction, like a Spin-Off, to qualify for Optional Retirement benefits. SoF ¶¶ 95–98. And the Administrative Committee acted with appropriate discretion when it interpreted the Business Reorganization Exception and applied it to the Spin-Off. *See supra* § I.B.

Because Count VII is pre-empted by ERISA and Plaintiffs cannot prove all elements of promissory estoppel, summary judgment should be entered against Plaintiffs on Count VII.

## VII.   Major's Claims Are Barred By His Settlement Agreement And General Release.

Major's claims—and the claims of other class members who signed releases—are barred by the Confidential Settlement Agreement and General Releases ("Releases") they each signed. *Bennett v. Indep. Blue Cross*, No. CIV. A. 92-4249, 1993 WL 15603, at *2–4 (E.D. Pa. Jan. 13, 1993) (entering summary judgment for Defendant on Plaintiff's ERISA claims based on release that was knowingly and voluntarily signed). At the end of their employment, Major and other class members knowingly and voluntarily accepted a severance package and signed a Release, which included a general release of all ERISA and related claims. *See* SoF ¶ 86. In exchange for signing the Release, they received substantial severance benefits referenced in the Release. *See* SoF ¶ 87. They could have declined severance and declined to sign the release, but they did not. SoF ¶¶ 86–94. As such, they should be precluded from advancing their claims in this case.

### A.   The Releases Are Valid And Enforceable

The evidence shows that Major and other class members knowingly executed the Releases. *See* SoF ¶¶ 87–94. Major was familiar with agreements like the Release as he was a senior

employee in the Human Resources department and had previously presented employees with severance packages and explained the general terms of such releases to those employees. SoF ¶ 89. In Major's case, he was given 45 days to consider the Release. SoF ¶ 90. Prior to signing the Release, Major reviewed it and discussed it with his wife. SoF ¶ 91. Major signed the Release about a week after receiving it, on July 31, 2021. *See* SoF ¶ 92.

Major's and other class members' rights under the Releases were readily apparent, which included a description of the consideration they would receive if they executed the Releases. *See* SoF ¶¶ 87–88. No class member has claimed they were under any duress or that the Release was unconscionable. Indeed, in Major's case, he could not claim duress or unconscionability given his familiarity with such releases as part of his job, and the time he took to carefully review and consider the implications of the Release with his family. *See* SoF ¶¶ 87–94. Accordingly, the Releases are valid and fully enforceable.

### B.   The Carve-Out For "Vested Or Accrued Employee Benefits" Is Inapplicable To Any Class Claims.

In the ERISA context, "'accrued benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment.'" *Romero*, 1 F. Supp. 3d at 371. By contrast, "'[v]ested benefits . . . refer to those normal retirement benefits to which an employee has a nonforfeitable claim.'" *Id.* "In short, an employee's vested benefits are the accrued benefits that the employee is actually '**entitled to keep**.'" *Id.*; *McDonald v. Pension Plan of NYSA– ILA Pension Tr. Fund*, 320 F.3d 151, 156 (2nd Cir. 2003) ("'Accrued' benefits refer to those normal retirement benefits that an employee has earned at any given time during the course of employment . . . . 'Vested' benefits, on the other hand, refer to those normal retirement benefits to which an employee has a 'nonforfeitable' claim; in other words, those accrued benefits he is **entitled to keep**.").

Here, the Release prevents Major and other class members from bringing any claims that allege a violation of ERISA—except for any claim for "vested or accrued employee benefits." SoF ¶ 86. This unambiguous carve-out does not apply to Major's claim to an Optional Retirement benefit which was neither accrued nor vested at the time he executed the Release. *Romero*, 1 F. Supp. 3d at 371. And Counts IV and VII assert claims for breach of fiduciary duty or promissory estoppel—neither are for vested or accrued benefits. Therefore, all of Major's claims are subject to the Release. On this basis, the Court should enter summary judgment in Defendants' favor as to all of Major's claims and those of similarly situated class members.

## VIII. Summary Judgment Is Appropriate Because Major And Benson Failed To Properly Exhaust The Administrative Remedies Required Under The Plan.

The Third Circuit requires exhaustion of administrative remedies outlined in the plan at issue prior to suing in federal court. *See generally D'Amico v. CBS Corp.*, 297 F.3d 287, 290–91 (3d Cir. 2002). Specifically, courts require exhaustion where the claims seek to enforce the terms of a benefit rather than a claim to assert rights established by the ERISA statute. *Id.*; *Harrow v. Prudential Ins.,* 279 F.3d 244, 253–54 (3d Cir. 2002) ("Except in limited circumstances . . . [,] a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."). "The courts generally favor compliance with exhaustion provisions because they can often resolve disputes without court involvement; or alternatively the process crystalizes the issues, and the court has the benefit of the reasoning of those entrusted with implementing the plan." *Henshaw v. Roofers Loc. No. 4 Pension Fund,* No. 04CV6106, 2006 WL 2715138, at *2 (D.N.J. Sept. 22, 2006).

As explained below, the Plan outlined administrative remedies and Plaintiffs Major and Benson failed to exhaust such remedies prior to filing this suit. Therefore, Defendants are entitled to summary judgment on Counts II and VI.

