**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT F. COCKERILL, CHRISTOPHER WILLIAM NEWTON, OLIVER MAJOR, and DARRELL D. BENSON, SR., individually and as representatives on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>CORTEVA, INC.; DUPONT SPECIALTY PRODUCTS USA, LLC; DUPONT DE NEMOURS, INC.; E.I. DU PONT DE NEMOURS AND COMPANY; THE PENSION AND RETIREMENT PLAN; and THE BENEFIT PLANS ADMINISTRATIVE COMMITTEE,<br><br>Defendants. | Civil Action No. 2:21-cv-03966-MMB |

**DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT AS TO**
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**HOLLAND & KNIGHT LLP**
Nipun J. Patel (I.D. No. 208130)
Cory A. Thomas (I.D. No. 308807)
One Liberty Place, Suite 3300
1650 Market St.
Philadelphia, PA 19103
(215) 252-9600
Nipun.Patel@hklaw.com
Cory.Thomas@hklaw.com

Andrew W. Balthazor (*pro hac vice*)
701 Brickell Ave., Suite 3300
Miami, FL 33131
(305) 789-7584
Andrew.Balthazor@hklaw.com

**HOLLAND & KNIGHT LLP**
Todd D. Wozniak (*pro hac vice*)
1180 West Peachtree Street N.W.
Suite 1800
Atlanta, GA 30309
(404) 817-8431
Todd.Wozniak@hklaw.com

Kayla Pragid (*pro hac vice*)
777 S. Flagler St., 1900W
West Palm Beach, FL 33401
(561) 650-8303
Kayla.Pragid@hklaw.com

*Counsel for Defendants*

I.      **The Undisputed Facts Show Defendants are Entitled to Judgment as a Matter of Law.**

The Parties disagree on the exact legal standard the Court should apply to a motion for summary judgment under ERISA. Nevertheless, Plaintiffs' Response [ECF 206] to Defendants' Motion [ECF 196] is deficient—even if the Court employs a rigorous summary judgment standard, Resp. 3–4, to all Counts. The Third Circuit has explained the non-movant's burden in responding to a summary judgment motion where, as here, the non-movant has the burden of proof at trial:

> [S]ummary judgment is essentially "put up or shut up" time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. In addition, if the non-moving party has the burden of proof at trial, that party must set forth facts "sufficient to establish the existence of an element essential to that party's case."

*Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Celotex*, 477 U.S. at 322–23 (explaining that Rule 56(c) "mandates the entry of summary judgment" against a party who fails to make a sufficient showing as to any essential element, because such a failure "necessarily renders all other facts immaterial").

The Response does not sufficiently establish the existence of essential elements for Plaintiffs' claims. Specifically:

(A)     Plaintiffs fail to properly assert facts sufficient to survive summary judgment;

(B)     Plaintiffs' Count I Early Retirement plan interpretation theory contradicts representations they made to the Court and is unsupported by the facts;

(C)     Plaintiffs do not establish an abuse of discretion relating to Count II;

(D)     for Count IV, Plaintiffs do not establish a fiduciary duty was breached by any Defendant or an entitlement to any related equitable remedy;

(E)     Plaintiffs' bare-bones and unsupported assertions do not show intentional interference with benefits for Count V;

(F)     the Count VI anti-cutback claim is duplicative of Plaintiffs' Count II benefits claim;

(G)     Plaintiffs abandoned their Count VII promissory estoppel claim; and

(H)     Plaintiffs fail to adequately rebut Defendants' showing the Release bars the claims of Major and similarly situated Optional Retirement Class members.

Because Plaintiffs have not "put up," Defendants' Motion for Summary Judgment should be granted. Finally, both Classes should be decertified for the reasons identified in § II, *infra*.

**A.     Defendants' Facts Should Be Treated as Undisputed Because Plaintiffs Fail to Properly Support Their Factual Positions or Address Defendants' Facts.**

Plaintiffs' Statement of Disputed or Undisputed Facts ("Pl. SoF") [ECF 207] is procedurally and substantively deficient. Procedurally, the Statement (1) largely fails to provide record cites supporting their factual contentions and (2) altogether fails to set forth additional facts in numbered paragraphs—in contravention of this Court's Pretrial Procedures D.2 and D.3 and Fed. R. Civ. P. 56(c)(1). Plaintiffs' procedural errors magnify the Statement's substantive flaws.

