IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT F. COCKERILL et al.,** *Plaintiffs,* <br><br> v. <br><br> **CORTEVA, INC. et al.,** *Defendants.* | **CIVIL ACTION** <br><br> **NO. 21-3966** |

### MEMORANDUM RE: "EMERGENCY" MOTION TO STAY TECHNICAL ADVISOR AND SPECIAL MASTER APPOINTMENTS

**Baylson, J.**                                                                                                           **March 18, 2025**

On March 17, 2025, Defendants filed an Emergency Motion to Stay Technical Advisor and Special Master Appointments ("Motion"). ECF 340. After reviewing the Motion, the Court will **DENY** it, finding it entirely without factual or legal support. Importantly, this Motion is not an "emergency."[1] Rather, Defendants seek extraordinary equitable relief, attempting to halt the damages phase of this ERISA case where the Court has already found liability against them.

"DuPont" is known in American industrial history as a successful corporation providing chemicals and many other products useful in everyday life. This case stems from a 2019 "spinoff" by Historical DuPont through which certain subsidiaries were turned into separate business organizations (including Corteva). This led to the termination, transfer, or reassignment of many employees, disrupting Historical DuPont's long-standing employee benefits plan.

---

[1] After many years on this Court, the undersigned can honestly say the only time a true "emergency" was presented was a young girl who was suffering from cystic fibrosis and needed an immediate operation. Government regulations precluded allowing a transplant to a minor, and the Plaintiffs presented an expert physician who testified that this regulation was not appropriate under modern medical experience. After a telephone call with a senior official with the Department of Health & Human Services, I granted the requested relief and required that the operation proceed. Id. The operation was successful and the girl now lives a healthy life. See Murnaghan v. United States Dep't of Health and Human Servs., 2013 WL 12403073 (E.D. Pa. June 5, 2013).

I. **RELEVANT BACKGROUND**

1. **Complaints and Dismissals:** Plaintiffs filed an Initial Complaint and Amended Complaints. ECF 1, 73, 102. The Court denied Defendants' Motions to Dismiss, ECF 116, 117, and Defendants filed an Answer with affirmative defenses, ECF 118.

2. **Claims Asserted:** The Operative Complaint, ECF 102, included several counts, with Counts III and VII later dismissed, ECF 224:

- Count I: Early retirement benefits under 29 U.S.C. § 1132(a)(1)(B)
- Count II: Optional retirement benefits under 29 U.S.C. § 1132(a)(1)(B)
- Count III: Benefits under 29 U.S.C. § 1132(a)(1)(
- Count IV: Breach of fiduciary duty under 29 U.S.C. §§ 1104, 1105
- Count V: Interference with protected rights under 29 U.S.C. § 1140
- Count VI: Impermissible cutback of accrued benefits under 29 U.S.C. § 1054(g)
- Count VII: State law claims for promissory estoppel

3. **Discovery and Class Certification:** Extensive discovery ensued, and several discovery motions were decided. E.g., ECF 49, 57, 64. Plaintiffs' Motion for Rule 23 Class Certification was granted. ECF 137.

4. **Non-Jury Liability Trial:** After unsuccessful settlement efforts by Retired Magistrate Judge Thomas J. Rueter and the dismissal of Counts III and VII, the undersigned scheduled the liability portion of a non-jury trial to begin on June 25, 2024. Plaintiffs' presentation took four (4) days, with hundreds of pages of testimony from the named Plaintiffs and some experts. After a short recess, the Defendants presented their testimony for two (2) days, also with numerous exhibits.

5. **Findings of Fact and Conclusions of Law:** After extensive briefing, the Court issued tentative findings of fact and conclusions of law to give counsel the opportunity to highlight errors or omissions. ECF 285. The Court then filed final findings of fact (380 paragraphs) and

Conclusions of Law (161 paragraphs). ECF 318. The Court entered a verdict in favor of Defendants as to Count I and V, but in favor of Plaintiffs on Counts II, IV, and VI.[2]

6.      Because liability and damages had been bifurcated without opposition, ECF 225, in announcing the verdict the Court stated that damage proceedings would begin promptly, and that the Court intended to make a ruling on damages as promptly as possible after the completion of any further testimony or briefing.

