IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT F. COCKERILL et al., *Plaintiffs,* v. CORTEVA, INC. et al., *Defendants.* | CIVIL ACTION NO. 21-3966 |
|---|---|

**Baylson, J.**                                                                                     **April 21, 2025**

## MEMORANDUM RE: RETROACTIVE BENEFITS AND DEFENDANTS' MOTIONS

### I.      INTRODUCTION

The Court assumes the parties' familiarity with the facts and procedural history of this case. On March 19, 2025, Defendants filed a Partial Motion to Dismiss and Motion to Decertify the Rule 23(b)(1) and (2) class action as to Count IV (Breach of Fiduciary Duty) and the Optional Retirement Class as to Counts II (Denial of Benefits) and IV (Breach of Fiduciary Duty). Mot., ECF 346. Defendants seek to dismiss Count IV and Plaintiff Benson's claims, for lack of subject matter jurisdiction based on insufficient Article III standing and seek to decertify Count IV and the Optional Retirement Class. Defendants' Motions are **DENIED**. Defendants' Motions improperly attempt to relitigate liability which has already been decided in favor of Defendants. After several years of litigation and the filing of extensive Findings of Fact and Conclusions of Law, ECF 318, the Court found Defendants liable under certain counts.[1] Mot., ECF 318.

---

[1] While Defendants claim that the "Motion[s are] not filed to delay final judgment" and that they are raising them "now in light of the Court's findings/conclusions following the liability phase of trial," along with Plaintiffs' assertions, ECF 346 at 1 n.1, Defendants' Motions should have—and could have—been raised earlier. Instead, Defendants waited until months after the Court filed its Findings of Fact and Conclusions of Law, choosing to raise these issues while the parties are briefing multiple remedy-related issues. Defendants' arguments, particularly that Plaintiffs have not suffered any "damages," in essence attempt to get the Court to reconsider its carefully-prepared findings on liability, which were supported by extensive Findings of Fact and Conclusions of Law, after six days of trial testimony, and hundreds of exhibits.

1

Additionally, the Court noted that during the April 9, 2025, oral argument that it was "tending towards finding that the [Plaintiffs] should be entitled to relief as of the date of the spin-off" under Count II which the parties refer to as "retroactive" recovery. 4/9/2025 Oral Arg. Tr. 18:23–25, ECF 371. The Court now formalizes this conclusion for the reasons detailed below.

## II.   DISCUSSION

### A.   Article III Standing

Under Article III, federal district courts have jurisdiction over actual "cases or controversies." U.S. Const. Art. III, § 2. Plaintiffs "must establish that they have standing to sue." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quotations omitted). A plaintiff must demonstrate: (1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. See, e.g., Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 358–59 (3d Cir. 2015); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

#### i.  Injury-in-Fact

The injury-in-fact prong requires a plaintiff to allege an injury that is both "concrete and particularized." Spokeo, Inc. v. Robins, 578 U.S. 330, 334 (2016), as revised (May 24, 2016) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–181 (2000). An injury is particularized if it impacts the plaintiff in a personal and individual way. Id. at 339. An injury-in-fact must be concrete, "actual or imminent, not conjectural or hypothetical," and particularized. Lujan, 504 U.S. at 560; see Spokeo, Inc., 578 U.S. at 334. "An injury is 'concrete' if it is real, or distinct and palpable, as opposed to merely abstract . . . ." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (quoting New Jersey Physicians, Inc. v. President of the U.S., 653 F.3d 234, 238 (3d Cir.2011)); see also Spokeo, Inc., 578 U.S. at 340 (noting that concrete injury must be real but need not necessarily be tangible).

