IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT F. COCKERILL et al.,** *Plaintiffs,*  v.  **CORTEVA, INC. et al.,** *Defendants.* | **CIVIL ACTION**  **NO. 21-3966** |

**MEMORANDUM RE: PETITION FOR ATTORNEYS' FEES**

**Baylson, J.**                                                                                                                **May 27, 2025**

Plaintiffs have filed a Petition for Attorneys' Fees and Costs and supported it with numerous exhibits, including detailed background information about most of the lawyers who participated most actively in this case in either the trial or various motion practice events that took place over the four years plus that this case has been pending.

## INTRODUCTION

The prosecution of an ERISA case is no small undertaking for any attorney with clients who have alleged that they were deprived of retirement benefits and rights that Congress has established many years ago, against a major United States corporation with a long history of successful products and contributions to the U.S. economy. This case is a textbook example of how a group of attorneys, who have supported their petition with strong factual authentications of their skills and backgrounds, that enabled them to represent several clients as class representatives, to secure certification of classes under Fed. R. Civ. P. 23 by this Court, as to which the Third Circuit rejected an appeal by Defendants. Further, Plaintiffs' counsel, although having indicated to Defendants a sincere interest in entering into settlement negotiations, were apparently rebuffed consistently and constantly by Defendants, and thus had no choice but to

bring this case to trial.[1]  As this Court knows from personally presiding at this trial, which was bifurcated as to liability but then proceeded as to damages, Plaintiffs' counsel were always well prepared for every event in this Court, had prepared and filed excellent legal memoranda, and represented their clients, the class representatives, and the members of the putative classes, with great skill and ability, and thus the Court will grant the motion, and will set forth some details in this Memorandum about the background.

This Court is well aware that Defendants have promised to appeal from the final judgment of this Court in favor of Plaintiffs and although the record itself, consisting of six trial days, three on liability and three on damages, plus numerous briefs on many different issues, is subject to review by the Third Circuit.  However that appeal may turn out, if Plaintiffs continue to be successful, they deserve a substantial amount of attorneys' fees for their undertaking this case at great risk, and having demonstrated their very strong preparation and their skill in presenting evidence at trial, and defending the verdicts in their favor on post-trial motions, Plaintiffs' counsel deserve to be appropriately compensated.

**PROCEDURE**

As the docket entries will show, Defendants' counsel did not miss any opportunities to represent their clients in the best way possible, in the fine traditions of great Philadelphia lawyers.  The Court specifically complimented defense counsel on several occasions on their efforts on behalf of their clients.  Defendants moved to dismiss the Complaint, defended against the Motion to Certify a Class, sought summary judgment in favor of their clients, disputed basically every motion filed by Plaintiffs, and vigorously cross-examined Plaintiffs' witnesses at trial.  Nonetheless, by virtue of their skills and assemblage of facts favorable to Plaintiffs,

---

[1] The Court appointed the Hon. Thomas Rueter, as a former magistrate judge now working with JAMS, for mediation efforts, who reported that the Defendants were not interested in settling.

counsel for Plaintiffs have been successful and have brought about very substantial benefits in favor of their clients in this important case for the DuPont employee family and for other employees who have similar claims in the future, to follow the examples of procedure and substantive positions taken by Plaintiffs in this case which will benefit future classes of employees in ERISA litigation.

The undersigned observed Plaintiffs firsthand during the entirety of this case, including the six days of trial. It would not be an overstatement for this Court to say all of the lawyers, from several different law firms who represented Plaintiffs in this case, were well prepared, had the facts at their fingertips so the presentation at trail and at oral arguments could be made efficiently and without delay or obfuscation.

In reviewing the relevant caselaw on award of attorneys' fees in ERISA cases, Plaintiffs' brief, ECF 386, is a concise but persuasive document that Plaintiffs are entitled to an award of attorneys' fees under existing law, and this Court is obliged to grant their motion, and will award the fees as Plaintiffs have thoroughly documented them. See the leading Third Circuit case on this topic, Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).

Plaintiffs have shown that the Defendants were "culpable" but did not have to prove "bad faith" and have not clearly shown that Defendants are guilty of "bad faith"—although there is in the record abundant evidence that Defendants made misrepresentations and even more seriously, cloaked their decisions in subtle but misleading terminology so it was difficult for the employees of the Defendants to know exactly what was happening to them and their pension rights as a result of the "spinoff" which took place on June 1, 2019.

