IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT F. COCKERILL et al.,**<br>*Plaintiffs,*<br><br>        **v.**<br><br>**CORTEVA, INC. et al.,**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 21-3966** |

**MEMORANDUM RE: MOTION TO STAY**

**Baylson, J.**                                                                **July 11, 2025**

## I.    INTRODUCTION

Following a bench trial resulting in a finding against Defendants on Counts II, IV, and VI, ECF 318, the Court then conducted a further bench trial on the issue of remedies and awarded exclusively equitable relief (and no award of damages).  The Court entered final judgment in favor of Plaintiffs and the certified classes they represent on May 30, 2025.  ECF 411.  On June 25, 2025, Defendants filed a notice of appeal, ECF 416, and filed a Motion to Stay enforcement of the Court's judgment pending resolution of the appeal, ECF 418.  Plaintiffs filed a response in opposition to this Motion; the Court believes Plaintiffs' opposition brief is correct in all respects and without repetition, the Court will set forth its own views on Defendants' request for a stay below.

Through their Motion to Stay, Defendants seek to delay enforcement of a judgment that stems directly from their own conduct.  The relief to which Class Members are entitled pursuant to this Court's final judgment provides Class Members with long overdue benefits.  Defendants may not postpone redress for those harmed by invoking alleged speculative harm to themselves while pursuing an appeal.  For the reasons set forth below, Defendants' Motion to Stay, ECF 418, is **GRANTED in part and DENIED in part.**

1

II.    **LEGAL STANDARD**

"[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." Scripps-Howard Radio v. F.C.C., 316 U.S. 4, 9–10 (1942).  This "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936).

A stay of enforcement pending appeal "is an extraordinary remedy" and is "rarely granted." Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs., 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) (non-precedential); see F.T.C. v. Equitable Res., Inc., 2007 WL 1500046, at *1 (W.D. Pa. May 21, 2007) (stating that granting a stay pending appeal is "anomalous" and requires meeting "a very heavy burden").  Courts often decline to stay cases that have pertained to equitable relief pending appeal.  See Conestoga Wood Specialties Corp., 2013 WL 1277419, at *1; Jersey Cent. Power & Light Co. v. State of N.J., 772 F.2d 35, 39 (3d Cir. 1985) (noting that the Third Circuit previously upheld denial of stay pending appeal of an order for equitable relief); Victory v. Berks Cnty., 2019 WL 2368579, at *5 (E.D. Pa. June 3, 2019) (Kearney, J.) (describing that the Third Circuit has explained that a stay of injunctive relief pending appeal is rare); Mamula v. Satralloy, Inc., 578 F. Supp. 563, 579 (S.D. Ohio 1983) (denying stay pending appeal of order granting equitable relief in ERISA case).  Whether to grant a stay is an "exercise of [a court's] sound discretion." Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO, 544 F.2d 1207, 1215 (3d Cir. 1976); see Virginian R. Co. v. United States, 272 U.S. 658, 672 (1926) (noting that a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant").

The standard for obtaining a stay pending appeal mirrors that for a preliminary injunction. Conestoga Wood Specialties Corp., 2013 WL 1277419, at *1.  Courts balance four factors: (1)

whether the movant has made a strong showing of likelihood of success on the merits, (2) whether

the movant will suffer irreparable injury absent a stay, (3) whether a stay would substantially harm

other parties, and (4) the public interest.  In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015)

(citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).  The first two factors—likelihood of

success and irreparable harm—are the most critical, Nken v. Holder, 556 U.S. 418, 434 (2009),

and the first factor is recognized as arguably the more important piece of analysis, In re Revel, 802

F.3d at 568.  The inquiry boils down to the following evaluation:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.

Id. at 571 (emphasis and alterations in original) (quoting In re Forty-Eight Insulations, 115 F.3d

1294, 1300–01 (7th Cir. 1997)).

### III.    DISCUSSION

Such a "rarely granted" and "extraordinary remedy" is not warranted here, particularly

since the judgment is equitable in nature.  See Conestoga Wood Specialties Corp., 2013 WL

1277419, at *1; Jersey Cent. Power & Light Co., 772 F.2d at 39; Victory, 2019 WL 2368579, at

*5; Mamula, 578 F. Supp. at 579.  Defendants have not met the heavy burden of making a sufficient

showing that (A) they can win on the merits and (B) will suffer irreparable harm absent a stay.  In

re Revel, 802 F.3d at 571.[1]

---

[1] Thus, the Court need not proceed beyond an analysis of the first two factors.  In re Revel
AC, Inc., 802 F.3d 558, 571 (3d Cir. 2015).