32

A. **The Exhaustion Requirement Outlined in the SPD is enforceable against Major and Benson.**

Here, the September 2018 Summary Plan Description ("SPD") provided to Plaintiffs outlines the claim procedures for Plan participants. SoF ¶¶ 47–49. Specifically, the SPD provides that:

> ERISA requires that the plans it covers include certain procedures for filing claims and for reviewing claims that are denied.
>
>        . . . .
>
> **You must use and exhaust the Plan's claims and appeals procedures (as described herein) before bringing a lawsuit. Failure to follow the Plan's claims and appeals procedures in a timely manner will cause you to lose your right to sue regarding your claim.**

*Id.* (emphasis added). The SPD claims process is enforceable against the Plaintiffs because the parties have treated the claims process as part of the Plan document. For example, Cockerill admitted that he had never read the official plan document but looked at the SPDs that came out each year, and if anything concerned him, he looked more deeply at the plan itself. SoF ¶¶ 67, 76. Major never reviewed the official Plan document but treated the SDP as the Plan document. *See* SoF ¶¶ 83–85. Therefore, the claims process is a part of the Plan document as all parties treated it as such. Plaintiffs were thus required to exhaust the remedies outlined therein. *See McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 123 (3d Cir. 2017) (holding the language in the SPD as plan document because "everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well" (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 93 n.1 (2013)).

Likewise, Count II is seeking an interpretation that the Optional Retirement Class is entitled to Optional Retirement benefits. Therefore, Plaintiffs Major and Benson were required to exhaust the administrative remedies outlined in the Plan prior to filing this suit. *See Engers v.*

*AT&T*, 428 F. Supp. 2d 213, 225 (D.N.J. 2006), *opinion clarified on denial of reconsideration sub nom. Engers v. AT&T Corp.*, 2006 WL 3359722 (D.N.J. Nov. 20, 2006), *aff'd sub nom. Engers v. AT&T, Inc.*, 466 F. App'x 75 (3d Cir. 2011), and *aff'd sub nom. Engers v. AT&T, Inc.*, 466 F. App'x 75 (3d Cir. 2011) (granting defendants motion for summary judgment because the appeals process outlined for participants in the 1998 SPD was proper and plaintiffs failed to show that they exhausted the remedies or that exhaustion was unnecessary).

### B. Benson and Major failed to Exhaust Administrative Remedies Required under the Plain Prior to this Suit.

Benson and Major were required to exhaust the remedies outlined in the SPD. Benson did not file any claim for benefit prior to joining the suit. SoF ¶ 100. And Major's administrative claim is not the claim he asserts in the SAC. In the SAC, Major is seeking a declaration that "all [Optional Retirement Class] members are entitled to benefits under the Optional Retirement at Involuntary Termination Provisions of the governing Plan," notwithstanding the Plan Administrator's interpretation that the Spin-Off did not trigger the right to Optional Retirement benefits. SoF ¶¶ 95–98. This, however, is **not** the claim that Major administratively exhausted, which is instead about Major's individual eligibility for Optional Retirement benefits based on his 2021 layoff from New DuPont three years after the Spin-Off. SoF ¶¶ 95–98. Major did not exhaust the remedies for the claim he alleges in this suit. *See Henshaw,* 2006 WL 2715138 at *2 (explaining that courts favor compliance with exhaustion process because "the process crystalizes the issues, and the court has the benefit of the reasoning of those entrusted with implementing the plan").

### IX. The Optional Retirement Class Must Be Decertified for Failing to Satisfy Rule 23's Typicality and Adequacy Requirements.

To the extent the Court denies Defendants' Motion for Summary Judgment as to any Optional Retirement Claims, Defendants renew their Motion to Decertify the Optional Retirement Class pursuant to the Court's May 16, 2024, Order [ECF 185] ("Defendants may renew their

motion to decertify the Optional Retirement Class . . . in [the summary judgment] briefing."). Benson's post-Certification testimony confirms he has no interest in receiving an Optional Retirement benefit. Defendants incorporate by reference the motion, memorandum of law, and attached exhibits in their original Motion to Decertify the Optional Retirement Class [ECF 169]. Because the Optional Retirement Class representatives are atypical and inadequate, the Optional Retirement Class fails to satisfy Rule 23's requirements and must be decertified.

## **CONCLUSION**

For each of the foregoing reasons, summary judgment should be entered in Defendants' favor as to all Counts asserted.

Dated: May 24, 2024.                                    Respectfully submitted,

                                                        **HOLLAND & KNIGHT LLP**

                                                        /s/ *Nipun J. Patel*
Todd D. Wozniak (*pro hac vice*)                        Nipun J. Patel (I.D. No. 208130)
1180 West Peachtree Street N.W., Ste. 1800              Cory A. Thomas (I.D. No. 308807)
Atlanta, GA 30309                                       One Liberty Place, Suite 3300
(404) 817-8431                                          1650 Market St.
Todd.Wozniak@hklaw.com                                  Philadelphia, PA 19103
                                                        (215) 252-9600
Kayla Pragid (*pro hac vice*)                           Cory.Thomas@hklaw.com
777 S. Flagler St., 1900W                               Nipun.Patel@hklaw.com
West Palm Beach, FL 33401
(561) 650-8303                                          Andrew W. Balthazor (*pro hac vice*)
Kayla.Pragid@hklaw.com                                  701 Brickell Ave., Suite 3300
                                                        Miami, FL 33131
                                                        (305) 789-7584
                                                        Andrew.Balthazor@hklaw.com

                                                        *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this document was served via the ECF system to the registered participants as identified on the Notice of Electronic Filing on May 24, 2024.

*/s/ Cory A. Thomas*
Cory A. Thomas