Where the nonmoving party bears the burden of proof on an issue, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Howland v. Cincinnati Ins.*, No. 22-cv-2686, 2023 WL 8026165, at *3 (E.D. Pa. Nov. 20, 2023) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotations omitted). Summary judgment is appropriate if the evidence put forward by the non-movant "is merely colorable, or is not significantly probative[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, nor rest on the allegations in the pleadings." *Howland*, No. 22-cv-2686, 2023 WL 8026165, at *3 (quoting *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Celotex*, 477 U.S. at 324). "Denials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." *SEC v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980).

Plaintiffs' Statement is riddled with substantive errors. The Statement itself reads like an answer—in numerous paragraphs, Plaintiffs "dispute" a fact by making unsupported assertions

that they "lack knowledge" of the truth of Defendants' **supported** factual assertions.[1] Plaintiffs also "dispute" facts via legal argument;[2] speculation;[3] immaterial disagreement with Defendants' word choice;[4] or merely squabbling over what a fact means.[5] Plaintiffs raise "disputes" by citing to evidence which fails to create a genuine or material factual dispute;[6] or without providing any basis whatsoever.[7] None of these "disputes" are sufficient to create a genuine dispute as to a material fact. *See Bonastia*, 614 F.2d at 914; *Howland*, No. 22-cv-2686, 2023 WL 8026165, at *3.

Plaintiffs also assert additional facts and rely on additional exhibits in their Response,[8] but fail to identify **any** additional material facts in their Statement and fail to identify which exhibit or other record evidence support these assertions. Plaintiffs' bare promises of "proof at trial"[9] are patently insufficient to avoid summary judgment. *See, e.g.*, *Brogan v. Fred Beans Motors of Doylestown, Inc.*, No. CV 17-5628, 2020 WL 1666464, at *8 (E.D. Pa. Apr. 3, 2020) (granting the defendant's summary judgment motion because the plaintiff's "promises that he will be prepared at trial" fail to show a genuine issue of material fact (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007))), *aff'd sub nom. Brogan v. Fred Beans Chevrolet, Inc.*, 855 F. App'x 825 (3d Cir. 2021).

Due to Plaintiffs' procedural and substantive errors in failing to support their factual positions, the Court should treat Defendants' facts as undisputed and not consider Plaintiffs'

---

[1] Pl. SoF ¶¶ 2, 21–22, 38, 42–44.

[2] Pl. SoF ¶ 17, 38, 47–49.

[3] Pl. SoF ¶ 49, 53, 55.

[4] Pl. SoF ¶¶ 31, 43, 83, 88, 96.

[5] Pl. SoF ¶¶ 12, 14, 17, 22, 31, 35, 38, 43–44.

[6] Pl. SoF ¶¶ 12, 14, 17, 29, 31, 33, 35, 37, 42, 75, 82, 111, 114–15, 119–20.

[7] Pl. SoF ¶¶ 48–49, 104, 107, 109–10, 112.

[8] Pl. SoF ¶ 33 (Pl. Ex. 3); *id.* ¶ 31 (Pl. Ex. 5); *id.* ¶ 31 (Pl. Ex. 5); *id.* ¶ 31 (Pl. Ex. 6); *id.* ¶ 31 (Pl. Ex. 7); *id.* ¶ 31 (Pl. Ex. 8); *id.* ¶ 31 (Pl. Ex. 9).

[9] Resp. 2 (promising facts "after testimony at trial"); *id.* 3 ("As the Court will hear at trial[.]"); *id.* 13 (promising "testimony presented at trial"); *id.* 14 ("Plaintiffs intend to prove at trial[.]"); *id.* ("[C]ommunications that will be discussed at trial[.]"); *id.* 17 ("Plaintiffs will prove at trial[.]"); *id.* 21 ("Plaintiffs will show at trial[.]"); *id.* 27 ("Mr. Bensen [sic] will testify at trial[.]").

improper factual assertions.[10] *See, e.g.*, *Ellison v. BHBC Nw. Psychiatric Hosp.*, No. 11-cv-5106, 2013 WL 1482199, at *1–2 (E.D. Pa. Apr. 9, 2013) (Baylson, J.) (treating Defendants' facts as undisputed and not considering Plaintiffs' facts where Plaintiff failed to comply with the Court's Pretrial Procedures and inadequately supported factual positions per Fed. R. Civ. P. 56(c)).