Defendants' Motion omits all the above background. But this background information is very important because as the case is proceeding strictly according to law and settled federal civil procedures, Defendants are attempting to interrupt the progress towards a damages verdict, which Plaintiffs deserve and the Court intends to make as promptly as possible. All objections asserted by Defendants in their "emergency" motion can be reserved until final judgment is entered and can be presented on post-trial motions in this Court and/or an appeal.

I.    **DEFENDANTS' MOTION**

Aside from the procedural impropriety of this Motion as noted above, Defendants' Motion contains numerous factual errors as well as irresponsible and unsupportable legal arguments. After nearly five years of litigation, Plaintiffs and Class Members deserve a damages verdict. This Court intends to render a verdict promptly upon the completion of the briefing after any necessary factual findings that bear on the amount of damages to which the members of the class are entitled. This Court has already scheduled oral argument to take place on April 9, 2025, ECF 336, recognizing that there are important issues of fact and fairness that must be resolved. Defendants' Motion omits any mention that they have already been found liable to Plaintiffs; there is no issue here as to liability. The only issue is the amount of damages, an evaluation which this Court is undertaking

---

[2] Counts III and V were previously dismissed.

with careful attention to all of the facts and the law. Defendants' attempt to delay proceedings is unjustified. As noted, all of their arguments can be raised post-trial or on appeal.

### A. Ms. Hoffman's Appointment Is Permissible And Appropriate

7.  Defendants mischaracterize the role of Ms. Susan Hoffman, a "technical advisor" on actuarial principles—***not*** a practicing attorney or legal advisor. Ms. Hoffman is no longer a practicing attorney[3] and has not been retained for, and will not render, any legal advice to this Court. Rather, Ms. Hoffman was retained as a technical advisor on the actuarial principles at the core of ERISA damages. See In re Peterson, 253 U.S. 300, 312 (1920); General Elec. Co. v. Joiner, 522 U.S. 136, 149 (1997) (Breyer, J., concurring). This topic is wholly appropriate for the use of an independent technical expert given the importance of such calculations.

8.  Ms. Hoffman's appointment is entirely appropriate and within the Court's discretion. See In re Peterson, 253 U.S. at 312; General Elec. Co., 522 U.S. at 149. This ERISA case necessarily involves serious and substantial issues about actuarial principles, which this Court intends to follow. The computation of damages in this case may require some nuanced findings depending on the age of specific members of the certified class, their years of service with DuPont, and their health, and other material factors. This Court does not take the demands or the burden of making of these findings fairly and accurately lightly and expects that Ms. Hoffman's technical experience will be very relevant.

9.  The Court is acting in a mainstream rational fashion by appointing a technical advisor and does not intend to stay the proceedings as there is no reason to do so. The Court is proceeding cautiously and lawfully. Defendants' opposition lacks merit.

---

[3] Ms. Hoffman represented to the Court that she retired from practicing as an attorney in 2015.

### B. Ms. Hoffman and Mr. Bazelon Are Not Deciding Damages Or Equitable Relief

10. Although Defendants note concern that the Court is improperly relying on Mr. Bazelon and/or Ms. Hoffman for "advice" on equitable issues, the undersigned recognizes that it is my job and my job alone to make decisions on damages and equitable relief.

11. However, the Federal Rules of Civil Procedure (see Fed. R. Civ. P. 53) and the Federal Rules of Evidence (see Fed. R. Ev. 706) allow the Court to secure advice on these issues. But any decisions will be mine and mine alone and subject to appeal.

12. Defendants' "emergency" motion raises no real issues of unfairness or prejudice. Defendants will have the opportunity to state their position on damages when they file their response to Plaintiffs' motions which is due on March 28, 2025. There is no reason for delay.

### C. Communications Between the Court, Mr. Bazelon, and/or Ms. Hoffman Are Appropriate

13. The accusations of so-called ex parte communications between Richard Bazelon, Esq. and/or Susan Hoffman are baseless and without merit. Mot. at 1, 3–5, 7–8, ECF 340.