As a preliminary matter, this Court recognized in its Findings of Fact and Conclusions of Law on liability that Early Retirement Class Members and Optional Retirement Class Members were injured because of Defendants' breach of fiduciary duties.  See Findings of Fact & Conclusions of Law re: Liability ¶¶ 468–472, ECF 318.  Defendants' insistence that the injury for Count IV is premised on "subjective confusion" is wrong.  Mot. at 7, ECF 346.  As is discussed further below, the Early Retirement Class Members and Optional Retirement Class Members were concretely injured by the breach of fiduciary duties in ways unrelated to confusion.[2]

Defendants' failure to clearly inform the Early Retirement Class that, after the spin-off, their years of service would stop accruing and that they were no longer employees of the Plan sponsor was a breach of Defendants' fiduciary duties and constituted a denial of information to which the Early Retirement Class was entitled under ERISA.  Further, Defendants' failure to clearly inform the Optional Retirement Class that (a) the Plan excluded them from Optional Retirement Benefits based on the Administrative Committee's interpretation that the spin-off was a Business Exception to Optional Retirement Benefit and (b) they had been terminated from the Plan sponsor was a breach of Defendants' fiduciary duties and constituted denial of information to which the Optional Retirement Class was entitled.  See Findings of Fact & Conclusions of Law re: Liability ¶ 12, ECF 318 (citing Ex. J-52; 9/24/24 Day 5 Tr. Trans. 107:20–25, ECF 280).  Defendants' failure to communication this information prevented Class Members from knowing where they stood with respect to their pension benefits.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989) (citing H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 11 (1973)); Kelly v.

---

[2] That the Court noted that "Defendants' multitude of informational sources was confusing," Findings of Fact & Conclusions of Law re: Liability ¶ 77, ECF 318, does mean such confusion was the injury-in-fact providing a basis for standing.  There are, as discussed below, multiple bases for concrete injury for each Class here which comport with the requirements of Article III and Fed. R. Civ. P. 23.

RealPage Inc., 47 F.4th 202, 212 (3d Cir. 2022) (noting that to show standing based on an "information injury," "a plaintiff need only allege that she was denied information to which she was legally entitled, and that the denial caused some adverse consequences related to the purpose of the statute"); Huber v. Simon's Agency, Inc., 84 F.4th 132, 146 (3d Cir. 2023). In turn, this failure had adverse consequences for Optional and Early Retirement Class Members that relate to the core purposes of ERISA.[3] See Kelly, 47 F.4th at 212; Firestone Tire & Rubber Co, 489 U.S. at 118 (citing H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 11 (1973)). These are concrete injuries. See Pub. Citizen v. DOJ, 491 U.S. 440, 448–49 (1989) (noting that nondisclosure of information may constitute "concrete" injury); FEC v. Akins, 524 U.S. 11, 13–14, 21.

Class Members were prevented "from taking any action to prevent or mitigate this loss of benefits," Opp. at 4, ECF 357, such as pressuring Defendants (in the case of Early and Optional Retirement Classes) or challenging the erroneous interpretation of the Plan (in the case of Optional Retirement Class), and experienced disappointment.[4] These are adverse consequences plainly relate to the purpose of ERISA because Class Members did not know where they stood with respect

---

[3] Defendants' attempt to use George v. Rushmore Serv. Ctr., LLC, 114 F.4th 226, 236 (3d Cir. 2024) to support its claims that Class Members did not experience concrete injury fails. In George, the plaintiff asserted standing based on informational and traditional injuries. Id. at 236. The Third Circuit held that the plaintiff had no informational injury because she did not show adverse effects flowing from the omission of information to which she was entitled. Id. Mainly, the plaintiff in George did not indicate "downstream financial consequences, or that [she] suffered distress." Id. Here, testimony from the liability portion of this bifurcated trial make clear that Class Members suffered adverse consequences.

[4] For example, "Cockerill credibly testified that he expressed to Defendants' employee Lisa White that he was disappointed with the company's decision" about Early Retirement Benefits and that in response, White implied that "others were disappointed, too." See Findings of Fact & Conclusions of Law re: Liability ¶ 168, ECF 318 (citing 6/25/24 Day 1 PM Tr. Trans. 87:23–88:5, ECF 245).

4

to their pension benefits.[5] See Kelly, 47 F.4th at 212; Firestone Tire & Rubber Co, 489 U.S. at 118 (citing H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 11 (1973)).  The injuries are "real, or distinct and palpable, as opposed to merely abstract." Blunt, 767 F.3d at 278 (quoting New Jersey Physicians, Inc., 653 F.3d at 238; see Spokeo, Inc., 578 U.S. at 340 (noting that concrete injury need not necessarily be tangible).