Thus, the first requirement under the Ursic decision has been met.

The second <u>Ursic</u> requirement is that the Defendants, one of the largest corporations in the United States, clearly have the ability to pay.

The third <u>Ursic</u> factor is that awarding attorneys' fees will further the objectives of ERISA and will likely deter behavior that falls short of bad faith conduct.

The fourth factor is also in favor of award of attorneys' fees because this is a class action and numerous individuals who are members of a certified class will benefit from this decision, assuming that it is not reversed on appeal.

This Court also believes that its decisions following the trial are the correct ones and are completely supported by the evidence and legal precedent.

The fifth factor is that the losing party position relative to the prevailing party warrants attorneys' fees because the prevailing party are members of the certified classes, whereas the Defendants are part of the huge DuPont corporate empire that has been famous for many decades, and has achieved high marks in the financial world for its business organization.

Indeed, Edward Breen, the CEO of historic DuPont and now of Corteva testified at trial that the DuPont entities were honest and forthright as was their founder over a century ago, but he did not have any knowledge of the details of the omissions and misrepresentations as found by this Court after the trial, as a result of conduct by low-ranking benefits staff.

**REQUESTED FEES ARE REASONABLE**

The Court has carefully reviewed the voluminous attachments to the Plaintiffs' brief, and although the rates requested are on the high side, they are not unreasonably high. There has recently been a large increase in the amount of fees charged by lawyers handling complex litigation. Although defense counsel, also very skilled in representing their clients, have not disclosed what hourly rates they charged the Defendants, the Court would be surprised if it was

any lower than what the Plaintiffs are requesting. The Court rejects the Defendants' assertion that the Court is bound to award to the Plaintiffs the fees charged under the "community legal services" ("CLS") standard. These fees have been set for attorneys, many of whom are young and starting out on their professional careers, as providing some ceiling on what the Court can award to the Plaintiffs. This Court is not aware of any appellate authority requiring or even warranting use of the CLS fee rates in this type of case.

The Court concludes, based on its personal observation of counsels' performance and preparation over the last several years, that they have excelled in their representation of their clients, and the classes they represent. They have excelled in the presentation of evidence at the trial. They have excelled in their preparation of briefs and memoranda whether in support of their own motions, or in opposition to Defendants' motions. They have been candid and forthright in their arguments in the courtroom on many miscellaneous motions and hearings that have taken place.

### **DEFENDANTS' CONTENTIONS**

Defendants have disputed Plaintiffs' entitlement to fees but have not cited any precedent that this Court must follow to deny or reduce Plaintiffs' requests. Defendants make many arguments, but have failed to cite any appellate case on which this Court can or should rely to support their objections. Indeed, most ERISA cases are settled in one way or the other but Defendants refused to enter into any substantive settlement discussions, at least as far as this Court knows. Having thus decided to "roll the proverbial dice," and take the chance of winning at trial, now Defendants must not only compensate the class members pursuant to the remedies which this Court has and will continue to order on the merits of the case, but they will also be

liable for substantial counsel fees which are justified by the successes of Plaintiffs' counsel, by the facts of the case, and by the prevailing law.

Specifically, the Court rejects the Defendants' arguments in their brief, ECF 394, that they presented good faith defenses. Two examples will suffice to show that Defendants' arguments are without merit. The first is that immediately before or after the spinoff, Defendants made no company-wide communications as to the reasons for the spinoff or the actual plan for the spinoff. As a result of that, as many witnesses testified at the trial, individuals who later learned that they had been economically prejudiced by the spinoff, were still doing the same job in the same office, sitting at the same desk, but in fact their employer had changed, often to their detriment. Although there are a few examples that some employees "double dipped" by getting both continuing salary and retirement benefits, the great majority of class members did not enjoy such a status, and in fact were severely prejudiced by not realizing that their retirement rights had either been wiped out, or severely reduced. The Defendants' arguments that other <u>Ursic</u> factors favor them are rejected.

**PLAINTIFFS' REPLY**

Following review of Plaintiffs' reply brief on the issue of attorney fees, ECF 400, and the accompanying Declaration of Lead Plaintiffs' Counsel, Edward Stone, Esquire, ECF 402, the Court finds that Plaintiffs have successfully refuted all of the Defendants' arguments in opposition to the award of an attorneys' fee in this case.