### A. Likelihood of Success on the Merits

"[A] sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" In re Revel, 802 F.3d at 568–69 (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). Though the movant need not show that the likelihood of winning on appeal is more likely than not, In re Revel, 802 F.3d at 569, it "is not enough that the chance of success on the merits be 'better than negligible,'" Nken, 556 U.S. at 434 (citation omitted).

### i. Count IV

Though Defendants present several grounds on which they argue this Court erred in ruling on the breach of fiduciary duty claim, Defendants have not demonstrated a sufficient likelihood of success on appeal as to any of the issues raised.

### 1. Standing

Defendants argue that Plaintiffs lack standing to pursue Count IV and that the Court erred in its informational injury analysis because Plaintiffs' alleged harms are insufficient to confer standing. Defendants rely on Huber v. Simon's Agency, Inc., 84 F.4th 132, 146 (3d Cir. 2023) to argue that the Third Circuit declined to extend informational injury standing to cases involving a failure to clearly or effectively disclose information. ECF 418 at 4–5. Plaintiffs respond that they suffered concrete injuries because Defendants failed to provide them with material information to which they were statutorily entitled and, as a result, they lost the opportunity to attempt to protect their retirement benefits. ECF 420 at 4.

This Court previously found that Class Members suffered concrete injuries from Defendants' breach of fiduciary duty—specifically, their failure to sufficiently communicate key changes to benefits and information that Class Members were entitled to under ERISA following

the spin-off.    ECF 376 at 2–7; ECF 318 ¶¶ 468–472.  As the Court noted, Class Members were

injured by being prevented from taking any action to prevent or mitigate this loss of benefits or

not challenge the erroneous interpretation of the Plan, experiencing disappointment, and—perhaps

most notably—losing their statutorily-established right know where exactly one stands with

respect to his pension benefits.  ECF 376 at 4.  For instance, "Cockerill credibly testified that he

expressed to Defendants' employee Lisa White that he was disappointed with the company's

decision" about Early Retirement Benefits and that in response, White implied that "others were

disappointed, too." ECF 318 ¶ 168 (citing 6/25/24 Day 1 PM Tr. Trans. 87:23–88:5, ECF 245).

While the Third Circuit in Huber noted that "unclear disclosures do not equate to outright

omissions," the plaintiff in that case had not the alleged unclear communication of information to

which she was entitled under the Fair Debt Collection Practices Act.  84 F.4th at 145.  Here, in

contrast, Plaintiffs were entitled to the omitted and miscommunicated information under ERISA

and identified adverse effects of Defendants' breach, including denial of access to effectively

communicated material information and the inability to make informed decisions or challenge

benefit determinations.  Plaintiffs have established "a nexus among a downstream consequence,

[their] alleged harm, and the interest Congress sought to protect."  Pub. Int. Legal Found. v. Sec'y

Commonw. of Pa., 136 F.4th 456, 465 (3d Cir. 2025). [2]  Defendants have not shown a sufficient

likelihood of success on appeal as to their standing argument.

---

[2] As this Court explained,  "[t]he injury to the . . . Class Members is one of the very specific
injuries that ERISA was enacted to prevent—the inability to know where exactly one stands with
respect to his pension benefits and Plan resulting from the miscommunication or omission of
material information."  ECF 376 at 6 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,
118 (1989)).

## 2. Detrimental Reliance

Defendants next argue that the Court erred by not requiring Plaintiffs to prove detrimental reliance as an element of their fiduciary breach claim, suggesting that such reliance is required. ECF 418 at 5–6 (citing Miller v. Campbell Soup Co. Ret. & Pension Plan Admin. Comm., 2025 WL 416090, at *2 (3d Cir. Feb. 6, 2025) (non-precedential). Plaintiffs contend that this Court correctly ruled that detrimental reliance is not required because Plaintiffs seek Plan reformation and that Defendants take the holding of Miller out of context. ECF 420 at 5.

Miller does not impose a detrimental reliance requirement. Miller's discussion of detrimental reliance is limited to the narrow context of evaluating when a claim accrued for the purpose of determining whether it is barred by a release. 2025 WL 416090, at *2. As Plaintiffs correctly highlight, multiple courts have held that when plaintiffs seek plan reformation under § 502(a)(3), detrimental reliance is not required. See, e.g., Cunningham v. Wawa, Inc., 387 F. Supp. 3d 529, 541 (E.D. Pa. 2019) (Diamond, J.) (interpreting CIGNA Corp. v. Amara, 563 U.S. 421 (2011) to rid of detrimental reliance requirement where the plaintiffs sought plan reformation); Osberg v. Foot Locker, Inc., 862 F.3d 198, 213 (2d Cir. 2017) (same). Defendants have not demonstrated a sufficient likelihood of success on appeal as to their detrimental reliance challenge.