**B.      Count I: Plaintiffs' 11th Hour Re-Introduction of an Expansive "Early Retirement" Plan Interpretation Theory Contravenes Their Representations to the Court and Defies Logic.**

With regards to their Early Retirement benefits claim, Plaintiffs resurrect in the Response a theory of plan interpretation thought long dead. Specifically, that "Employee" in Section IV.B(1) of the Plan must be interpreted to include ***all current and former*** employees of Historical DuPont who separated their service with Historical DuPont under the age of 50 with at least 15 years of service. *See* Resp. 5. Such an interpretation leads to illogical results, would expand liability dramatically to any former Historical DuPont employee with at least 15 years of service— including persons working for competitors—and raising this argument now contravenes specific representations made to the Court by Class Counsel.

This sprawling theory of liability was first made explicit in the Second Amended Complaint and its revised class definitions, to which Defendants objected as being an unfairly prejudicial expansion of the Early Retirement Class Claims—which claims were originally limited to New DuPont employees who misapprehended the impact of the Spin-Off on their benefits eligibility. The Court overruled Defendants' objections with a substantial caveat:

> [I]n the face of repeated charges that Employees have attempted to expand their theory, counsel has remained steadfast that they have not changed their substantive claims.

This Court relied on counsel's representations. In denying Employer's Second

---

[10] Numerous of Defendants' facts are concededly undisputed by Plaintiffs. *See* Pl. SoF ¶¶ 1, 3–11, 13, 15–16, 18-20, 23–28, 30, 32, 34, 36, 39–41, 45–46, 50–52, 54, 56-65, 67–74, 76–81, 84–87, 89-95, 97, 99–103, 105–06, 108, 116-18, 121–22.

Motion to Dismiss, this Court took "at face value Plaintiffs' assertion that any such expansion in the scope [of liability] is not intended in the revised definitions. . . . . **Further, "[i]f Plaintiffs change their tune and later attempt to argue such limitations are unwarranted, contrary to their express representations in their response, *such contentions will be scrutinized* and the Court will consider anew the arguments raised by Defendants in these briefings as to whether such modifications in scope would effectively restart the litigation and result in considerable prejudice to Defendants."**

Class Cert. Mem. 25 n.9 [ECF 136] (alterations in original; citations omitted; emphasis added). On the eve of trial, Plaintiffs should be estopped from reviving a previously disavowed theory of plan interpretation. Their attempt to reverse course now invites the Court's scrutiny.

In any event, Plaintiffs' preferred interpretation is of no moment. The Plan provisions cited by Plaintiffs do not establish any ambiguity in the term "employee." Resp. 5. Both early and optional retirement benefit provisions use similar, future tense language providing a benefit to current employees if eligibility requirements are satisfied before participants separate service with the Plan's participating employers. *See* ECF 196-5 at 29, 31 ("An employee *will* be eligible for [Early/Optional] Retirement . . . ." (emphasis added)). This "straightforward language . . . 'should be given its natural meaning[.]'" *Saltzman v. Indep. Blue Cross*, 634 F. Supp. 2d 538, 561 (E.D. Pa. 2009) (Baylson, J.) (citation omitted).[11]

Even if "employee" were ambiguous, which it is not, Plaintiffs fail to support their contentions that the Plan Administrator's interpretation is arbitrary and capricious or not entitled to deferential review. First, Plaintiffs do not show any Plan provision contradicted by the Plan Administrator's interpretation.[12] Second, as explained above, Plaintiffs' inadequately supported

---

[11] In the context of the Plan, Plaintiffs do not show how their tortured reading of "employee" to mean "current and former employee" is a natural meaning, how this reading is consistent with the Plan when the Plan explicitly refers to "former employees" when appropriate, or how their convoluted theory could be reasonably applied *to every former Employee* of Historical DuPont with at least 15 years of service.