14. First, Fed. R. Civ. P. 53 (cited in this Court's Order entered appointing Mr. Bazelon as Special Master, ECF 319) contemplates ex parte communications. Indeed, the Notes of the Advisory Committee on Rules states:

> [T]here may be circumstances in which the master's role is enhanced by the opportunity for ex parte communications with the court. A master assigned to help coordinate multiple proceedings, for example, may benefit from off-the-record exchanges with the court about logistical matters. The rule does not directly regulate these matters. It requires only that the court exercise its discretion and address the topic in the order of appointment.

Fed. R. Civ. P. 53(b)(2) advisory committee's note to 2003 amendment.[4]

---

[4] See also JOE S. CEVIL & THOMAS E. WILLGING, COURT-APPOINTED EXPERTS: DEFINING THE ROLE OF EXPERTS APPOINTED UNDER FEDERAL RULE OF EVIDENCE 706 39–45 (1993).

15. Second, as the Court is entitled to retain a technical advisor such as Ms. Hoffman, there can certainly be nothing improper about communications with her on the merits of the case. The fact of the matter is that the undersigned has had, up until yesterday, two brief telephone conversations with Ms. Hoffman; the first was five minutes, after Plaintiffs had identified Ms. Hoffman as a potential expert on benefits issues, and the second was about whether Ms. Hoffman had conflicts of interest based on past experiences involving DuPont.

16. Third, the cases cited by Defendants in their Motion are inapposite to their concerns about due process. Mot. at 7–9, ECF 340. None of these cases support Defendants' argument that their due process rights are being violated by the Court's limited ex parte communications with Mr. Bazelon and Ms. Hoffman. Id. Rather, the cases cited by Defendants are limited largely to criminal contexts and questions about two sentencing courts' ex parte communications with experts. See United States v. Green, 544 F.2d 138, 146 (3d Cir. 1976) (holding in a criminal case that trial judge conducting ex parte phone conversation with court-appointed expert was not reversible error);[5] United States v. Craven, 239 F.3d 91, 101 (1st Cir. 2001) (holding in a criminal case that "a sentencing court may not utilize an ex parte conversation with a court-appointed expert as a means to acquire information critical to a sentencing determination and then rely on that information in fashioning the defendant's sentence" and finding reversible error).

17. Further, the Third Circuit cases cited by Defendants in their Motion do not support their argument. In Green, the Third Circuit ruled that the sentencing court's ex parte communications were not reversible error. 544 F.2d at 146. In In re Kensington Int'l Ltd., the

---

[5] See discussion in JOE S. CEVIL & THOMAS E. WILLGING, COURT-APPOINTED EXPERTS: DEFINING THE ROLE OF EXPERTS APPOINTED UNDER FEDERAL RULE OF EVIDENCE 706 40 n.79 (1993).

Third Circuit declined to reach a decision on the question of ex parte communications with court-appointed advisors, parties and attorneys. 368 F.3d 289, 294 (3d Cir. 2004). Neither governs here.

18. This Court sees no problem in having ex parte discussions with Mr. Bazelon and the Court's designated technical advisor, Ms. Hoffman.

### D. The Court Will Evaluate Each Party' Expert Opinions

19. After finding in favor of Defendants on Count I but against Defendants on Counts II, IV, and VI, the parties were offered the opportunity to jointly retain an expert to reduce costs but declined to do so. ECF 326 This proposal was not accepted, therefore the Court anticipated that each side would retain its own experts. Plaintiffs have since filed a detailed expert report by Ian Altman, ECF 333, and Defendants have identified two experts that they have retained, ECF 328. The Court anticipates reading their submissions as attachments or included within Defendants' response to Plaintiff's Motion for Damages to be filed on March 28, 2025.

20. This Court does not anticipate any ex parte discussions with either Plaintiffs' expert or Defendants' experts.

For the reasons stated above, Defendants' Motion is **DENIED.** An appropriate order follows.

BY THE COURT:

s/ Michael M. Baylson
**MICHAEL M. BAYLSON**
**United States District Court Judge**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 21\21-3966 Cockerill et al v. Corteva, Inc\21vc3966 Memorandum on Emergency Mot..docx