Moreover, Plaintiffs established more than a bare statutory violation.  "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, Inc., 578 U.S. at 341.  Indeed, "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Id. at 342.  But, in no way can the harms experienced by Plaintiffs be conceptualized as equivalent to an incorrect zip code. See, e.g., Findings of Fact & Conclusions of Law re: Liability ¶¶ 12, 468–472, ECF 318.  Plaintiffs have demonstrated concrete injuries, not mere statutory violations.

The Third Circuit held in In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 638 (3d Cir. 2017) that the plaintiffs had standing where their private information was disseminated without authorization—the injury that the statute at issue was intended to prevent. Such dissemination was an injury-in-fact, not "a mere technical or procedural violation of" the statute. Id.  The same analysis applies here.  ERISA was intended to prevent the non-payment of vested benefits and help ensure that "the individual participant knows exactly where he stands with respect to the plan." H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 11 (1973); see Findings of Fact & Conclusions of Law re: Liability ¶¶ 446, 469, ECF 318; Firestone Tire & Rubber Co., 489 U.S.

---

[5] Based on this logic, this Court also does not believe that Benson lacks standing just because there is testimony which indicated he wanted an unreduced benefit—indeed, the injury as to Count IV does not turn on the denial of benefits themselves.

at 118. The incomplete, inconsistent, and contradictory information communicated (or not communicated) by Defendants goes beyond being a mere technical violation of the statute as detailed in the Findings of Fact and Conclusions of Law. The injury to the Early and Optional Retirement Class Members is one of the very specific injuries that ERISA was enacted to prevent—the inability to know where exactly one stands with respect to his pension benefits and Plan resulting from the miscommunication or omission of material information. See Firestone, 489 U.S. at 118.

In sum, as detailed in the Findings of Fact and Conclusions of Law and above by this Court's evaluation of the multiple concrete injuries experienced by Plaintiffs, Plaintiffs' claim under Count IV establishes more than just a bare violation of ERISA and satisfies the injury-in-fact requirement for Article III standing.

### ii. Plaintiffs' Injuries are Traceable To Defendants' Acts and Omissions

"Fair traceability requires a causal connection between the injury-in-fact and a defendant's conduct; the injury cannot result from 'the independent action of some third party not before the court.'" Lutter v. JNESO, 86 F.4th 111, 127 (3d Cir. 2023) (quoting Lujan, 504 U.S. at 560). The plaintiff must allege and prove that the defendant's action is the "but for" cause of the plaintiff's injury. See Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 418 (3d Cir. 2013) (citing The Pitt News v. Fisher, 215 F.3d 354, 360–61 (3d Cir. 2000)).

Defendants' argument that Plaintiffs' injuries under Count IV are not traceable to Defendants' actions is without merit. The injury affiliated with Count IV is not solely the denial of benefits. Rather, the injury is the fact that Plaintiffs did not know where they stood regarding their benefits, were deprived of the opportunity to pressure Defendants (in the case of Early and Optional Retirement Classes) or challenging the erroneous interpretation of the Plan (in the case

of Optional Retirement Class), and experienced disappointment. These injuries are fairly traceable to Defendants' breaches of fiduciary duties.

### B. Class Certification

The Court declines to modify class certification for Count IV and the Optional Retirement Class. First, as to Count IV, Defendants' argument that this case is not appropriately treated as a class action is contrary to the facts. Agreeing with Defendants would defeat the purpose of class actions entirely. Second, Defendants' argument that the resolution of the Optional Retirement Class claims requires determining individualized financial harm evaluations does not mean this case cannot be a class action. Third, the Optional Retirement Class does, in fact, satisfy Rule 23's typicality and adequacy requirements. The Court has held that Major was an adequate class representative regardless of the Release. See Findings of Fact & Conclusions of Law re: Liability ¶¶ 120–26, 529–40, ECF 318. And the fact that Benson was laid off after the spin-off and sought optional benefits on that basis does not mean he was not entitled to Optional Retirement Benefits at the time of the spin-off. In addition, the fact that Benson testified that he had planned for an unreduced benefit does not mean he is an inadequate class representative.