In the first place, undertaking, on a contingency basis, major class action litigation against a major American corporation is no easy feat for any lawyer or law firm. The Stone Declaration details how the group of Plaintiffs' lawyers got together, and what their prior experience was, particularly in ERISA. Suffice it to say that this Court finds that they were well

qualified, and they carried out their agreement to represent the Plaintiffs in this case, with great skill, dedication, excellent professional responsibility and conduct, and that their efforts were successful.

The Defendants' opposition is basically a combination of hindsight, sour grapes, nitpicking, and unrealistic afterthoughts in trying to save their clients some of the money which Plaintiffs' counsel deserve. This Court has carefully reviewed the Plaintiffs' petition, and rejects the Defendants' claims that there is any overstatement of hours spent, or excessive rates requested. The Court accepts the Plaintiffs' representations as to what work was done, how long it took, and what are comparable rates in the marketplace.

There is simply no basis in the record or in any legal precedent, that this Court must be confined to a community legal services ("CLS") fee schedule in the case of this nature. Plaintiffs' counsel have worked on this case for almost five years, without getting paid a dime, for very extensive work. Plaintiffs' counsel's performance was exemplary. They were prepared when the Court had hearings and at the trial, their briefs were well done without any miscitations or misleading arguments. Plaintiffs were "on point" all the time.

The undersigned will take the liberty of noting, in support of Plaintiffs' fee petition, my own experience as a practicing trial lawyer for many years both before I became U.S. Attorney in 1988, during my tenure as U.S. Attorney for four years and four months, and then following, in private practice for nine years before I became a judge in this court. I had a specialty in antitrust law and tried one antitrust in which the trial judge had granted a directed verdict against my client, and was successful in getting a reversal, see Columbia Metal Culvert Co., Inc. v. Kaiser Aluminum & Chem. Corp., 579 F.2d 20 (3d Cir. 1978). I then tried the case a second time myself, and succeeding in getting a verdict on liability against the defendant. Although the jury

7

awarded substantial damages, the district judge found that a second trial on damages was necessary in which I represented the plaintiff once again and got a damages verdict, which on appeal was sustained by the Third Circuit. See Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 803 (3d. Cir. 1984).[2]

From these and other trial experiences, I learned that sustained and careful preparation can often be the key to victory in litigation. I also learned, as a result of bringing a lawsuit against a very large American corporation, that it would hire top notch lawyers and spend a great deal of money in defending against an antitrust claim. I learned that undertaking such a case on behalf of a plaintiff is a huge risk, and requires extensive dedication to the clients' interests. Defense counsel do not acknowledge this reality at all. Defense counsel in this case do not have any right or authority to make any complaints about the amount of time that Plaintiffs spent in preparing for the trial of this case. Their conduct of the trial was skillful and exemplary and efficient. Defense counsel's attack must be rejected. The same is true as to the Plaintiffs' proposed hourly rates for counsel working on this case. There is no doubt there has been a tremendous inflation in hourly rates charged by skilled lawyers particularly involved in complex litigation. It is my understanding from personal knowledge in this community, that hourly rates over $1,000 are common for lawyers representing clients in litigation.

I also note that the Supreme Court in Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010) affirmed a grant of attorneys' fees and set the standard, which does not require that the party seeking fees be a "prevailing party" under ERISA, and which this Court is following this opinion. See also the Hensley v. Eckerhart, 461 U.S. 424 (1983) for additional authority. Defendants barely cite these very relevant cases.

---

[2] Although the Supreme Court granted certiorari on a separate issue related to the amount of attorneys' fees, I did not represent the client before the Supreme Court, and the liability verdict was not affected. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990).

8

As noted above, the Defendants' counsel made no efforts to document what rates they were charging their clients. This Court would not have the ability to order Defendants to disclose that privileged and proprietary information. However, if Defendants wanted to make a strong point that the Plaintiffs had recorded too many hours, or were charging excessive rates, Defendants could have clearly secured consent from their client to disclose those rates in a filing under seal with this Court. This would have been very effective evidence that might shed some doubt about the Plaintiffs' recorded time or requested rates, but nothing exists in the record to support this defense.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 21\21-3966 Cockerill et al v. Corteva, Inc\21cv3966 memo re attorneys fees and costs.docx