## 3. Fiduciary Analysis

Defendants argue that this Court made several errors in its analysis of the fiduciary breach claim by: (1) mistakenly analyzing materiality, (2) failing to determine whether each Defendant was acting in a fiduciary capacity, and (3) imposing a duty on Defendants to ensure actual receipt and understanding of communications. ECF 418 at 6. Plaintiffs argue that the Court correctly analyzed fiduciary status and breach, highlighting the Court's finding that the omitted and/or misleading information was material—a mixed question of fact and law that is unlikely to be

6

disturbed on appeal.  ECF 420 at 5–7.  Plaintiffs further contend that any failure to analyze fiduciary status for each Defendant would constitute harmless error and dispute that the Court imposed an obligation to ensure receipt of communications.  ECF 420 at 5–7.

As to the first point, "[m]ateriality is a mixed question of law and fact," Brady v. Airgas, Inc., 2015 WL 6599750, at *3 (E.D. Pa. Oct. 30, 2015) (DuBois, J.), and is reversible only based on clear error review, United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co., 5 F.4th 315, 329 (3d Cir. 2021) (citing U.S. Bank Nat. Ass'n ex rel. CW Cap. Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 583 U.S. 387, 388 (2018)).  Defendants' argument runs contrary to the Court's detailed factual findings.  This Court conducted a detailed factual analysis of the materiality of Defendants' unclear and misleading communications based on the trial record, concluding that "Defendants did not inform Class Members how the spin-off would affect their benefits in a manner that a reasonable employee could understand," that they were no longer working for a participating employer, or that the spin-off was interpreted as an exception to Early Retirement.   ECF 318 at ¶¶ 462, 466, 493.  The Court found these statements to be material.  Id. (citing In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009)). Because the Court's evaluation of materiality here was "immerse[d] . . . in case-specific factual issues," Pierce v. Underwood, 487 U.S. 552, 561–562 (1988), the Third Circuit is unlikely to disturb its materiality determination on appeal.

As to fiduciary status, even if this Court did not explicitly address each Defendant's status in Count IV, any such omission would be harmless error.  Defendants' argument on appeal is unlikely to lead to reversal because of the clear existence of each Defendant's fiduciary status and clear fiduciary duties regarding the communications at issue.

Finally, the Third Circuit could not find that this Court erred by imposing a duty on Defendants to ensure actual receipt and understanding of Plan communications because no such duty was imposed. The Court's commentary that "[a] reasonable Plan participant he would have little reason to click through to the PowerPoint Presentations" and that "[t]he presentations were not mandatory" cannot reasonably be read as imposing a duty on Defendants to ensure actual receipt and understanding of Plan communications. ECF 318 at ¶ 481.

Defendants have not demonstrated a sufficient likelihood of success on appeal as to their fiduciary analysis challenge for Count IV.

### 4.   Defendants' Knowledge of Confusion

Defendants argue that Plaintiffs failed to show that they knew Class Members were confused, and that such knowledge is necessary for liability. ECF 418 at 7–8. Plaintiffs assert that a fiduciary breach claim based on affirmatively misleading statements does not require proof that Defendants knew of participant confusion. ECF 420 at 8. Plaintiffs note that, in any event, the Court found that Defendants were aware that participants were confused. Id.

The Court agrees. Defendants' argument ignores the comprehensive findings and memoranda filed by this Court holding that Defendants knew Plan participants were confused. See, e.g., ECF 318 at ¶¶ 85, 113, 115, 117-119, 476, 482, 492, 497–98. On this basis alone, Defendants fail to establish a likelihood of success on the merits as to this issue. Even so, knowledge is not required for Count IV, which involves affirmative misrepresentations. Defendants cite to Daniels v. Thomas & Betts Corp., 263 F.3d 66, 76 (3d Cir. 2001), to support its point is unavailing. While the Third Circuit in Daniels highlighted that there may be cases where an "employer's knowledge of an employee's knowledge and understanding is important to the liability," such cases involve instances where there were no affirmative misrepresentations made

by plan fiduciaries.  Id.  Here, Defendants made multiple affirmative misstatements—including that Class Members would continue working for DuPont and that nothing was changing due to the spin-off and providing information which "was woefully insufficient to notify a reasonable Plan participant of the spin-off's effect . . ."  ECF 318 ¶¶ 152, 176, 201, 478–79, 478 n.35, 480, 487, 492, 497; see Daniels, 263 F.3d at 76 (holding that where a fiduciary made an inaccurate statement that had a substantial likelihood of misleading a reasonable employee into a harmful benefits decision, courts do not "require[] a showing that the employer had actual knowledge" of confusion).  Defendants have not shown a sufficient likelihood of success on appeal.