[12] Contrary to Plaintiffs' assertion, the *Dewitt* court did not rely on "participant expectations" in

factual assertions regarding a conflict of interest or changing rationales should be ignored. *See supra* § I.A. But even if the Court considers them, Plaintiffs' assertions collapse under the slightest scrutiny. Plaintiffs provide ***zero*** authority for their proposition that a benefits denial establishes a conflict of interest merely because it results in cost savings—if that were the case, every benefits denial would be subjected to non-deferential review.[13]

Plaintiffs' reliance on selected portions of Mr. Durkovic's testimony—to demonstrate a "shifting rationale"—is misplaced. As is evident from the quoted testimony, Mr. Durkovic is ***not*** responding to whether "employee" means "current and former employee." *See* Resp. 6 (quoting Pl. Ex. 2 at 115:8–118:24).[14] However, Mr. Durkovic ***does*** address this issue later in his testimony:

> Q. Does it say that former employees will be eligible for early retirement after reaching age 50?
>
> A. It does not.
>
> Q. Do you know why?
>
> A. Because . . . if you were a former employee, you would have already terminated and ceased participation and your eligibility for benefits would have been determined at the time based on your age and service.

Reply SoF Ex. 15 (Durkovic Tr. II) at 87:6–15. Plaintiffs' shifting rationale theory is unsupported.

---

its arbitrary and capricious analysis of a plan fiduciary's interpretations. Resp. 6 (citing *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 521–22 (3d Cir. 1997) (concluding an interpretation was unreasonable because it disregarded other plan terms). Defendants provided the Third Circuit's guidance on analyzing interpretations under an arbitrary and capricious standard. Mot. 5 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 795 (3d Cir. 2010)).

[13] Plaintiffs' cited authority makes clear the first step in a conflict-of-interest analysis is determining whether the employer "'both funds the plan and evaluates the claims.'" *See McKay v. Bd. of Trs. of Bakery Drivers & Salesmen Loc. 194 Pension Fund*, 291 F. Supp. 3d 597, 601 (D.N.J. 2017) (quoting *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 128 (2008)). Moreover, "the mere fact" that members of the Plan Administrative Committee may be employees of Corteva "is not sufficient to support a finding of a conflict of interest." *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1033 (8th Cir. 2007). Plaintiffs have provided no evidence a conflict of interest exists.

[14] In the testimony cited by Plaintiffs, Mr. Durkovic was responding to where in the Plan "it says that a person must be at least 50 at their []termination date in order to receive an early retirement[.]" Pl. Ex. 2 at 115:8–11.

The Court should thus grant the Motion with respect to Count I.

**C.     Count II: The Administrative Committee Acted Within Its Discretion in Interpreting the Business Reorganization Exception to Apply to the Spin-Off.**

Plaintiffs inadequately supported factual assertions and legal arguments fail to establish the existence of all essential elements of Count II.

To the extent the Court entertains Plaintiffs' inadequately supported factual assertions, *see supra* § I.A, none provide a basis for denying the Motion. First, determining whether the Business Reorganization Exception was ambiguous in the context of a Spin-Off is a legal determination— not factual. Second, whether the Administrative Committee's interpretation was within its discretion "to construe and interpret and supply omissions with respect to the provisions of the Plan", ECF 196-13 at 38, is also a legal determination—not factual. As explained in Defendants' Motion, there is no ambiguity and the Administrative Committee did not abuse its discretion.

Plaintiffs' flimsy attempts to portray an abuse of discretion fall apart upon inspection. Plaintiffs do not dispute—and thus admit—that the intent of Optional Retirement was to "cushion the blow felt by otherwise loyal employees who lost their jobs through corporate action[.]" Pl. SoF ¶ 20. Plaintiffs are left with no basis for disputing that the Administrative Committee's interpretation was consistent with the Plan's purpose. And Plaintiffs provide no evidence supporting their assertion that the Administrative Committee's interpretation was inconsistent with past practice. *See* Pl. SoF ¶ 29 (providing no evidentiary basis for a "dispute").