### C. Retroactive Recovery Under Count II

The Court found that Defendants were liable under Count II. See Findings of Fact & Conclusions of Law re: Liability ¶¶ 422–439, ECF 318. Throughout the damages portion of this litigation, the parties have disputed whether the Court can and/or should award the Optional Retirement Class retroactive recovery under Count II. The Court holds that Optional Retirement Class Members are entitled to retroactive recovery under Count II should they elect such recovery.

Cottillion v. United Ref. Co., 781 F.3d 47, 51 (3d Cir. 2015), does not bar retroactive benefit elections for the Optional Retirement Class under Count II. In Cottillion, the Third Circuit

addressed whether retroactive payment of benefits was an available remedy to pension plan participants who were eligible to elect early retirement benefits but failed to do so due to misleading communications about a plan amendment that would actuarially reduce benefits taken before age 65. Id. at 51–52. The district court concluded that "class members who had not yet elected to receive their benefits were not entitled to retroactive benefits" where they "would have elected to commence receiving benefits upon reaching age 59½ had the Plan not improperly informed them that those benefits would be actuarially reduced." Cottillion v. United Ref. Co., 2013 WL 5936368, at *8 (W.D. Pa. Nov. 5, 2013), aff'd, 781 F.3d 47 (3d Cir. 2015). The district court rejected that claim, holding that such relief would be too "speculative" since plaintiffs "failed to supply any evidence indicating that any or all of those class members elected not to commence receiving benefits on the basis of the cutback" and "several of the plan participants within this group failed to apply for benefits even upon reaching age 65." Id. The Third Circuit affirmed the denial of claims for retroactive relief where plain participants knew of their eligibility to elect benefits but chose not to because of misleading plan communications about actuarial reductions.

    Here, the Optional Retirement Class Members' denial of benefits is materially different. The Cottillion plaintiffs knew they could elect benefits and chose not to do so because of misleading information that those benefits would be actuarially reduced. Cottillion, 2013 WL 5936368, at *8. In contrast, in this case, Optional Retirement Class Members' failure to apply for Optional Retirement Benefits was due to Defendants' silence about Optional Retiremebnt Benefits being cancelled and the lack of information necessary to assert those rights in the first place. Optional Retirement Class Members were not told they were "terminated"—an event that theoretically triggered eligibility for Optional Retirement—or that the Administrative Committee interpreted the Plan to exclude the spin-off from Optional Retirement Benefits.

Such a denial is not speculative nor hypothetical. By electing retroactive benefits, Optional Retirement Class Members are simply now being permitted to make the elections they were previously unable to make. Under the plan, at the time of the spin-off, the Optional Retirement Class members would have been entitled to make an election, but were not in a position to make a meaningful choice about their vested rights because of Defendants' conduct. The only way to give meaningful effect to that right is to permit Optional Retirement Class Members to elect retroactive recovery under Count II.

Cottillion does not foreclose this type of relief. Rather, Cottillion underscores the distinction between participants who were given the option to elect benefits and chose not to, and those who were deprived of the option altogether. Accordingly, the Court finds that retroactive recovery is appropriate for the Optional Retirement Class under Count II. This remedy is permissible, see Ream v. Frey, 107 F.3d 147, 153 (3d Cir. 1997) (citing Hein v. FDIC, 88 F.3d 210, 223–24 & n. 11 (3d Cir. 1996)); also Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 289 (3d Cir.1995), cert. denied, 517 U.S. 1209 (1996) ("[A]n individual participant may sue on his or her own behalf to recover equitable relief under section 1132(a)(3), and characterized reimbursements of back benefits as 'remedies which are restitutionary in nature and thus equitable."), and necessary to place class members in the position they would have been in had the Plan been administered in accordance with its terms and ERISA's requirements.

### III.  CONCLUSION

For the reasons discussed herein, Defendants' Motions are **DENIED** and the Court will permit Optional Retirement Class Members to elect retroactive benefits under Count II. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 21\21-3966 Cockerill et al v. Corteva, Inc\21-3966 Memo on mot. to dismis and decertify, retroactivity.docx