### ii.  Counts II and VI

#### 1.  Review of Plan Administrator's Reasoning

Defendants argue that instead of applying a deferential review standard to the Plan Administrator's interpretation of the Plan, the Court effectively and improperly performed a de novo review of the Plan Administrator's reasoning.  ECF 418 at 8–9.  Plaintiffs argue that the Court determined, based on proper deferential review, that the Plan Administrator's interpretation of the Plan was inconsistent with its unambiguous language.  ECF 420 at 8.

Defendants have failed to show a reasonable chance of winning on this argument.  Where plan documents grant discretionary authority to an administrator or fiduciary, a court must use an arbitrary and capricious review standard.  ECF 318 ¶ 386 (citing Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates, 871 F.3d 239, 245 (3d Cir. 2017)).  "If the plan language is unambiguous, the administrator's interpretation controls so long as the interpretation does not controvert the plain language of the plan."  Id. ¶ 388 (citing Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 289 (3d Cir. 1985)).  This Court followed these requirements and did more than simple cite to the proper standard of review as "lip service."  Rather, the Court reasoned that,

as to Counts II, (a) the Plan language was unambiguous and required Optional Retirement and (b) applying a deferential arbitrary and capricious standard, the Administrative Committee's interpretation of the Plan's plain language controverted its unambiguous meaning.  ECF 318 ¶¶ 422–32.[3]  Defendants have not demonstrated a sufficient likelihood of success on appeal as to their challenge of the Court's review of the Plan Administrator's interpretation of the Plan.

### 2.  Plan Administrator's Fiduciary Discretion

Defendants argue that Court did not address the Plan Administrator's fiduciary discretion regarding supplying omissions in the Plan since "spin-offs" are not expressly mentioned in the Plan.  ECF 418 at 9.  Plaintiffs highlight that the law is clear that gaps in a plan cannot be filled in a manner inconsistent with its plain terms.  ECF 420 at 8 (citing Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates, 871 F.3d 239, 245 (3d Cir. 2017)).  The Court agrees.  While the Plan gives the Administrative Committee the ability to construe, interpret, and supply omissions in the Plan, ECF 318 ¶ 26, any such interpretation of an omission cannot contradict its plain language.  Dowling, 871 F.3d at 245.  The Court found that the Administrative Committee's interpretation of the spin-off as excluded from Optional Retirement was "[i]n no way" reasonably consistent with the unambiguous plan language.  ECF 318 ¶ 432.  This analysis by the Court followed the proper standard and Defendants have not demonstrated a sufficient likelihood of success on appeal as to their challenge of this issue.

### iii.  Remedies

Defendants argue that this Court's conclusion that Class Members may elect retroactive benefits was erroneous because Plaintiffs did not prove that Defendants' conduct caused them to

---

[3] Moreover, the Court concluded, based on a full alternative analysis, that even if the Plan language were ambiguous, the denial of Optional Retirement benefits was arbitrary and capricious. ECF 318 ¶¶ 433–39.

not apply for benefits.  ECF 418 at 10–11 (citing <u>Cotillion v. United Ref. Co.</u>, 781 F.3d 47, 62 (3d

Cir. 2015)).  Plaintiffs contend that <u>Cotillion</u> does not require that Court find that Class Members

would have applied for certain benefits but for Defendants' misconduct.  ECF 420 at 9.

The Court appointed Susan Katz Hoffman as a technical advisor on actuarial principles in

this case on March 11, 2025.  ECF 339; <u>see</u> ECF 342.  This case necessarily involved serious and

substantial issues about actuarial principles, and the Court properly appointed Ms. Hoffman to file

a report analyzing certain actuarial principles in the context of this case.  ECF 375.  The Court

substantially followed this report when deciding its awards of equitable relief.