Plaintiffs' final argument regarding Major's individual benefits claim denial, Resp. 9–10, demonstrates why this action is unsuitable for class treatment—it is unique to him. Regardless, this argument is unsupported by the facts which Plaintiffs ***do not materially dispute***: Major's individual appeal related to his request for Optional Retirement based on his **2021 separation from New DuPont—two years *after* the Spin-Off**; his Level 1 and Level 2 Appeals were denied

because, in 2019, he ceased working for a Plan-participating employer; and because the Spin-Off fell within the Business Reorganization Exception. *See* Pl. SoF ¶¶ 96–98 (not raising material disputes to the above asserted facts).

Defendants are thus entitled to summary judgment with respect to Count II.

**D.      Count IV: Plaintiffs Fail to Show Genuine Material Factual Issues Relating to Any Element of Their Breach of Fiduciary Duty Claim.**

**1.      Plaintiffs Fail to Show a Fiduciary Duty Breached.**

Plaintiffs' inadequately supported assertions fail to show the existence of the essential and undisputed elements of the Count IV breach of fiduciary duty claim.[15]

Plaintiffs' vague and conclusory assertions regarding "the existence of certain communications" touted by "Defendants" (Resp. 14) are insufficient to defeat summary judgment. As a threshold matter, the Court should not consider Plaintiffs' improperly supported factual assertions and promises of evidence at trial. *See supra* § I.A. Moreover, Plaintiffs' breezy listing of several communications (Resp. 14)—without identifying ***which*** Defendant made the statements, whether the statements were made in a fiduciary capacity, or how the statements misrepresented material facts—is the sort of "merely colorable" and "not significantly probative" evidence that cannot prevent summary judgment in Defendants' favor. *Anderson*, 477 U.S. at 249.

Undeterred by their lack of legal authority and adequately supported factual assertions, Plaintiffs manufacture a list of "facts [Class members] needed to know[.]" Resp. 15. The Court should reject Plaintiffs' blatant attempt to assemble out of whole cloth an affirmative duty under ERISA—when the statute contains no such requirement. As *Bixler* instructs, ERISA's "affirmative duty to inform" is required only "when the trustee knows that silence might be harmful." *Bixler v.*

---

[15] *See* Mot. 12 ("(1) that the defendant was acting as a fiduciary; (2) that the defendant made misrepresentations or omissions about the Plan; and (3) that the misrepresentations or omissions were material." (quoting Class Cert. Mem. 31)).

*Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993). The Third Circuit clarified such an affirmative duty exists only when a fiduciary is on notice that a beneficiary needs information to prevent them from making a harmful decision with respect to their benefits. *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 462–63 (3d Cir. 2003). No duty to disclose information exists "[a]bsent any evidence [a beneficiary] was harmed as a result of not having such information[.]" *Id.* at 463.

Plaintiffs make no showing of how Class members were harmed as a result of not having their alleged "need to know" information—nor can they, as the ***true*** gravamen of Plaintiffs' claims is the Spin-Off itself and its incidental impact on employees. It is axiomatic that Class Members had no control over the Spin-Off. And as has already been adjudicated on similar facts, merely "separating a plan from its employee-participants" during a Spin-Off does not transform a corporate restructuring into a fiduciary act. *Thondukolam v. Corteva, Inc.*, No. 19-CV-03857, 2020 WL 5944423, at *2 (N.D. Cal. Oct. 7, 2020). Plaintiffs' failure to put forward significantly probative facts on this essential element of materiality dooms Count IV.

Plaintiffs' last resort is to try to flip the legal burden. Resp. 15 (arguing Defendants must "conclusively establish that the communications were clear or sufficient to meet the Defendants' fiduciary duty"). This is not the standard where, as here, the non-movant has the burden of proof at trial. *See Berckeley*, 455 F.3d at 201. It is ***Plaintiffs*** who must set forth facts showing each essential element of their claims. *See Celotex*, 477 U.S. at 322–23. They have not done so and thus summary judgment should be entered against Plaintiffs on Count IV.