<u>Cotillion</u> does not require this but-for showing, and thus Defendants have not established

a sufficient likelihood of success on the merits of this argument on appeal.  As the Court reasoned,

the <u>Cotillion</u> plaintiffs knew they could elect benefits and chose not to do so because of misleading

information that those benefits would be actuarially reduced.  ECF 376 at 8.  This is starkly

different from the Optional Retirement Class Members' failure to apply for benefits, which was

due to Defendants' omissions and misleading communications about Optional Retirement Benefits

and the lack of information necessary to assert those rights in the first place.  <u>Id.</u>  As this Court

analyzed, <u>Cotillion</u> does not foreclose this relief, but rather, "underscores the distinction between

participants who were given the option to elect benefits and chose not to, and those who were

deprived of the option altogether."  <u>Id.</u> at 9.  Defendants have not shown a sufficient likelihood of

success on appeal as to their argument that Plaintiffs failed to prove Defendants' conduct caused

them to forgo applying for benefits.

### B.  Irreparable Harm

Defendants contend that the Plan would suffer irreparable harm if benefits are paid out

during the pendency appeal and must later be recouped.  ECF 418 at 11–12.  They argue that the

"Secure Act 2.0 and its restrictions on recouping benefit overpayments" create a risk that the Plan will be unable to recover overpayments from Class Members if the appellate court alters the judgment. Id. at 10. Defendants further assert that there is no mechanism for the Plan to recoup prejudgment interest once it is paid. Id. Plaintiffs argue that Defendants have not demonstrated they would suffer irreparable harm if the judgment is enforced during the appeal. ECF 420 at 1.

To show irreparable harm, the movant "must 'demonstrate that irreparable injury is likely in the absence of [a] [stay],'" and which "cannot be prevented or fully rectified" by a successful appeal. In re Revel, 802 F.3d at 568–69 (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). The harm must be "more apt to occur than not." Id. at 569. Moreover, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless it "is so great as to threaten the existence of the movant's business." Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir. 2011).

Defendants have not met this burden. Defendants' primary argument is that enforcing the judgment now could require the Plan to pay out benefits that may later be difficult to recoup. But Defendants cite only out-of-circuit cases suggesting that unrecoverable financial injury may support a finding of irreparable harm. ECF 418 at 12. Defendants are silent on the Third Circuit's analysis of this issue. As the Third Circuit has held in the context of an IDEA case, any risk that a defendant will be unable to recoup funds following an appeal "does not constitute irreparable harm." Randolph Twp. Bd. of Educ., Morris Cnty., N.J. v. M.T., 2023 WL 4265760, at *2 (3d Cir. June 29, 2023). The same logic applies here.

Further, Defendants do not argue that denying a stay while appeal is pending or any inability to recoup funds would cause it to experience a level of economic injury that is so great that it threatens Defendants' business. In re Revel, 802 F.3d at 572. Defendants argue that the

12

recouping of paid benefits should the judgment be reversed or reduced would be complex and perhaps unrecoverable. ECF 418 at 11–12. This is insufficient to meet the requisite standard. Defendants make no attempt to argue that paying these benefits threatens the solvency of the Plan or the viability of their multi-billion-dollar entities. See In re Revel, 802 F.3d at 572 (denying a stay where economic injury did not threaten the movant's existence).

Finally, Defendants' reference to the Plan's inability to recoup prejudgment interest is speculative and unsupported by concrete analysis or evidence.

In short, Defendants have not demonstrated that enforcement of the judgment during appeal would likely result in irreparable harm. Their concerns are either speculative or amount to routine financial exposure that does not meet the Third Circuit's threshold for this "extraordinary remedy." Conestoga Wood Specialties Corp., 2013 WL 1277419, at *1.[4]

## IV.    CONCLUSION

For the reasons discussed herein, Defendants' Motion to Stay is **GRANTED in part and DENIED in part.** This case is hereby **STAYED** for **ten (10) days** to provide Defendants with an opportunity to seek immediate relief in the Court of Appeal if they so choose. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\Sophie.2024\21-3966 Cockerill et al. v. Corteva, Inc. et al\21-3966 Memo on Motion to Stay.docx

---

[4] While the Court's analysis can stop here, assuming arguendo that Defendants made a sufficient showing of likelihood of success on the merits and irreparable harm, a balancing of the relative harms considering all for factors based on a would require denying Defendants' Motion. In re Revel, 802 F.3d at 571. A stay would cause substantial harm to Plaintiffs because they will be deprived further of their long-delayed opportunity to elect and receive Early Retirement and Optional Retirement Benefits. Additionally, the public has minimal interests in preserving the Plan's assets, and the public interest is best served by remedying Defendants' improper deprivation of Class Members' opportunities to elect benefits without further delay. Id. Thus, even weighing all factors on a sliding scale, denial of a stay is appropriate here.