## 2. Plaintiffs Fail to Show an Entitlement to Any § 502(a)(3) Equitable Remedy.

Plaintiffs again vaguely promise they will "prove at trial" an entitlement to their equitable remedies and incorrectly insist Defendants must prove Plaintiffs are "precluded" from making

such a showing." Resp. 17–19. Plaintiffs' repetition of an erroneous argument lends it no strength. Plaintiffs, as nonmovant with the burden at trial on their claims, must set forth **now** adequately supported facts showing all essential claim elements. *See Celotex*, 477 U.S. at 322–23; *Berckeley*, 455 F.3d at 201. Unsupported promises of future proof do not cut it.

Plaintiffs concede they must show **fraud or inequitable conduct** to justify plan reformation, Resp. 17—but they altogether fail to make such a showing. Plaintiffs' cited authorities underscore their deficient Response. *See id.* (citing *Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014); *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 213, 215 (2d Cir. 2017)). In *Amara*, the Second Circuit determined the defendant performed the roles of both plan sponsor and administrator and used that "dual position" to "intentionally mislead employees about plan terms" to the defendant's undue advantage. 775 F.3d at 526–29. Similarly, the *Osberg* defendant was both plan sponsor and administrator and used its dual role to its "undue advantage." *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 558 (S.D.N.Y. 2015). Plaintiffs have not shown any undue advantage or dual role is present here and their conclusory assertion of inequitable conduct should be given no weight.

In their Motion, Defendants argued that Plaintiffs may not pursue a surcharge remedy under § 502(a)(3) if an adequate remedy is available under § 502(a)(1)(B)—because Plaintiffs' surcharge remedy is seeking the same benefits at issue in the ERISA § 502(a)(1)(B) claims. Mot. 22–23 (collecting cases). Plaintiffs' argument that they may plead, in the alternative to Counts I and II, a breach of fiduciary duty and surcharge remedy based on the same allegations is a red herring. Resp. 18–19 (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 436–38 (2011); *Dean v. Nat'l Prod. Workers Severance Tr. Plan*, 46 F.4th 535, 544 (7th Cir. 2022)). *CIGNA* is silent on this issue—a breach of fiduciary duty had already been established, so the Supreme Court's

discussion is limited to the appropriateness of the lower court's remedies. The *Dean* court, in reviewing a motion to dismiss, stated that a plaintiff may **plead** claims in the alternative—but "a participant generally cannot **pursue** both a § 502(a)(1)(B) claim and a § 502(a)(3) claim if the two claims seek the same relief or are based on the same allegations." 46 F.4th at 544 (emphasis added). This action is well past the pleading stage and Plaintiffs' authorities are inapposite.

Plaintiffs do not make the required showing of essential elements of their claimed equitable remedies of reformation, surcharge, or equitable estoppel. Indeed, Plaintiffs assert they "need not [] prove entitlement to an estoppel remedy[.]" Resp. 19. Plaintiffs' failures entitle Defendants to summary judgment as to these equitable remedies.

### E.   Count V: Plaintiffs Fail to Show Genuine Material Factual Issues Relating to Their § 510 Claim.

Defendants are entitled to summary judgment as to Count V because Plaintiffs do not properly support their assertion that Defendants' legitimate, non-discriminatory purpose of the Spin-Off and related Plan decisions was pretextual. Mot. 26–27. Instead, Plaintiffs again promise to make such a showing "at trial" and cite to additional materials which are not properly before the Court. *See* Resp. 21 (citing Pl. Exs. 1, 12–13); *also supra* § I.A. Moreover, the cited exhibits merely show Corteva and Historical DuPont satisfying or discussing their funding obligations (Pl. Exs. 1, 12), or otherwise appreciating the impact of the Spin-Off on the Plan (Pl. Ex. 13)— consistent with responsibilities under ERISA. An awareness of the incidental impact of the Spin-Off and related decisions does not raise an inference of intentional misconduct and is insufficient to show Defendants' legitimate business purpose is pretextual. *See Matsushita*, 475 U.S. at 586 (holding that more than a "metaphysical doubt" is required to defeat summary judgment).

The Court should grant summary judgment in Defendants' favor on Count V.

**F.      Count VI: Plaintiffs' Response Clarifies Their Anti-Cutback Claim is Duplicative of Their Count II Benefits Claim.**

The Response clarifies that Plaintiffs' § 204(g) claim relies on an "erroneous interpretation" theory. Resp. 23 (citing *Hein v. FDIC*, 88 F.3d 210, 216 (3d Cir. 2010) (treating an erroneous interpretation as a plan amendment)). Count VI thus rises and falls on the same "erroneous interpretation" theory espoused in Count II. *See id.* (citing *id.* at 8). Because Count VI is pled in the alternative to Count II, and both rely on the same legal theory, the Court should grant summary judgment as to Count VI as it is unnecessarily duplicative.[16]

**G.      Count VII: Plaintiffs' Abandonment of their Promissory Estoppel Claim Entitles Defendants to Summary Judgment.**

Plaintiffs have abandoned Count VII. *See* Resp. 24 ("Plaintiffs do not intend to assert this state-law claim."). Regardless, Plaintiffs have not properly responded to Defendants' Motion and thus summary judgment for Defendants is appropriate. *See* Fed. R. Civ. P. 56(e)(3).

**H.      The Release Bars the Claims of Major and Similarly Situated Optional Retirement Class Members.**

Plaintiffs contend Major's Release does not bar his claims on two grounds: (1) the Release only applies to New DuPont or Specialty Products; and (2) Major had a "vested and accrued right to [the Optional Retirement] benefit[.]" Resp. 24–25. Plaintiffs are wrong.

First, the Release specifically applies to "predecessors" of New DuPont and Specialty Products and the predecessors' current and former employees, officers, directors and agents. ECF 196-18 at 5. Historical DuPont is the predecessor corporation of both New DuPont and Specialty Products and thus the Release extends to it and its current and former employees. SoF

---

[16] For a second time, Plaintiffs resort to individualized issues relating only to Major to oppose summary judgment. Resp. 23 (arguing a 2021 Plan amendment was the reason for denying Major's benefits claim). This again demonstrates why this action is inappropriate for class treatment. Plaintiffs also misstate both Major's benefits claim—which was for Optional Retirement in connection with his 2021 New DuPont termination—and the reasons for its denial. *See supra* § I.C.

¶ 25 [ECF 196-3]; *see also Ward v. Avaya Inc.*, 299 F. App'x 196, 197 (3d Cir. 2008) (applying the term "predecessor" to a pre-spin entity and its pre-spin ERISA plans). Second, Plaintiffs provide no factual support for their contention that Major was entitled, in 2021, to "keep" an involuntary termination benefit for which he was not eligible in 2019.

Plaintiffs' reliance on unsupported allegations in the Second Amended Complaint, Resp 25 (citing SAC ¶¶ 125-127), are insufficient to defeat summary judgment on whether the Release applies to the claims of Major and similarly situated Optional Retirement Class members. *See Berckeley*, 455 F.3d at 201 ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings[.]"). Accordingly, the Court should grant summary judgment for Defendants on the those claims.

## II.     The Evidence Shows Decertification of this Class Action is Warranted.

In their Response, Plaintiffs' provide additional reasons to decertify this entire action.

Plaintiffs' Second Amended Complaint expanded the class definitions to *all* Historical DuPont employees whose employment ended due to the Spin-Off (as opposed to just employees who went to New DuPont). *Compare* SAC ¶¶ 109–10, *with* FAC ¶ 99 [ECF 73].

Defendants objected to the SAC. First, Defendants pointed out that—prior to the amendment—the legal theory and Named Plaintiffs' testimony all related to "purported confusion" of employees "being employed by Historical DuPont and [then] being employed by New Dupont." Defs.' Reconsideration Mot. 12 [ECF 109]. Defendants then explained that Plaintiffs' new legal theory expanding liability to *all* former Historical DuPont employees was so different from Plaintiffs' original theory that it was both prejudicial to Defendants and would create significant credibility problems for the Named Plaintiffs. *Id.* at 14. Indeed, Defendants highlighted testimony from Cockerill which specifically ***contradicted*** Plaintiffs' new expansive theory of liability, underscoring how the new legal theory should prevent class certification. *Id.* at 12–14.

13

Plaintiffs' response: trust us. Opp. to Defs.' Reconsideration Mot. 8–9 [ECF 111] (explaining that no expansion was intended in amending the class definitions).

The Court "relied on counsel's representations", overruled Defendants' objections, and certified the Classes—but noted that "[i]f Plaintiffs change their tune and later attempt to argue that [limiting the Class Claims to New DuPont employees is] unwarranted . . . ***such contentions will be scrutinized***[.]" Class Cert. Mem. 25 n.9. Class Counsel have indeed changed their tune, reviving a legal theory that "employee" means "current and former employee" (Resp. 5–6)—which, taken to its logical conclusion, would mean expanding liability to ***all*** former Historical DuPont employees. This argument is substantively nonsensical for the reasons previously explained. *See supra* § I.B.

But the fact that Class Counsel is bringing this expansive legal theory on the eve of trial provides a new basis for decertifying this entire action: it demonstrates Class Counsel's inadequacy in prosecuting this action. Class Counsel, on whom Class members are relying, have made the inexplicably poor choice to impugn their own credibility—and the credibility of Class Representatives—placing at risk both their ability to prevail on the merits and this Court's class certification of the action. Class Counsel's adequacy in representing the Classes is further undermined by their promise that Benson will "testify at trial" and, apparently, contradict his prior sworn testimony—wherein Benson clearly states he does not seek the Optional Retirement benefit sought by the titular Class. *Compare* Resp. 27 ("Bensen [sic] will testify at trial that he seeks an optional retirement benefit."), *with* Decertification Mot. 7–8 [ECF 169] (identifying Benson's testimony where he explicitly disclaims any interest in the reduced Optional Retirement benefit).

For these new reasons provided in the Response, in addition to the other adequacy and typicality concerns first raised in Defendants' Decertification Motion, this action should be

decertified in its entirety. *See Johnson v. GEICO Cas. Co.*, 672 F. App'x 150, 157 (3d Cir. 2016) ("'District Courts are required to reassess their class rulings as the case develops' to ensure the class satisfies Rule 23." (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998))).

## CONCLUSION

The Response's procedural and substantive defects prevent Plaintiffs from showing genuine material disputes as to the essential elements of their claims. The Court should grant summary judgment to Defendants on all Counts. Alternatively, Defendants move the Court to grant summary judgment on as many Counts or issues as it deems appropriate, so as to narrow the factual and legal issues to be determined at trial. Finally, if the Court does not grant summary judgment on all Counts, Defendants request the Court treat as established all material facts not genuinely disputed by Plaintiffs.[17] *See* Fed. R. Civ. P. 56(g).

Dated: June 14, 2024

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ *Nipun J. Patel*

Todd D. Wozniak (*pro hac vice*)
1180 West Peachtree Street N.W., Ste. 1800
Atlanta, GA 30309
(404) 817-8431
Todd.Wozniak@hklaw.com

Kayla Pragid (*pro hac vice*)
777 S. Flagler St., 1900W
West Palm Beach, FL 33401
(561) 650-8303
Kayla.Pragid@hklaw.com

*Counsel for Defendants*

Nipun J. Patel (I.D. No. 208130)
Cory A. Thomas (I.D. No. 308807)
One Liberty Place, Suite 3300
1650 Market St.
Philadelphia, PA 19103
(215) 252-9600
Cory.Thomas@hklaw.com
Nipun.Patel@hklaw.com

Andrew W. Balthazor (*pro hac vice*)
701 Brickell Ave., Suite 3300
Miami, FL 33131
(305) 789-7584
Andrew.Balthazor@hklaw.com

---

[17] Because Plaintiffs did not properly dispute **any** of Defendants' facts, the Court should treat all of Defendants' facts as not genuinely disputed by Plaintiffs. *See supra* § I.A.

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document was served via the ECF system to the registered participants as identified on the Notice of Electronic Filing on June 14, 2024.

/s/ Nipun J. Patel
Nipun J. Patel